**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO.: 1:20-CR-040** |
| | ) | |
| **JESSICA JOHANNA OSEGUERA** | ) | |
| **GONZALEZ, also known as "Jessica** | ) | |
| **Johanna Castillo" and "La Negra"** | ) | |
| | ) | |
| **Defendant.** | ) | |

**GOVERNMENT'S MOTION FOR PRE-TRIAL DETENTION**

The United States respectfully moves to detain the Defendant, Jessica Johanna Oseguera-Gonzalez, pending trial, pursuant to 18 U.S.C. § 3142(e)(1).  The Defendant is alleged to have business interests in five companies in Mexico that have been designated by the U.S. Department of Treasury's Office of Foreign Asset Control ("OFAC") for providing material support to narcotics trafficking organizations.  The Defendant is a resident and citizen of Mexico, in addition to being a United States citizen; she has no familial or financial ties to the United States; and she potentially has access to substantial amounts of drug proceeds in the form of untraceable cash. The Defendant has the resources and connections necessary to allow her to flee the jurisdiction if she is not detained.  Accordingly, the Defendant presents a serious risk of flight that cannot be mitigated by any condition or combination of conditions and should be detained pending trial.

**BACKGROUND**

On February 13, 2020, a federal grand jury sitting in the District of Columbia returned and filed an Indictment against the Defendant, charging her with five counts of violating the Kingpin

Act by engaging in transactions or dealings in properties of a designated foreign person, in violation of Title 21, United States Code, Sections 1904(c)(1), 1904(c)(2) and 1906(a).

Based on the charges, the United States District Court for the District of Columbia issued a warrant for the Defendant's arrest on February 13, 2020. On February 26, 2020, the Defendant was arrested. The Defendant made her initial appearance before the Honorable G. Michael Harvey on February 26, 2020, and was arraigned. At arraignment, the government requested that the Defendant be detained pending trial, and the Court scheduled a detention hearing for March 2, 2020.

The Indictment in this case is the product of an extensive, long-term and ongoing investigation conducted by the Drug Enforcement Administration ("DEA") into the operations of two large-scale drug trafficking organizations ("DTO") based in Jalisco, Mexico known as the Cartel de Jalisco Nueva Generacion ("CJNG"), headed by Nemesio Oseguera Cervantes ("Mencho"), and Los Cuinis Drug Trafficking Organization ("Los Cuinis"), headed by Abigael Gonzalez Valencia ("Abi"). As part of the investigation, agents have coordinated with OFAC, which has levied economic sanctions against business entities and persons for providing material support to the narcotics trafficking activities of the CJNG and/or Los Cuinis. If this matter were to proceed to trial, the Government intends to prove that the Defendant owns and operates five businesses, which have been designated by OFAC, and she failed to separate herself from the businesses post-designation despite notification, in violation of the Kingpin Act.

The Government's evidence at trial will consist of testimony from cooperating witnesses who have communicated directly with the Defendant; publicly available business records; publicly available social media, websites, and press related to the businesses; and official OFAC designations and notices.

2

## ARGUMENT

### The Bail Reform Act

Under the Bail Reform Act, 18 U.S.C. §§ 3141 et seq., federal courts must order a defendant's pre-trial detention upon determining that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). A finding of risk of flight must be supported by a preponderance of the evidence. *See United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996). If the Court finds that no conditions will reasonably assure the appearance of the defendant, the Court shall order the defendant detained. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both. *See Xulam*, 84 F.3d at 442.

The Bail Reform Act lists the following factors as relevant to the determination of whether detention is appropriate: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence; (3) the history and characteristics of the defendant, including family ties, financial resources, length of residence in the community, community ties, and past conduct; and (4) the seriousness of the danger posed by the defendant's release. *See* § 3142(g). Under governing case law, the government may proceed by factual proffer in lieu of presenting live witnesses at a detention hearing pursuant to the Bail Reform Act. *See United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

There is a significant risk of flight in this case due to the Defendant's familial and financial relationship with drug trafficking organizations, the weight of the evidence against her, her foreign citizenship, her complete lack of ties to the district, the significant financial resources she has at

her disposal, and her history of attempting to obstruct justice. For these reasons, there is no condition or combination of conditions that would assure the Defendant's appearance in court.

## Nature and Circumstances of the Offenses Charged

The factual proffer detailed herein is derived from a Drug Enforcement Administration (DEA) investigation into the Defendant. At trial, the government would show that the Defendant is the biological daughter of Mencho, the leader of the CJNG, and the niece of Abi, the leader of Los Cuinis—both have been designated by OFAC as "Kingpins" for their narcotics trafficking activities. Additionally, her husband, Julio Alberto Castillo Rodriguez, was sanctioned by OFAC pursuant to the Kingpin Act, for providing material support to the narcotics trafficking activities of the CJNG and/or Los Cuinis. The CJNG is one of the largest, most dangerous drug cartels currently operating in Mexico, and it is responsible for trafficking tonnage quantities of cocaine, methamphetamine, and heroin into the United States, as well as for violence and significant loss of life in Mexico. OFAC has designated over 100 business entities and individuals for providing material support to CJNG and/or Los Cuinis.

The Defendant was born in the United States and is therefore a United States citizen and ineligible to be sanctioned by OFAC herself. However, as a United States person, the Defendant unlawfully engaged in transactions or dealings in property or interests in property with a designated significant foreign narcotics trafficker when she held and maintained a leadership role in five businesses based in Mexico, which were designated by OFAC under the Kingpin Act for providing material support to the narcotics trafficking activities of the CJNG and/or Los Cuinis.

