IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 20-cr-00040 (BAH/RMM) |
| ) | |
| JESSICA JOHANNA OSEGUERA ) | |
| GONZALEZ, ) | |
| ) | |
| Defendant. ) | |
| ) | |

DEFENDANT JESSICA JOHANNA OSEGUERA GONZALEZ'S OPPOSITION
TO THE GOVERNMENT'S MOTION FOR PRE-TRIAL DETENTION
AND INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Jessica Johanna Oseguera Gonzalez, by and through her undersigned counsel, respectfully submits the following opposition to the government's Motion for Pre-Trial Detention (ECF 12).

I.   BACKGROUND

Jessica Johanna Oseguera Gonzalez is thirty-three years old and has no criminal record. Ms. Gonzalez was born and raised in California, and subsequently moved to Mexico as a high school student. She attended university in Guadalajara, Mexico, and received her degree in 2009. She is the mother of two young children, aged four and twelve years old. Both of Ms. Gonzalez's children are U.S. citizens. Ms. Gonzalez is a dual citizen of the United States and Mexico, and currently resides in Guadalajara, Mexico with her children.[1]

Ms. Gonzalez has family in California and Texas, including aunts, uncles, and cousins to whom she is very close. When she visits the United States, her U.S. passport is scanned at the

---

[1] The government's baseless claim that Ms. Gonzalez denied her dual citizenship is not only untrue, but also shows the government is grasping at straws.

border of the United States and Mexico. Ms. Gonzalez has never attempted to hide her movements between the United States and Mexico.

In August 2019, Ms. Gonzalez visited the United States with her children, and stayed with her aunt and uncle in California. During her stay, Ms. Gonzalez was surveilled and harassed in front of her young children by federal agents involved in the investigation of her brother. This occurred on two separate occasions. One of the agents threatened her, claiming he had the power to put her and her family in jail. Ms. Gonzalez was not arrested. Ms. Gonzalez did not flee the United States after she was stopped and released by these agents. Instead, she remained in the United States for approximately thirty more days, and then returned to Mexico with her children.

On February 26, 2020, approximately six months following her trip to California in August 2019, Ms. Gonzalez entered the United States District Court for the District of Columbia to attend a hearing in support of her brother. Ms. Gonzalez had driven across the United States / Mexico border (with her U.S. passport, once again, being scanned) and was directed towards a secondary screening process. After being released from the secondary screening process, Ms. Gonzalez continued to drive to California. She then flew from California to Washington, D.C. When she arrived in the U.S. District Court in Washington, D.C. on February 26, 2020, she was arrested, and was told that there was a Sealed Indictment against her.

The Indictment against Ms. Gonzalez charges her with five counts of Engaging in Transactions or Dealings in Properties of a Designated Foreign Person, in violation of 21 U.S.C. §§ 1904 and 1906. Ms. Gonzalez faced substantially similar allegations regarding the entities in the Indictment, which were litigated in Mexico. At the close of these proceedings, Ms. Gonzalez was appropriately found not liable.

II.     LEGAL STANDARD

It is a well-established principle that, "'[i]n our society, liberty is the norm and detention prior to trial or without trial is the carefully limited exception.'" *See United States v. Simpkins*, Magistrate Case No. 19-00295 (GMH/RMM), 2019 WL 6525787, at * 1 (D.D.C. Dec. 3, 2019) (Meriweather, J.) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). The "Bail Reform Act of 1984, 18 U.S.C. § 3141*, et seq.*, sets forth the circumstances that trigger that exception." *Id.* "Specifically, provisions of the Bail Reform Act authorize a judicial officer to order the detention of a defendant before trial if the judicial officer determines after a hearing that 'no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" *Id.* (quoting 18 U.S.C. § 3142(e)).

