UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JESSICA JOHANNA OSEGUERA GONZALEZ,<br><br>Defendant. | Criminal Action No. 20-40 (BAH)<br><br>Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the government's motion for review of a Magistrate Judge's order releasing the defendant, Jessica Johanna Oseguera Gonzalez, who has been charged with violations of the Foreign Narcotics Kingpin Designation Act ("Kingpin Act"), Pub. L. No. 106-120, 113 Stat. 1606 (1999), codified at 21 U.S.C. §§ 1901–08.  Gov't's Motion for Review and Appeal of Release Order ("Gov't's Appeal"), ECF No. 15.  Based on the parties' briefing and evidence proffered at a hearing held on March 3, 2020, including evidence not previously presented to the Magistrate Judge, the government's motion for review was granted, and the Magistrate Judge's order releasing the defendant was reversed.

This memorandum opinion sets out the findings and reasons for this Court's determination that the defendant must be detained pending trial.  *See* 18 U.S.C. § 3142(i)(1) (requiring that a detention order "include written findings of fact and a written statement of the reasons for the detention"); *United States v. Nwokoro*, 651 F.3d 108, 112 (D.C. Cir. 2011) (remanding to the district court for a preparation of "findings of fact and a statement of reasons in support of [defendant's] pretrial detention" when a transcription of the detention hearing was insufficient).

Also pending is the defendant's motion to compel discovery of evidence she says is necessary to argue adequately in favor of her pretrial release. Def.'s Mot. to Compel Production of Evid. and Witnesses and Incorporated Mem. of Points and Auths. ("Def.'s Disc. Mot."), ECF No. 13. The defendant is not entitled to the significant discovery she requests at this early stage of the proceedings and that motion is denied.

## I.   LEGAL AND PROCEDURAL BACKGROUND

The Kingpin Act allows "the Secretary of the Treasury—and by delegation the Office of Foreign Assets Control [("OFAC")] . . .—to deem foreign persons who 'materially assist[] in . . . international narcotics trafficking activities' as 'specially designated narcotics traffickers.'" *Fares v. Smith*, 901 F.3d 315, 318 (D.C. Cir. 2018) (quoting 21 U.S.C. § 1904(b)(2)–(4) and citing 31 C.F.R. §§ 598.314, 598.803).[1] The Kingpin Act, *inter alia*, makes it a crime for United States persons to engage in "[a]ny transaction . . . in property or interests in property" of a designated entity or to engage in "[a]ny transaction or dealing . . . that evades or avoids, or has the effect of evading or avoiding" the prohibition on such transaction. 21 U.S.C. § 1904(c)(1)–(2).

On February 13, 2020, a grand jury returned a sealed indictment against the defendant. In it the government alleges that "[b]eginning on or about September 17, 2015," the defendant began engaging in transactions with five separate companies, each of which had been designated under the Kingpin Act. *See* Indictment at 1, ECF No. 1. Those companies are J&P Advertising S.A. de C.V., JJGON S.P.R. de R.L. de C.V., Las Flores Cabanas (aka Cabanas Las Flores), Mizu Sushi Lounge and Operadora Los Famosos, S.A. de C.V. (aka Kenzo Sushi and Operadora Los Famosos, S.A.P.I. de C.V.), and Onze Black (aka Tequila Onze Black). Indictment at 1–4.

---

[1] For purposes of the Kingpin Act, "foreign person" is defined to include "any entity not organized under the laws of the United States." 21 U.S.C. § 1907(2).

