UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO.: 1:20-CR-040 |
| | ) |
| JESSICA JOHANNA OSEGUERA GONZALEZ, | ) ) |
|     also known as "Jessica Johanna Castillo" and "La Negra," | ) ) |
| | ) |
| Defendant. | ) |

**RESPONSE TO DEFENDANT'S EMERGENCY MOTION FOR RECONSIDERATION OF THE COURT'S DETENTION ORDER**

The government respectfully submits this response in opposition to the defendant's Emergency Motion for Reconsideration of the Court's Detention Order. First, because the defendant is currently appealing the issue of her pretrial detention, this Court has been divested of jurisdiction as to that issue and cannot reconsider its earlier order as a threshold matter. Second, even if this Court does reach the merits, the defendant's motion should be denied as it does not set forth a sufficient basis to justify reconsideration. The defendant remains a serious flight risk, and even in light of the outbreak of COVID-19 in the United States, there is no condition or combination of conditions that could reasonably assure her presence in this Court.

**I.      Procedural History and Background**

A grand jury sitting in this district returned a sealed indictment against the defendant on February 13, 2020. *See* ECF No. 1 ("Indictment"). Pursuant to an arrest warrant issued the same day that the Indictment was returned, the defendant was arrested on February 26, 2020, when she came to this Court to attend proceedings related to her brother, who is a defendant in a pending criminal matter. *See United States v. Ruben Oseguera Gonzalez*, Crim. Case No. 16-229 (BAH). She was arraigned the same day and held pending a detention hearing. The government filed a

motion for pre-trial detention on February 28, 2020. *See* ECF No. 12 ("Gov't Det. Mot."). A Magistrate Judge in this district conducted a detention hearing on March 2, 2020, and denied the government's motion for detention, instead ordering the defendant released under conditions. *See* ECF No. 17 ("Release Order"); *see also* March 2, 2020 Minute Entry. Among other things, the Magistrate Judge directed the execution of a property bond secured by a piece of land in California owned by the defendant's aunt, which the defendant had represented to the Magistrate Judge was worth at least $500,000. *See* ECF No. 17-1.

The government successfully sought a stay of the Magistrate Judge's ruling to allow the government to petition this Court for review. This Court held a hearing the next day, on March 3, 2020. In reviewing the Magistrate Judge's ruling, this Court held that the government had met its burden to justify pretrial detention. *See* ECF No. 19 at 10-18 ("Detention Order"). In a detailed written opinion analyzing the applicability of the factors set forth in 18 U.S.C. § 3142(g), the Court concluded that (1) the nature and circumstances of the offence, (2) the weight of the evidence against the defendant, and (3) the history and characteristics of the defendant weighed in favor of pretrial detention. *See id.* Additionally, noting the defendant's ties to Mexico and the government's proffer of her access to resources and her links to Mexican drug cartels, the Court concluded that the defendant represented a "serious risk of flight." *See id.* at 16-17 ("There is sufficient evidence to conclude that the defendant has access to the resources of at least one, if not two, powerful Mexican cartels that may wish to aid her flight before the trial in this matter commences.").

Following this Court's order of detention, the defendant entered a notice of appeal, seeking interlocutory review of the Detention Order by the Court of Appeals for the District of Columbia Circuit. *See* ECF No. 20. The D.C. Circuit has established a briefing schedule for

review of the Detention Order, with the defendant's opening brief due on March 30, 2020, the government's opposition due on April 9, 2020, and the defendant's reply due on April 16, 2020. *See United States v. Jessica Oseguera Gonzalez*, No. 20-3018, ECF Doc. No. 1832748 (D.C. Cir. Mar. 10, 2020).

As the Court is well aware, the coronavirus strain known as COVID-19 has reached pandemic proportions in recent weeks. *See generally* Standing Order 20-9 at 1 (D.D.C. Mar. 16, 2020) (BAH) ("COVID-19 Standing Order"). Citing the risks posed by the COVID-19 pandemic, the defendant has moved this Court for reconsideration of the Detention Order, seeking the defendant's release pending trial. *See* ECF No. 27 ("Def. Mot."). In a Minute Order issued March 19, 2020, and amended March 20, 2020, the Court ordered the government to file the instant response to the defendant's motion. On March 21, 2020, the defendant filed a supplement to her motion for reconsideration. *See* ECF No. 28 ("Def. Supp.").

## II. Legal Standards

Several legal issues are presented by the defendant's motion. First is a threshold issue of jurisdiction to consider the defendant's release in light of the pending interlocutory appeal. Second are the standards for reconsideration of an earlier ruling, and third is the law governing pretrial detention.

### A. Jurisdiction Pending Interlocutory Appeal

As the D.C. Circuit has explained, "[t]he filing of a notice of appeal is 'an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal.'" *United States v. DeFries*, 129 F.3d 1293, 1302 (D.C. Cir. 1997) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). This principle applies not only to appeals of final decisions, but properly-

appealable interlocutory orders. *See Robertson v. Cartinhour*, 691 F. Supp. 2d 65, 74-75 (D.D.C. 2010). A pretrial detention order is an interlocutory order that may be appealed to the circuit court of appeals. *See generally United States v. Nwokoro*, 651 F.3d 108, 108-110 (D.C. Cir. 2011).