## Weight of the Evidence

Where the evidence of guilt is strong, it provides a considerable additional incentive to flee. *See United States v. Medina Coronado*, 588 F. Supp. 2d 3, 5 (D.D.C. 2008) (finding

detention warranted because government's evidence was strong against the defendant); *see also United States v. Vergara*, 612 F. Supp. 2d 36, 37 (D.D.C. 2009).

The evidence against the Defendant here is particularly strong.  The Defendant has or had business interests in five different businesses designated by OFAC for providing material support to the narcotics trafficking activities of the CJNG and/or Los Cuinis.  All five businesses were designated by OFAC on September 17, 2015, and the Defendant maintained an interest in four of the five up until the date of the indictment, February 13, 2020.  In some instances, the Defendant attempted to skirt OFAC designations by changing the name and/or branding of businesses after they were designated while maintaining the same business operations and management.  The evidence includes publicly available business records, social media, websites, and press, which prove the Defendant's interest in and control of the businesses, both before and after designation by OFAC, as well as statements of witnesses with personal knowledge of the Defendant's role in the designated businesses, who are prepared to testify.

### History and Characteristics of the Defendant

The Defendant was born in the United States and, as such, is a citizen, but on information and belief, she was raised in and maintained her primary residence in Mexico beginning at a young age, and has few if any current close familial ties to the United States.  Additionally, during booking after arrest, the Defendant denied having Mexican citizenship.  Later that day at her initial appearance, the Defendant admitted she held both U.S. and Mexican citizenship and requested that the Mexican consulate be notified of her arrest.

The Defendant has no known lawful contacts in this federal district.  Furthermore, the Defendant has no known assets, no employment, no property, and no immediate family in the United States.  The Defendant only came to this district to be present at the detention hearing for

her brother, Ruben Oseguera Gonzalez, who was recently extradited to the United States, after being detained in Mexico for more than four years.  In short, the Defendant has no reason to remain in this country other than this criminal case, and she therefore represents an overwhelming risk of flight if released from custody.

Federal courts have repeatedly recognized that "[f]light to avoid prosecution is particularly high among persons charged with major drug offenses," because "drug traffickers often have established substantial ties outside the United States . . . [and] have both the resources and foreign contacts to escape to other countries with relative ease."  *See, e.g., United States v. Alatishe*, 768 F.2d 364, 370 n.13 (D.C. Cir. 1985) (citing S. Rep. No. 98-225 at 20 (1983), reprinted in 1984 U.S.C. C.A.N. 3203).  While the Defendant is not charged with a drug offense, she does have the resources and foreign contacts of at least one, if not two, major drug trafficking organization available to her.  In addition to her close family relationship to the leaders of both DTOs, her financial connections to the CJNG and Los Cuinis DTOs are at the heart of the charges that she faces in the indictment.  Her charges are based on her longstanding, leadership role in at least five different businesses that were designated by OFAC for providing material support to the narcotics trafficking activities of these two DTOs.

There is a serious risk that the Defendant would attempt to leave the United States if given the opportunity and would have the means to do so.  In fact, "Congress made 'risk of flight' a grounds for detention because it believed that there were major drug dealers to whom the posting and losing of even large amounts of money bond were not a deterrent, but a mere cost of doing business."  *United States v. Battle*, 59 F.Supp.2d 17, 19 (D.D.C. 1999).  Even if the Defendant were to execute an agreement to forfeit a significant amount of money if she failed to appear, the financial resources of the CJNG and/or Los Cuinis are so vast that its loss would be insignificant.

6

Additionally, members of the CJNG and/or Los Cuinis may aid and assist the Defendant in fleeing justice. The DTOs maintain routes for smuggling illegal proceeds from their narcotics trafficking activities out of the United States and into Mexico. If the Defendant is able to cross into Mexico, the CJNG and Los Cuinis DTOs exert a high degree of corrupt control over various municipalities and states in Mexico, and the DTOs could be able to provide the Defendant with a certain measure of freedom from arrest, if she returned to Mexico.

As mentioned above, at trial, the government would show that Defendant consistently made efforts to obstruct or impede the investigation by changing the names of several businesses shortly after they were designated by OFAC. If the Defendant was released, she could attempt to further obstruct justice by destroying or moving beyond the reach of U.S. law enforcement evidence of the businesses or their proceeds.

In sum, the Defendant has the means, motive, and opportunity to flee the country and should be detained without bail. *See United States v. Hong Vo*, 978 F. Supp. 2d 41, 43 (D.D.C. 2013) (finding detention warranted because not only was defendant indicted on serious charges carrying a severe punishment potential, but defendant had ability to flee the United States); *see also United States v. Anderson*, 384 F. Supp. 2d 32, 36 (D.D.C. 2005) (finding detention warranted because not only did the defendant have the ability to flee D.C. and the United States, but also had the ability to live comfortably in foreign jurisdiction and evade capture due to his substantial assets abroad).

## <u>Conclusion</u>

For the foregoing reasons, the government respectfully submits that "no condition or combination of conditions will reasonably assure [her] appearance."   18 U.S.C. § 3142(e). Accordingly, she should be detained pending trial.


Respectfully submitted this 28th day of February, 2020.

MARLON COBAR, Acting Chief
Narcotic and Dangerous Drug Section
Criminal Division
United States Department of Justice

By:      /s/
Kate M. Naseef, Trial Attorney
Brett Reynolds, Trial Attorney
Kaitlin Sahni, Trial Attorney
Cole A. Radovich, Trial Attorney
Anthony Nardozzi, Assistant Deputy Chief
United States Department of Justice
Narcotic and Dangerous Drug Section
145 N Street, Northeast
East Wing, Second Floor
Washington, D.C. 20530
Kate.Naseef@usdoj.gov
(202) 353-8810