Courts have held that "[a] finding that a defendant poses a danger to the community, or that there is a serious risk the defendant will flee, provides an adequate basis to order pretrial detention." *See id.* (citing *Salerno*, 481 U.S. at 755; *United States v. Lee*, 195 F. Supp. 3d 120, 124 (D.D.C. 2016); *United States v. Henry*, 935 F. Supp. 24, 25 (D.D.C. 1996)). Detention decisions based upon "'the defendant's dangerousness to the community must be supported by 'clear and convincing evidence,'" and detention decisions based upon "a finding that no set of conditions will reasonably assure the defendant's appearance in court" must be supported by a preponderance of the evidence. *See id.* (citing 18 U.S.C. § 3142(f); *United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996); *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987); *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996); *United States v. Anderson*, 382 F. Supp. 2d 13, 14 (D.D.C. 2005)).

This Court has employed the following framework in rendering detention decisions under the Bail Reform Act:

> The Bail Reform Act directs judges to consider four factors in determining whether any conditions of release will reasonably assure a defendant's future presence in court or assure the safety of any other person and the community: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or to the community posed by the defendant's release.

*See id.* (citing 18 U.S.C. § 3142(g); *Xulam*, 84 F.3d at 442).

### III. ANALYSIS OF STATUTORY FACTORS

An analysis of the factors set forth in 18 U.S.C. § 3142(g) weighs heavily in favor of Ms. Gonzalez's pre-trial release, with certain conditions as set forth below.

#### a. Nature and Circumstances of Charged Offense

The government acknowledges that "[t]he Indictment in this case is the product of an extensive, long-term and ongoing investigation conducted by the Drug Enforcement Administration into the operations of two large-scale drug trafficking organizations . . . ." *See* ECF 12, at 2. Ms. Gonzalez is *not* charged under the Controlled Substances Act. She is charged with violations of 21 U.S.C. §§ 1904 and 1906. These are non-violent offenses, and this weighs in favor of her pre-trial release. Indeed, for the reasons set forth below, the nature and circumstances of the charged offenses weigh heavily in favor of release.

Charges are seldom brought under this statute. Undersigned counsel searched Westlaw, but could not find a single reported, or unreported, decision where any individual has been charged with violating Sections 1904 and 1906.

Counsel was able to locate one case on Pacer – *United States v. Sandra Elisa Sanchez*, Case No. 07-cr-20587-ASG-2 (S.D. Fla. 2007) – where the government charged an individual under these statutes. In that case, the defendant, Sandra Elisha Sanchez, was charged with violating 21 U.S.C. §§ 1904 and 1906. *See* Exhibit 1 (Sanchez Indictment). Ms. Sanchez was also charged with money laundering and conspiring to launder money. *Id.* The government

sought to have Ms. Sanchez detained pending trial, arguing that she was a flight risk. *See* Exhibit 2 (Sanchez Court Minutes, ECF 10). Ms. Sanchez was released on bond. *See* Exhibit 3 (Sanchez Court Minutes, ECF 12). Ms. Sanchez later entered a plea of guilty to one count of violating 21 U.S.C. § 1904. *See* Exhibit 4 (Sanchez Plea Agreement). She was sentenced to a term of probation for three years. *See* Exhibit 5 (Sanchez Judgment).

We fully expect that a jury will acquit Ms. Gonzalez in short order. In the unlikely event, however, that this does not happen, a district court judge would be required to consider Ms. Sanchez's case before imposing sentence in order to avoid an unwarranted disparity. Given this, even under a worst-case scenario, Ms. Gonzalez has likely already spent more time behind bars than she will, if the government is somehow able to convince twelve citizens that she is guilty of these charges. Therefore, the nature and circumstances of the offenses charged weighs heavily in favor of release.

      b. <u>Weight of the Evidence</u>

The weight of the evidence against Ms. Gonzalez also favors her pre-trial release. The government says the evidence against Ms. Gonzalez is "particularly strong," but, in support of this statement, it offers only conclusory statements that ring hollow, because they are hollow. The Court cannot properly find the weight of the evidence is great, simply because the government says so.

The Department of Justice has a high burden here. In order to secure a conviction, the government must prove beyond a reasonable doubt that Ms. Gonzalez acted "willfully." *See* 21 U.S.C. § 1906. It has not come close to proffering evidence to even suggest that it will meet this burden of proof.