The defendant was arrested less than two weeks after the indictment was filed when, on February 26, 2020, she came to this Court to visit her brother, who is a defendant in a criminal case also pending, *see United States v. Oseguera-Gonzalez*, Crim. Case. No. 16-229 (BAH) (D.D.C. Dec. 14, 2016). She was arraigned that day and held pending a hearing to determine whether she should be detained or released pretrial. Min. Entry (Feb. 26, 2020). The government formalized its request for defendant's pretrial detention in a motion filed on February 28, 2020. Gov't's Mot. for Pre-Trial Detention ("Gov't's Det. Mot."), ECF No. 12. The detention hearing on that motion was conducted, on March 2, 2020, before a Magistrate Judge, who denied the government's bid to have defendant detained pending trial and instead ordered her released under certain conditions. *See* Min. Entry (Mar. 2, 2020); *see also* Order Setting Conditions of Release ("Release Order"), ECF No. 17. Specifically, the Magistrate Judge conditioned release on defendant's participation in a High Intensity Supervision Program, her surrender of both her U.S. and Mexican passports, GPS location monitoring and home detention at a residence in Washington, D.C., weekly in-person reports to a probation officer, and execution of a $500,000 bond secured by a piece of property in California owned by defendant's aunt which, it was represented to the Magistrate Judge, was worth at least $500,000. Release Order 1–3; Appearance Bond at 1–2, ECF No. 17-1.[2]

At the government's request, the Magistrate Judge stayed her ruling in order to allow the government to petition this Court for review. Min. Entry (Mar. 2, 2020). A hearing was promptly scheduled for and held the next day, on March 3, 2020. Min. Entry (Mar. 2, 2020); Min. Entry (Mar. 3, 2020).

---

[2] At the detention hearing before this Court, however, the government proffered that the property had an assessed value of only $109,889 and was last sold for $99,999, substantially lower than $500,000 appearance bond it was meant to secure. Rough Transcript of Hearing (Mar. 3, 2020) ("Hr'g Tr. (Rough)") at 15:2–5, 16:13–14.

## II.     LEGAL STANDARDS

The government's petition for review of the Magistrate Judge's Release Order is not the only motion pending in this case.  Perhaps because the Magistrate Judge decided to release defendant, she did not rule on the defendant's motion to compel production of evidence she asserts is necessary properly to press her case for pretrial release.  Both motions were resolved orally in summary fashion at the hearing and are more fully explained here.  The standard for each is discussed in turn.

### A.     Motion to Compel Discovery

Federal Rule of Criminal Procedure describes the materials that both the government and defendant must disclose after a criminal case is commenced.  FED. R. CRIM. P. 16(a)–(b).  When a party fails to comply with its disclosure obligations, "the court may," *inter alia*, "order that party to permit the discovery" requested.  FED. R. CRIM. P. 16(d)(2).  The district court, however, is not required to do so, and is afforded "wide discretion" in determining whether to take action under Rule 16(d).  *United States v. Gray-Burriss*, 791 F.3d 50, 55 (D.C. Cir. 2015) (quoting *United States v. Marshall*, 132 F.3d 63, 69 (D.C. Cir. 1998)).

### B.     Motion for Pretrial Detention

The standard of review for review of a magistrate judge's order for release is *de novo*, and a district judge conducting that review must "promptly," 18 U.S.C. § 3145(a), make an independent determination whether conditions of release exist that will reasonably assure the defendant's appearance in court or the safety of any other person or the community, pursuant to § 3142(e)(1).  *See* 28 U.S.C. § 636(a)(2) (authorizing magistrate judges to "issue orders pursuant to section 3142 of title 18 concerning release or detention of persons pending trial"); 18 U.S.C. § 3145(a) ("If a person is ordered released by a magistrate judge . . . the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for

revocation of the order."); *see also United States v. Henry*, 280 F. Supp. 3d 125, 128 (D.D.C. 2017) ("The Court reviews *de novo* whether there are conditions of release that will reasonably assure the safety of any other person and the community."); *United States v. Hunt*, 240 F. Supp. 3d 128, 132–33 (D.D.C. 2017) (noting that "although the D.C. Circuit has not yet addressed the issue, the many circuits that have agree that the district judge should review *de novo* a detention decision rendered by a Magistrate Judge" (quoting *United States v. Ali*, 793 F. Supp. 2d 386, 388 n.2 (D.D.C. 2011))) (collecting cases). "The Court is free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons." *United States v. Hubbard*, 962 F. Supp. 2d 212, 215 (D.D.C. 2013) (quoting *United States v. Sheffield*, 799 F. Supp. 2d 18, 19–20 (D.D.C. 2011)).