A judge in this district has previously held that a motion for reconsideration after the entry of a notice of appeal would permit a district court to consider only a defendant's request for correction of his sentence – because Federal Rule of Appellate Procedure 4(b)(5) explicitly allows a district court to retain jurisdiction to correct a sentence – but not other matters for which the defendant sought reconsideration. *See United States v. Howard*, 267 F. Supp. 2d 1, 2-3 (D.D.C. 2003). Other federal courts have likewise concluded that a district court retains no jurisdiction over a particular matter while that matter is on appeal. *See, e.g., United States v. Vroman*, 997 F.2d 627, 627 (9th Cir. 1993) ("The district court was without jurisdiction to respond to Vroman's motion for reconsideration because he filed it after having filed a notice of appeal."), *United States v. Salzano*, 994 F. Supp. 1321, 1322 (D. Kan. 1998) ("[D]efendant's motion to reconsider must be denied as this court was divested of its jurisdiction to consider matters presented by the defendant upon the filing of his Notice of Appeal."), *United States v. Rollins*, No. 05-CR-301334, 2009 WL 56903, at *1 (S.D. Ill. Jan. 7, 2009) ("Because this matter is now on appeal to the Seventh Circuit, the Court has no jurisdiction to consider Defendant's Motion to Reconsider.").

### B.  Motions for Reconsideration in Criminal Cases

Where a motion in a criminal case seeks reconsideration of an interlocutory order, this district applies an "as justice requires" standard of review. *See United States v. Villongco*, No. 07-9 (BAH), 2017 WL 2560905, *2 (D.D.C. June 13, 2017) (citing with approval *United States*

*v. Hong Vo*, 978 F. Supp. 2d 41, 47-48 (D.D.C. 2013) ("To motions for reconsideration of interlocutory orders, however, [judges in this district] have applied the 'as justice requires' standard normally applied to motions under Rule 54(b) of the Federal Rules of Civil Procedure.")).  As the *Hong Vo* court explained:

> "[A]sking 'what justice requires' amounts to determining, within the court's discretion, whether reconsideration is necessary under the relevant circumstances." *Cobell v. Norton,* 355 F.Supp.2d 531, 539 (D.D.C.2005). Those circumstances include when a court has "'patently misunderstood the parties, made a decision beyond the adversarial issues presented, [or] made an error in failing to consider controlling decisions or data, or [where] a controlling or significant change in the law has occurred.'" *Arias v. DynCorp,* 856 F.Supp.2d 46, 52 (D.D.C.2012) (quoting *Negley v. FBI,* 825 F.Supp.2d 58, 60 (D.D.C.2011)).

*Hong Vo*, 978 F. Supp. 2d at 48.  *See also United States v. Gamble*, No. 19-348 (CKK), 2020 WL 588323, *3 (D.D.C. Feb. 6, 2020) ("Justice may also require reconsideration where a controlling or significant change in the law or facts has occurred since the submission of the issue to the court.") (internal quotation marks and citation omitted).

**C. The Bail Reform Act and Standards for Detention**

The Court's Detention Order properly set forth the standards for pretrial detention pursuant to the Bail Reform Act.  *See* Detention Order at 10.  In particular, the Bail Reform Act requires release of a defendant pending trial unless a judicial officer determines, after a hearing, that "no condition or combination of conditions will reasonably assure the appearance of the person" in court.  18 U.S.C. § 3142(e)(1).  A determination that a defendant presents a risk of flight "must be supported by a preponderance of the evidence," *United States v. Vasquez-Benitez*, 919 F.3d 546, 551 (D.C. Cir. 2019), and at a detention hearing, the parties may proceed by evidentiary proffer.  *See United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996).  In determining whether the government has met its burden where the government seeks detention, a court must "take into account the available information concerning" the four factors set forth in

5

18 U.S.C. § 3142(g), which are (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the defendant, (3) the history and characteristics of the defendant, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

### III. Argument

#### A. The Court Lacks Jurisdiction to Consider the Defendant's Motion for Reconsideration

As set forth above, the Court's Detention Order is currently on appeal to the D.C. Circuit. *See* ECF No. 20, *see generally United States v. Jessica Oseguera Gonzalez*, D.C. Cir. Case No. 20-3018. Because the filing of a notice of appeal "confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal," *DeFries*, 129 F.3d at 1302, this Court lacks jurisdiction to reconsider the Detention Order. The fact that the defendant's motion raises a new issue not previously before the Court when the Court issued the Detention Order does not change this analysis, as a "district court does not regain jurisdiction over those issues until the court of appeals issues its mandate." *Id.* (citing *Johnson v. Bechtel Associates Professional Corp.,* 801 F.2d 412, 415 (D.C.Cir.1986) (per curiam)). The Court must therefore deny the defendant's motion for reconsideration.