Finally, as mentioned above, Ms. Gonzalez faced substantially similar allegations, relating to the same entities listed in the Indictment, in court proceedings in Mexico, and judgements were consistently entered in her favor.

In or around 2017, an arrest warrant was issued in Mexico for Ms. Gonzalez. The warrant was based on the same allegations that are leveled here. In fact, the Drug Enforcement Administration worked with the Mexican government in making allegations that Ms. Gonzalez used companies listed in this Indictment to conduct business after the companies were placed on the Office of Foreign Assets Control list of prohibited entities.

Ms. Gonzalez did not flee the country. Instead, she retained counsel and filed an "Amparo." An Amparo is an action to enjoin unlawful conduct by the government of a constitutional dimension. Ms. Gonzalez argued that the warrant violated Article 16 of the Political Constitution of the United Mexican States regarding sufficient justification for arrest.

A court in Mexico ruled after receiving evidence presented at a hearing that Ms. Gonzalez had not committed any crime. The prosecutor in Mexico appealed the decision to a higher court. The findings were affirmed on appeal. Additionally, the appellate court found that the prosecuting authorities had previously applied for an arrest warrant against Ms. Gonzalez which was denied. This denial was intentionally omitted from the presentation to the judge who issued the arrest warrant which was subsequently enjoined. Apparently undaunted, prosecutors appealed again to an *en banc* panel of three appellate judges. After a comprehensive review of the entire record, the injunction was again affirmed. This matter was, therefore, fully and finally resolved in Ms. Gonzalez's favor.

On these facts, the government is standing on a thin reed in claiming that the evidence is particularly strong. Ms. Gonzalez has no incentive to flee based on the weight of the evidence.

      c.   History and Characteristics of the Defendant

The Court is required to consider the history and characteristics of Ms. Gonzalez, not the alleged history and characteristics of those with whom she may have a familial relationship. Through this lens, it is readily apparent that Ms. Gonzalez's history and characteristics weigh heavily in favor of pre-trial release.

At several points in its motion, the government argues that Ms. Gonzalez is a flight risk, not because of anything she herself has done, but because of her alleged family members. The government points to Ms. Gonzalez's supposed father, uncle, and husband, and argues that because those individuals have allegedly engaged in illegal activities, Ms. Gonzalez is likely to flee the United States if she is released. *See, e.g.*, ECF 12, at 4. Ms. Gonzalez is no longer married to Julio Alberto Castillo Rodriguez. The government has offered no evidence that Ms. Gonzalez has any criminal association with, or even has had any contact with, Nemesio Oseguera Cervantes or Abigael Gonzalez Valencia.

The government also makes the blanket assertion that Ms. Gonzalez "has no reason to remain in this country other than this criminal case, and she therefore represents an overwhelming risk of flight if released from custody." *See* ECF 12, at 6. Missing entirely from the government's motion is a recitation of what occurred in August 2019, which is perhaps the series of events that demonstrates most heavily the fact that Ms. Gonzalez is not a flight risk.

As set forth above, in August 2019, Ms. Gonzalez visited the United States with her children, and stayed with her aunt and uncle in California. During her stay, Ms. Gonzalez was surveilled and accosted by federal agents on two separate occasions. An agent threatened to jail her and her family. But, Ms. Gonzalez was not arrested, nor did she flee the United States after she was confronted by these agents. Instead, she remained in the United States for approximately thirty more days, and then returned to Mexico with her children.

Ms. Gonzalez clearly knew in August 2019 that she was being tracked by federal law enforcement officers in the United States. Thereafter, she did not stay away from her place of citizenship. She surely would have done so, if she feared prosecution. Six months later, she came back to the United States to support her brother at a court hearing in Washington, D.C.

If the government thought that Ms. Gonzalez was truly worthy of prosecution, she would have been arrested in August 2019. The government cannot claim on the one hand that this case is the "product of an extensive, long-term and ongoing investigation conducted by the Drug Enforcement Administration," but then claim they did not have probable cause to arrest Ms. Gonzalez in August 2019. Ms. Gonzalez was present in the United States for approximately thirty days, and law enforcement officers could have, but did not, seek a warrant for her arrest. Instead, they stood by and did not try to stop her from leaving the United States. On its face, this Indictment smacks of retaliation because courts in Mexico rejected the United States government's efforts to prosecute these charges there and because Ms. Gonzalez declined to be interviewed about matters of which there is no basis to indicate she has any knowledge.

In its motion, the government disingenuously cites to case law for the proposition that "[f]light to avoid prosecution is particularly high among *persons charged with major drug offenses*." *See* ECF 12, at 6 (emphasis added). Then, after citing these cases, the government acknowledges that Ms. Gonzalez has not been charged with a major drug offense. The government cannot be permitted to infer the stigma and presumptions of any such major drug offenses against Ms. Gonzalez in an effort to keep her detained pending trial.

The government goes on to cite authority for the proposition that "Congress made 'risk of flight' a grounds for detention because it believed that there were *major drug dealers* to whom the posting and losing of even large amounts of money bond were not a deterrent, but a mere cost of doing business." *See* ECF 12, at 6 (emphasis added) (internal citations omitted). Again,

the government cannot point to any evidence that Ms. Gonzalez is a "major drug dealer" for one simple reason – no such evidence exists.

The government then says that Ms. Gonzalez could be smuggled across the border of Mexico and kept free from arrest, due to the "high degree of corrupt control over various municipalities and states in Mexico" allegedly enjoyed by certain narcotics trafficking groups. *See* ECF 12, at 7. This does not ring true. Clearly, the government of Mexico cooperated with the United States in extraditing Ms. Gonzalez's brother here and in its failed attempt to prosecute her. There is no reason to believe that it would not offer similar assistance in this case. In the end, however, none of this matters. Ms. Gonzalez will remain here under the presumption of innocence, she will put the government to its burden of proof, and she will travel to Mexico, if she so chooses, or remain here as a citizen, after she is found not guilty.

    d. <u>Nature and Seriousness of the Danger to the Community</u>

The government has properly not argued, because there is absolutely no factual basis to argue, that Ms. Gonzalez poses any danger whatsoever to the community. Accordingly, this factor also weighs heavily in favor of Ms. Gonzalez's pre-trial release.

    IV.    <u>PROPOSED CONDITIONS OF RELEASE</u>

Based upon the foregoing, there are conditions of release that the Court can impose, which will assure Ms. Gonzalez's appearance in court during the pendency of this case. Ms. Gonzalez respectfully submits that the following conditions will satisfy the goals of the Bail Reform Act:

1. Release into the Pretrial Services Agency for the District of Columbia's High Intensity Supervision Program;
2. Location monitoring;
3. Requirement to reside in the District of Columbia;

4. Requirement to remain in the District of Columbia; and

5. Secured property bond from relative of Ms. Gonzalez.

V. <u>CONCLUSION</u>

Wherefore, for the foregoing reasons, and any other reasons appearing to the Court, Ms. Gonzalez respectfully requests that this Court release her pending trial in this matter, subject to the conditions set forth above.

           Respectfully submitted,

           /s/ Steven J. McCool
           STEVEN J. McCOOL
           D.C. Bar No. 429369
           JULIA M. COLEMAN
           D.C. Bar No. 1018085
           McCOOL LAW PLLC
           1776 K Street, N.W., Suite 200
           Washington, D.C. 20006
           Telephone: (202) 450-3370
           Fax: (202) 450-3346
           smccool@mccoollawpllc.com
           jcoleman@mccoollawpllc.com

           *Counsel for Jessica Johanna Oseguera Gonzalez*

CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of March 2020, the foregoing was served electronically on the counsel of record through the U.S. District Court for the District of Columbia Electronic Document Filing System (ECF) and the document is available on the ECF system.

/s/ Steven J. McCool
STEVEN J. McCOOL