## III.  DISCUSSION AND FINDINGS

The defendant's pending motion to compel discovery is addressed first since she insists that such discovery is necessary for her to be able to argue in favor of her pretrial release. Finding that the defendant is not entitled to compelled discovery at this time, no impediment is presented to considering the government's motion for review.

### A.  Defendant is Not Entitled to A Court Order Compelling Discovery at This Time

On Friday, February 28, 2020, defendant sent a letter to government attorneys requesting several categories of evidence. Def.'s Notice of Filing, Att. 1 ("Def.'s Disc. Letter") at 1, ECF No. 10-1. The letter sought discovery in order to "prepare for Mr. [sic] Gonzalez's detention hearing and her defense at trial." *Id.* The letter demanded several categories of evidence, some of which defendant only requested to be disclosed after the scheduled detention hearing. *See, e.g., id.* at 4 (requesting "404(b) evidence . . . by March 25, 2020"). As to the evidence

defendant wanted in order to prepare for her detention hearing, she requested that it be turned over by "close of business" on February 28, 2020, the day the letter was sent. *Id*. at 2.

The government responded by e-mail, stating "we plan to have production for you on Friday." Def.'s Disc. Mot., Ex. 1 at 1, ECF No. 13-1. According to the defendant that discovery was not provided, prompting her, on Sunday, March 1, 2020, to file her motion to compel discovery. Def.'s Disc. Mot. at 2. Although defendant's initial discovery letter was a broad pretrial discovery request, her motion to compel made clear which categories of evidence she sought in anticipation of her detention hearing. In particular, defendant wanted "(1) all evidence that would permit Ms. Gonzalez to challenge the weight of the evidence at the detention hearing scheduled for Monday, March 2, 2020; (2) identification of all cases within the past five years where the United States has charged an individual under 21 U.S.C. §§ 1904 and 1906; and (3) all evidence the Government had in its possession to support a finding of probable cause when law enforcement officers surveilled and attempted to interview Ms. Gonzalez in August 2019." *Id*. This evidence, she asserted, was being sought "pursuant to *Brady*," referring to *Brady v. Maryland*, 373 U.S. 83 (1963). *Id*. She made two additional requests "pursuant to *Brady*": (1) "an Order directing the Government to produce all evidence that the allegations in the Indictment against Ms. Gonzalez had been previously litigated in Mexico" and (2) "an Order directing the Government to produce the federal law enforcement agents who surveilled and questioned Ms. Gonzalez in August 2019 as witnesses at Ms. Gonzalez's . . . detention hearing." *Id*. at 4.[3]

---

[3] At the hearing, the government represented that some of the requested materials had been produced, but the defendant maintained those disclosures were inadequate and continued to pursue her motion to compel discovery. Hr'g Tr. (Rough) at 7:13–19.

*Brady* commands the government to disclose "evidence [that] is material either to guilt or to punishment" and explains that failure to do so "violates due process . . . irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. Defendant contends, however, that refusal to turn over the evidence she requests prior to her detention hearing would violate her Fifth Amendment due process rights. Def.'s Disc. Mot. at 4. This assertion is wholly unsupported. Indeed, she has pointed to no case in which any court has held that the government's *Brady* obligations must be fulfilled before a pretrial detention hearing. Instead, the D.C. Circuit has explained that "[a] pretrial detention hearing . . . is neither a discovery device for the defense nor a trial on the merits." *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996).

*Brady* was primarily concerned with ensuring that "criminal *trials* are fair." *Brady*, 373 U.S. at 87 (emphasis added). Subsequent opinions from both the Supreme Court and the D.C. Circuit have made clear that *Brady* obligations attach to proceedings relevant to the guilt or innocence of the defendant. Defendant points to *Strickler v. Greene*, 527 U.S. 263 (1999), to support her contention that *Brady* obligations must be met within days of an arraignment. Def.'s Disc. Mot. at 3. The sentence of that opinion on which defendant relies may appear capacious enough to admit defendant's argument. *Strickler*, 527 U.S. at 280 (explaining that evidence is "material" and therefore must be disclosed if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the *proceeding* would have been different" (emphasis added) (internal quotation marks and omitted) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). Only two paragraphs later, however, the Supreme Court clarified which "proceeding" was referenced. According to *Strickler*, "there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed

7

evidence would have produced a different *verdict*." *Id*. at 281 (emphasis added); *see also Bagley*, 473 U.S. at 674 ("The holding in *Brady* . . . requires disclosure only of evidence that is both favorable to the accused and 'material either to guilt or to punishment.'" (quoting *Brady*, 373 U.S. at 87)). The D.C. Circuit has also confirmed that the government's *Brady* obligation is relevant only with respect to proceedings bearing on the defendant's guilt or punishment. *See, e.g., United States v. Straker*, 800 F.3d 570, 603 (D.C. Cir. 2015) (explaining that "[a] *Brady* violation occurs when" there is a reasonable probability that nondisclosure "would have changed the *trial's* result" (emphasis added and internal quotation marks omitted) (quoting *United States v. Dean*, 55 F.3d 640, 663 (D.C. Cir. 1995)).

A pretrial detention hearing does not concern the defendant's guilt, innocence, or punishment. *See, e.g., Bell v. Wolfish*, 441 U.S. 520, 536–37 (1979) ("[T]he Government concededly may detain [a defendant] to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment."). Such a proceeding therefore does not implicate the due process concerns that animated *Brady*. Consequently, to the extent the defendant's motion to compel is founded on constitutional concerns, it is denied.

Although the defendant's motion indicates that all of the requested evidence is sought "pursuant to *Brady*," Def.'s Disc. Mot. at 2, she also cites Rule 16 as compelling the disclosure of some, if not all, of the same evidence, *id.* at 4. That there is no constitutional requirement for the discovery she requests at this stage of the case thus does not end the inquiry. The defendant correctly notes that one of the factors a court must consider when determining whether she should be released pretrial is the "weight of the evidence against" her. *Id*. at 3 (quoting 18 U.S.C. § 3142(g)(2)). According to defendant, this means that any exculpatory evidence or

evidence that would tend to support her pretrial release must be turned over so that she may adequately press her case for pretrial release.

The law is well-settled, however, that the parties may proceed by evidentiary proffer at a pretrial detention hearing, and the government need only inform the court what it believes it can show at trial. *Smith*, 79 F.3d at 1210. This is in accord with the statutory provisions that the defendant may "present information by proffer or otherwise" and that "[t]he rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." 18 U.S.C. § 3142(f)(2). In addition to longstanding practice in this Circuit, nothing in the text of Rule 16 requires the government to produce discovery before a pretrial detention hearing, which often occurs, as it did in this case, less than a week after a defendant is arraigned.

That conclusion is only strengthened by looking to Federal Rule of Criminal Procedure 16.1, which directs the parties in a criminal case to "confer and try to agree on a timetable and procedures for pretrial disclosure" pursuant to Rule 16 "[n]o later than 14 days *after* the arraignment." FED. R. CRIM. P. 16.1 (emphasis added). That rule also contemplates court intervention only "[a]fter the [parties'] discovery conference." *Id.* That 14-day window has yet to close in this case—the defendant was only arraigned a week ago. Min. Entry (Feb. 26, 2020). Rule 16 would be internally inconsistent if, as the defendant contends, the rule required disclosure of the evidence defendant requests within a week of the defendant's arraignment, but simultaneously gives the parties two weeks to come up with a workable discovery schedule. Finally, the unworkability of a regime in which all or most pretrial disclosure must take place before a pretrial detention hearing helps to explain why the government is allowed to proceed by proffer in the first place. *Cf. Smith*, 79 F.3d at 1210 ("A right to require the Government to

produce its witnesses against [the defendant at a pretrial detention hearing] would complicate the hearing to a degree out of proportion to the liberty interest at stake . . . ."). The defendant's motion to compel discovery is therefore denied.

### B. The Government Met its Burden to Justify Pretrial Detention

The government's motion to review the Magistrate Judge's decision to release defendant pending trial is now addressed, with *de novo* review of the release decision. The Bail Reform Act requires release of a defendant prior to trial unless a judicial officer determines, after a hearing, that "no condition or combination of conditions will reasonably assure the appearance of the person[.]" 18 U.S.C. § 3142(e)(1). "A determination that an individual is a flight risk must be supported by a preponderance of the evidence." *United States v. Vasquez-Benitez*, 919 F.3d 546, 551 (D.C. Cir. 2019) (citing *United States v. Vortis*, 785 F.2d 327, 328–29 (D.C. Cir. 1986) (per curiam)). In determining whether the government has met that burden, the Court must "take into account the available information concerning" four factors set out in 18 U.S.C. § 3142(g). These factors are: "(1) the nature and circumstances of the offense charged, . . .; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including . . . the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and . . .; (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). These factors, and the findings that underpin each one, are discussed *seriatim*.

#### 1. *The Nature and Circumstances of the Offense*

As noted above, the defendant has been charged with five counts of violating the Kingpin Act, predicated on allegations that she engaged in transactions with five different companies that

have been designated as entities "controlled or directed by" or "materially assisting" the narcotics trafficking operations of the Cartel de Jalisco Nueva Generacion ("Jalisco Cartel"). The government has proffered that the Jalisco Cartel is one of the largest and deadliest narcotic trafficking organizations in Mexico. Gov't's Det. Mot. at 4. Moreover, the government alleges that the defendant is the daughter of the head of the Jalisco Cartel and therefore has close familial connections to that organization at the highest level. *Id.*; *see also* Rough Transcript of Hearing (Mar. 3, 2020) ("Hr'g Tr. (Rough)") at 12. Although the defendant is charged with a non-violent crime, the provision of direct or indirect material support for one of the most violent cartels in Mexico is a salient point that cannot be ignored.

The defendant notes that this federal offense is seldom charged and highlights that, in the single other instance of its use by United States prosecutors located by defense counsel, the defendant was sentenced to probation. Def.'s Opp'n to Gov't's Mot. for Pre-Trial Detention and Incorporated Mem. of Points and Auths. ("Def.'s Opp'n") at 4, ECF No. 14 (citing *United States v. Sanchez*, Case No. 07-cr-20587-ASG-2 (S.D. Fla. Jul. 27, 2007); *id.*, Ex. 5 at 2, ECF No. 14-5 (copy of judgment in *United States v. Sanchez*). The result in *Sanchez*, in which the defendant was sentenced after she pleaded guilty and in which government prosecutors recommended a reduction in her sentencing guidelines calculation for "assist[ing] authorities in the investigation or prosecution of [her] own misconduct," *id.*, Ex. 4 at 3, ECF No. 14-4 (*Sanchez* plea agreement), has little bearing on the seriousness of the allegations in *this* case. As the government has proffered, it intends to prove that defendant "held and maintained a leadership role in" the five companies mentioned in the indictment. Gov't Det. Mot. at 4; *see also* Hr'g Tr. (Rough) at 8–9. If proven, defendant would face up to 30 years' imprisonment on each of the five counts. *See* 21 U.S.C. § 1906(a)(2) (explaining that "any officer, director, or agent of any

11

entity who knowingly participates in a violation" of the Kingpin Act "shall be imprisoned for not more than 30 years, fined not more than $5,000,000, or both").[4] That a different defendant in a factually dissimilar case received a probationary sentence does not convert what Congress clearly determined was a serious offense into a mere trifle.

The nature and circumstances of the allegations in this case, including that defendant was alleged to be in a leadership role in organizations that provided material assistance to one of the most violent Mexican cartels and is closely related as the daughter and sister of the leaders of that cartel, clearly weigh in favor of pretrial detention.

### 2.   *The Weight of the Evidence Against the Defendant*

The government asserts that "the evidence against the defendant here is particularly strong."  Gov't's Det. Mot. at 5.  That evidence includes "publicly available business records, social media, websites, and press" connecting the defendant to the companies in question both before and after they were designated as providing material assistance to or directed by the Jalisco Cartel.  *Id*.  The government also avers that several witnesses with personal knowledge of the defendant's roles in those companies are prepared to testify.  Hr'g Tr. (Rough) at 10:18–24.  At the hearing, the government explained that it has obtained from Mexico certain documents akin to business incorporation documents for two of the five companies, J&P Advertising and JJGON, that show defendant was "a partial owner of the businesses" and "the administrator which is essentially . . . the CEO."  *Id*. at 10:10–13.  The other three businesses were not incorporated in Mexico, but the government has evidence that defendant was the partial or sole

---

[4]   The government's indictment is silent on whether the defendant held one of the specified leadership roles triggering both a "knowingly" *mens rea* requirement and a maximum penalty of 30 years' incarceration, under 21 U.S.C. § 1906(a)(2).  *See generally* Indictment.  At the hearing in this matter, the government confirmed that it was pursuing a penalty under that provision, either by resting on the initial indictment, or by filing a superseding indictment making its charges clearer in that regard.  Hr'g Tr. (Rough) at 9:19–25.

owner "of the trademarks for those businesses." *Id*. at 10:18–24. The government also intends to produce witness testimony to show defendant "maintained an ownership interest" in those three businesses as well. *Id*. Furthermore, the government is prepared to present as witnesses law enforcement personnel who hand delivered a notice to a residential address of the defendant's uncle that was also the address used by the defendant on her California driver's license in April of 2015. *Id*. at 30:20–24. The notice, addressed to the defendant, explained that defendant's father, Nemesio Oseguera Cervantes, her uncle, Abigael Gonzalez Valencia, the Jalisco Cartel, and the Los Cuinis Drug Trafficking Organization ("Los Cuinis Cartel"), a drug cartel allegedly controlled by her uncle, had been "designated . . . as Specially Designated Narcotics Traffickers . . . pursuant to the" Kingpin Act by OFAC. Def.'s Ex. 1 at 1 (proffered at the hearing). The notice made clear that "[a]ny transaction or dealing by a U.S. person, or within the United States, in any property or interests in property of a designated entity or individual is generally prohibited unless authorized by OFAC." *Id*. The government also proffers that the notice was hand delivered to the defendant directly in an August 2019 encounter between her and federal agents. Hr'g Tr. (Rough) at 30:17–19.

The defendant contends that the burden for establishing the weight of the evidence here is particularly heavy because the statute requires a showing that she "willfully" violated the law. Def.'s Opp'n at 5 (citing 21 U.S.C. § 1906). The Kingpin Act includes two separate criminal penalties. For persons who "willfully violate[] the" Act or "willfully neglect[] or refuse[] to comply with any order of the President issued" thereunder, the Kingpin Act contemplates imprisonment of not more than 10 years. 21 U.S.C. § 1906(a)(1). By contrast, the *mens rea* requirement is different for the second criminal penalty, which provides that an "officer, director, or agent of any entity who *knowingly* participates in a violation" of the Act is subject to the 30-

year penalty. *Id*. § 1906(a)(2) (emphasis added). The government says that it is pursuing the second penalty, which requires that the violations are committed "knowingly." Hr'g Tr. (Rough) at 9:4.

In any event, the government has proffered strong evidence that the defendant acted willfully. The government intends to show that notices of the OFAC designations of defendant's father, uncle, the Jalisco Cartel and Los Cuinis Cartel were widely publicized in both the United States and Mexico, *id*. 33:22–25, 34:1–3, and, more importantly, were hand delivered to an address used by the defendant on her driver's license as early as 2015 and handed directly to her in 2019, *id*. 30:17–24. The notice delivered to the defendant's address and to her person also directed defendant to OFAC's website. Def.'s Ex. 1 at 2. At the hearing the government produced a photographic chart from OFAC's website, dated "September 2015," that pictured defendant's father and uncle and noted that they and the cartels they allegedly control had been designated under the Kingpin Act. Gov't's Ex. 1 (proffered at the hearing). More to the point, the chart lists each of the five companies with which defendant is allegedly associated as "Entities Linked to" the Jalisco Cartel, and even includes the logos for each company. *Id*. In addition, the government proffers that the defendant, far from cutting off her relationship with the designated entities, "attempted to skirt" the designations "by changing the name and/or branding of [the] businesses." Gov't's Det. Mot. at 5; *see also* Hr'g Tr. (Rough) at 11:16–20. Finally, with respect to defendant's awareness of the consequences of an OFAC designation, the government averred that her then-husband Julio Alberto Castillo Rodriguez was, at some point, "sanctioned by OFAC pursuant to the Kingpin Act." Gov't's Det. Mot. at 4; Hr'g Tr. (Rough) at 34:4–9.

Taken together, this evidence strongly shows that "the law imposed a duty on the defendant, . . . the defendant knew of this duty, and [she] voluntarily and intentionally violated that duty." *Cheek v. United States*, 498 U.S. 192, 201 (1991); *cf. United States v. Zeese*, Crim. Case. No. 19-169, 2020 WL 554803, *5 (D.D.C. Feb. 4, 2020) (explaining that a *mens rea* of willfulness means different things in different statutory and regulatory contexts).

Defendant also argues that she was subject to similar allegations in Mexico and was acquitted. Def.'s Opp'n at 6; Hr'g Tr. (Rough) at 25:10–17. The government casts doubt on this assertion. At the detention hearing the government stated that Mexican law has no provision analogous to the Kingpin Act, which depends in part on OFAC designations of persons and entities. Hr'g Tr. (Rough) at 14:13–20. In any event, what Mexican prosecutors may or may not have been able to prove under Mexican law has little relevance to what U.S. prosecutors are prepared to show in support of their allegations that defendant violated U.S. law. The weight of the evidence in *this* case weighs strongly in favor of pretrial detention.

### 3. *The History and Characteristics of the Defendant*

The defendant is a dual citizen of both Mexico and the United States. She resides in Guadalajara, Mexico with her two young children. Def.'s Opp'n at 1. Although defendant has family in California and Texas, she has no known connection to the District of Columbia. *Id*. She does, however, have substantial familial and financial ties outside the United States, making it more likely she will be tempted to flee.

The government claims that the defendant is not only intimately related to the leadership of the Jalisco Cartel, but that her uncle is the leader of Los Cuinis Cartel, yet another Mexican drug trafficking organization. Gov't's Det. Mot. at 1. This, according to the government, gives defendant "access to substantial amounts of drug proceeds in the form of untraceable cash." *Id*.; *see also* Hr'g Tr. (Rough) at 15:12–20.

The defendant argues that the government has proffered no evidence showing her recent contact with members of these drug trafficking organizations. Hr'g Tr. (Rough) at 27:17–22. That contention somewhat strains credulity. Indeed, defendant was arrested in this Courthouse when she came to visit her brother, who is currently charged with drug trafficking offenses related to his alleged leadership role in the Jalisco Cartel. *Id.* at 27:23–25, 28:1–3; *see also* Indictment, *United States v. Oseguera-Gonzalez*, Crim. Case No. 16-229 (D.D.C. Dec. 14, 2016), ECF No. 1; Gov't's Mot. for Pre-Trial Detention at 2, *United States v. Oseguera-Gonzalez*, Crim. Case No. 16-229 (D.D.C. Feb. 25, 2020), ECF No. 13. More importantly, as described above, the government has evidence that she maintained a leadership role in five separate companies OFAC has designated as materially assisting the Jalisco Cartel. There is sufficient evidence to conclude that the defendant has access to the resources of at least one, if not two, powerful Mexican cartels that may wish to aid her flight before the trial in this matter commences.

The defendant also points to an incident in August of 2019 to buttress her case that she does not present a flight risk. At that time, defendant was in California with her children. Federal agents approached her and asked to interview her. Hr'g Tr. (Rough) at 26:9–16. Defendant avers that she agreed to be interviewed in a different location and provided a telephone number. *Id.* The government asserts that defendant did provide agents with a telephone number, but that they lost contact with her so the interview never occurred. *Id.* at 35:1–5. Most relevant to the instant proceedings, the defendant notes that, rather than flee to Mexico at the first whiff of an investigation into her activities, she chose to stay in California for thirty more days. Def.'s Opp'n at 7. She implies that her willingness to stay after approached by federal agents shows she will not flee now that she has been indicted and arrested. It almost goes

without saying that the temptation to flee after federal agents suggest an investigation into a person's conduct is underway pales in comparison to the motivation to flee once that person has been indicted and arrested. The August 2019 incident does little to counter the government's proffered evidence that the defendant has the means and motive to attempt to flee. This third factor also weighs in favor of pretrial detention.

### 4. *The Nature and Seriousness of the Danger Posed by Defendant's Release*

The government does not contend that the defendant poses a danger to the community but instead focuses on her risk of flight. This factor therefore weighs against pretrial detention.

***

Upon consideration of the proffered evidence presented at the hearing in this matter, the factors set forth in 18 U.S.C. § 3142(g), and the possible release conditions set forth in § 3142(c), the Court finds that three of the four statutory factors strongly favor pretrial detention and that the defendant represents a serious risk of flight. Thus, the government has met its burden to show, by a preponderance of the evidence, that "no condition or combination of conditions will reasonably assure the appearance of the" defendant. 18 U.S.C. § 3142(e)(1); *Vasquez-Benitez*, 919 F.3d at 551. Accordingly, the government's motion for review and appeal of the release order is granted and the defendant shall remain in the custody of the Attorney General for confinement pending a final disposition in this case. *See* 18 U.S.C. § 3142(i).

## IV. ORDER

Upon consideration of the Indictment, ECF No. 1, the government's Motion for Review and Appeal of Release Order, the defendant's motion to compel discovery, the evidence proffered and arguments presented in connection with the government's motion at the detention hearing held on March 3, 2020, the entire record, and the factors enumerated in 18 U.S.C.

§ 3142(g), based upon the written findings of fact and statement of reasons set forth in this Memorandum Opinion, it is hereby

**ORDERED** that the defendant's Motion to Compel Discovery is DENIED; it is further

**ORDERED** that the government's Motion for Pretrial Detention is GRANTED; and it is further

**ORDERED** that the defendant, Jessica Johanna Oseguera Gonzalez, be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; and it is further

**ORDERED** that the defendant be afforded reasonable opportunity for private consultation with counsel; and it is further

**ORDERED** that, on order of this Court or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confined shall deliver the defendant to the U.S. Marshal for the District of Columbia for the purpose of an appearance in connection with a court proceeding.

**SO ORDERED.**

Date: March 5, 2020

_____
BERYL A. HOWELL
Chief Judge