#### B. Even If the Court Reaches the Merits, There Is No Basis for Reconsideration

The defendant's motion does not specifically identify the basis upon which she seeks reconsideration under the "as justice requires" standard applicable in this Court for reconsideration of interlocutory orders in criminal cases. *See Hong Vo*, 978 F. Supp. 2d at 47-48. It seems clear, though – given that the defendant's motion seeks relief in light of the COVID-19 pandemic – that the defendant contends that a "significant change in the . . . facts" has occurred since the Court issued the Detention Order.

While the risks posed by the COVID-19 pandemic are real for all people, the defendant does not explain how her own detention increases her risk of exposure to the virus. Nor does she explain how her release into the community, which has already been exposed to the COVID-19 virus, would protect her to a greater extent than her current placement in the District of Columbia Department of Corrections ("DOC").

Additionally, DOC has undertaken several steps to ensure the safety of its incarcerated population: (1) suspending non-attorney visits to limit exposure, (2) implementing screening procedures for visitors and incoming residents, including assessing visitors and residents for symptoms, (3) diverting incoming residents who fail initial screening procedures to medical care, (4) implementing an incident command program whereby DOC staff and leadership meet daily to review ongoing processes and procedures related to COVID-19, (5) ensuring that staff take preventative measures, including the screening of staff as they enter DOC facilities. *See* https://doc.dc.gov/page/coronavirus-prevention.

Even assuming that a resident or staff member at DOC becomes infected by COVID-19, which may be unfortunately possible, the defendant has not offered any facts about her particular health or situation that would mitigate in favor of her release on conditions in light of the other facts previously considered by this Court at the detention hearing and in support of the Detention Order. The government respectfully refers the Court to its previous submissions as well as the transcript of the detention hearing for a full recitation of those facts. *See* ECF Nos. 12 (Mot. for Temporary Detention), 15 (Mot. for Review and Appeal of Release Order), and 25 (Hr'g Tr.). As the government has previously explained, and as the Court cited in its Detention Order, the defendant resides in Guadalajara, Mexico, and has no connection to the District of Columbia. *See* Detention Order at 15. She has substantial family ties in Mexico as well as access to the

resources of two powerful drug cartels. *See id.* If released on conditions, she would present a serious risk of flight. As the Court previously explained, "the temptation to flee after federal agents suggest an investigation into a person's conduct is underway pales in comparison to the motivation to flee once that person has been indicted and arrested." *Id.* at 17. In short, the nature and circumstances of the charged offense, the weight of the evidence, the history and characteristics of the defendant, and the risk of flight have not changed in light of the COVID-19 pandemic.

Additionally, the government notes that the defendant seeks release on the conditions previously set by Magistrate Judge Meriweather, which this Court later rejected. *See* Def. Supp. at 2. As before, this proposal – especially its proposed property bond – should be viewed with skepticism. The property offered as bond is owned by the defendant's aunt, and the defense proffered its value at $500,000. As the government showed at the detention hearing in this Court, however, the property is a plot of land in Southern California that has an appraised value of only approximately $109,000 and previously sold for less than $100,000, suggesting an effort on the part of the defendant to mislead the Court as to the value of the property and therefore the strength of the proposed conditions of release. *See* Detention Order at 3 n. 2. Moreover, as the Court noted at the detention hearing, the use of a property or financial bond risks giving preferential treatment to those who have substantial financial resources. *See* ECF No. 25 at 16-17. Regardless, given the resources available to the defendant through her access and links to Mexican drug cartels, there is no property or financial bond so great that it would reasonably ensure the defendant's presence in this Court.

### IV. Conclusion

The government appreciates the gravity of the global pandemic and is committed to ensuring the safety and health of inmates like the defendant, just as the Court and DOC have taken steps of their own to respond to the COVID-19 pandemic and its particular effects in the District of Columbia. But because of the defendant's own interlocutory appeal of the Detention Order, this Court lacks jurisdiction to consider the defendant's motion. Should the Court conclude that it can address the merits, however, in light of the proactive and protective measures taken by DOC and the Court, the 3142(g) factors previously reviewed by the Court in the Detention Order, and the defendant's serious risk of flight, the government submits that the defendant's motion should be denied.

Respectfully submitted this 23rd day of March, 2020.

                            Marlon Cobar, Acting Chief
                            Narcotic and Dangerous Drug Section
                            Criminal Division
                            U.S. Department of Justice

By:      /s/
           Brett Reynolds
           Kaitlin Sahni
           Kate Naseef
           Narcotic and Dangerous Drug Section
           Criminal Division
           U.S. Department of Justice
           Washington, D.C. 20530
           Telephone: (202) 598-2950

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was sent via ECF to counsel of record for the defendant, this 23rd day of March, 2020.

By:      /s/
Brett Reynolds
Trial Attorney
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice