### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 20-cr-040 (BAH)** |
| | ) | |
| | ) | |
| **JESSICA JOHANNA OSEGUERA** | ) | |
| **GONZALEZ,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

### DEFENDANT JESSICA JOHANNA OSEGUERA GONZALEZ'S OPPOSITION TO THE GOVERNMENT'S MOTION TO EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT

Jessica Gonzalez, by and through undersigned counsel, submits the following in opposition to the government's motion to exclude time under the Speedy Trial Act.

## I.  BACKGROUND

The government has repeatedly said, and again states in the motion presently before the Court, that "[t]he Indictment in this case is the product of an extensive, long-term and ongoing investigation conducted by the Drug Enforcement Administration [] into the operations of two large-scale drug trafficking organizations [] based in Jalisco, Mexico known as the Cartel de Jalisco Nueva Generacion ('CJNG'), headed by Nemesio Oseguera Cervantes ('Mencho'), and Los Cuinis Drug Trafficking Organization ('Los Cuinis'), headed by Abigael Gonzalez Valencia ('Abi')." *See* Dkt. No. 35, at 2; Dkt. No. 12, at 2; Dkt. No. 15, at 2-3; and Mar. 2, 2020 Hrg. Tr., at 3.  With respect to the charges in this case, the government has proffered that it "intends to prove that the Defendant owns and operates five businesses, which have been designated by OFAC, and she failed to separate herself from the businesses post-designation despite notification, in violation of the Kingpin Act."  Dkt. No. 12, at 2.  According to the government, its "evidence at trial will

1

consist of testimony from cooperating witnesses who have communicated directly with the Defendant; publicly available business records; publicly available social media, websites, and press related to the businesses; and official OFAC designations and notices." Dkt. No. 12, at 2.

It is becoming increasingly clear that the government's evidence is weak, and it will not prove that Ms. Gonzalez received post-designation notice from OFAC. The government's evidence consists of: (1) a letter, entitled "Notification of Blocking of a Third Person" ("blocking notice") (Mar. 3, 2020 Hrg. Tr., at 23); (2) a web page from the U.S. Department of Treasury (*id.* at 24); (3) a press release from the U.S. Department of Treasury (*id.*); and (4) a publication in the *Federal Register* (*id.*). The "blocking notice" does *not* identify the entities listed in the Indictment and, therefore, it cannot be considered as any sort of notice. Mar. 3, 2020 Hrg. Tr., at 23. Moreover, the blocking notice, although undated, was created, according to the government, in April 2015, approximately *five months before* the companies identified in the Indictment were designated by OFAC. *Id.* at 31. No evidence was proffered by the government to show that Ms. Gonzalez read the U.S. Department of Treasury press release, read the notice in the *Federal Register*, or accessed the U.S. Department of Treasury's website. *Id.* at 25.

On March 3, 2020, government counsel stated to this Court that

the discovery is not expected to be extremely voluminous in this case. It's consisting of public records available in Mexico that are Mexican government maintained records. It's also based upon marketing materials for five businesses named in the Indictment, as well as some social media postings . . . .

*Id*. at 4-5. Government counsel went on to state: "What is nice about this is there is no MLAT procedure that is necessary for [the Mexican government materials]." *Id.* at 5. Government counsel then told the Court that these documents had already been provided to the defense, along with publicly available trademark evidence. *Id.* Government counsel went on to state that "[t]here is a very limited amount of information that's derived from Mexican law enforcement activity that

I hope to have an MLAT to Mexico for tomorrow, if we're lucky." *Id.* at 6.  Government counsel

described the MLAT as "a very specific and narrow request." *Id.*  Finally, government counsel

stated, "[i]n terms of the overall volume of discovery, I don't anticipate this documentary evidence

to be much more than 100 or 200 pages, actually; maybe 300 at most." *Id.*  When the Court asked

the government, towards the end of the hearing, if it could produce discovery in two weeks, the

government did not object.  *Id.* at 54.

## II.  ARGUMENT

The government now moves to exclude time under the Speedy Trial Act because:  (1) the

likelihood of litigation under the Classified Information Procedures Act ("CIPA"); (2) the volume

of, and the need to translate Spanish-language discoverable documents; and (3) "evidence and

witnesses residing in foreign countries." Dkt. No. 35, at 3.  Based on the government's conclusory

representations, this Court cannot make the requisite findings to support a continuance and exclude

time under the Speedy Trial Act.  Therefore, the government's motion must be denied.

### A.      The Record Does Not Support An Ends-Of-Justice Continuance.

"[T]he Speedy Trial Act provides a criminal defendant with a statutory guarantee that [she]

will go to trial within 70 days of the date on which [her] indictment is made public or [she] makes

[her] initial appearance, whichever is later." *United States v. Reed,* 253 F. Supp. 3d 52, 57 (D.D.C.

2017) (citing 18 U.S.C. § 3161(c)).  The Speedy Trial Act excludes from this 70-day period "[a]ny

period of delay resulting from a continuance . . . if the judge granted such continuance on the basis

of [her] findings that the ends of justice served by taking such action outweigh the best interest of

the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A).  Courts are instructed

to consider specific factors when determining whether to grant a continuance, thereby suspending

the Speedy Trial Act's deadlines, under Section 3161(h)(7)(A).  *See* 18 U.S.C. § 3161(h)(7)(B).

One of these factors includes:

> Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

18 U.S.C. § 3161(h)(7)(B)(ii).  A finding that a continuance serves the ends of justice is "meant to be a rarely used tool for those cases demanding more flexible treatment."  *United States v. Larson*, 627 F.3d 1198, 1203 (10th Cir. 2010) (internal citation omitted).  This is particularly true here. While this Court's Order holding Ms. Gonzalez without bond pending trial has been affirmed by the United States Court of Appeals for the District of Columbia Circuit (*see* Dkt. No. 33), it cannot be disputed that, despite the efforts of District of Columbia Department of Corrections personnel, Ms. Gonzalez is imprisoned in an unsafe environment.  *See Banks v. Booth*, Civil Action No. 20-849 (CKK), 2020 WL 1914896, at *7 (D.D.C. Apr. 19, 2020) ("It is undisputed that, as of April 4, 2020, the infection rate in DOC facilities was over seven times the infection rate of the District of Columbia at large.").

"An ends-of-justice continuance is excludable only if the court 'sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trail.'"  *United States v. Rice*, 746 F.3d 1074, 1078 (D.C. Cir. 2014) (quoting 18 U.S.C. § 3161(h)(7)(A)).  "[T]he district court's findings must indicate that it seriously weighed the benefits of granting the continuance against the strong public and private interests served by speedy trials." *United States v. Bikundi*, 926 F.3d 761, 776-77 (D.C. Cir. 2019) (internal citations and quotations omitted).

> A record consisting of only short, conclusory statements lacking in detail is insufficient.  For example, it is insufficient to merely state that counsel is new and thus needs more time to adequately prepare for trial or that counsel or witnesses will be out of town in the weeks preceding trial and therefore more time is needed to prepare for trial.  Simply identifying an event, and adding the conclusory statement that the event requires more time for counsel to prepare, is not enough.

*United States v. Toombs*, 574 F.3d 1262, 1271-72 (10th Cir. 2009) (internal citations omitted).  In

*Toombs*, the sole explanation in the record – that a new attorney needed additional time to prepare

– was found to be inadequate.  *Id.* at 1272.

The record in this case is also sparse.  In its motion, the government states:  "After the

March 3, 2020, hearing and status conference in this matter, the government learned of additional

information and determined that it will need to conduct searches for potentially discoverable

information in the files of agencies other than the prosecution, which *could* result in CIPA

litigation."  Dkt. No. 35, at 6 (emphasis added).  As stated above, the government has repeatedly

said that "[t]he Indictment in this case is the product of an extensive, long-term and ongoing

investigation conducted by the Drug Enforcement Administration [] into the operations of two

large-scale drug trafficking organizations [] based in Jalisco, Mexico known as the Cartel de

Jalisco Nueva Generacion ("CJNG"), headed by Nemesio Oseguera Cervantes ("Mencho"), and

Los Cuinis Drug Trafficking Organization ("Los Cuinis"), headed by Abigael Gonzalez Valencia

("Abi")."  *See* Dkt. No. 35, at 2; Dkt. No. 12, at 2; Dkt. No. 15, at 2-3; and Mar. 2, 2020 Hrg. Tr.,

at 3.  Given this, the government must be required to disclose what it learned after March 3, 2020

that "could" result in CIPA litigation.[1]

The government next states that it

---

[1] The government has also failed to explain how the pandemic has delayed the government's ability to review relevant information.  Dkt. No. 35, at 6 n. 1.  Counsel recognizes the pandemic has, at the very least, disrupted all of our lives.  Notwithstanding, the government must explain why information cannot be reviewed through electronic means in a safe environment.

> has determined that discovery is likely to be more voluminous than previously
> expected, due to the receipt of a large volume of documents and wiretap evidence
> from the Government of Mexico in a partial response to a Mutual Legal Assistance
> Treaty request ("MLAT").    The government expects to disclose documents
> consisting of more than *47,860 pages*, the vast majority of which are in Spanish
> and require certified translation to the English language for use at trial.

Dkt. No. 35, at 6 (emphasis added).  On March 3, 2020, government counsel advised this Court

that "the discovery is not expected to be extremely voluminous in this case."  March 3, 2020, Hrg.

Tr., at 5.  The evidence, according to government counsel, would consist of "public records

available in Mexico that are Mexican government maintained records."  *Id.*  Government counsel

then said that "[t]here is a very limited amount of information that's derived from Mexican law

enforcement activity that I hope to have an MLAT to Mexico for tomorrow, if we're lucky."  *Id.*

at 6.  The prosecutor described the MLAT as "a very specific and narrow request."  *Id.*

Government counsel told this Court that the documentary evidence would be "*300 [pages] at

most.*"  *Id.* (emphasis added). Finally, government counsel did not object to completing discovery

two weeks from the March 3 hearing.  *Id.* at 54.  These conflicting statements do not provide a

basis for the Court to grant an ends-of-justice continuance.

In its motion, the government also provided the following as a basis to exclude time under

the Speedy Trial Act.

> In order to introduce foreign evidence at trial, including bank records and other
> documents obtained by Mexican law enforcement, the government plans to call
> foreign witnesses to authenticate relevant documentary evidence.  The government
> will need to submit documentation provided by these witnesses for certified
> translations from Spanish to English. The coordination of their testimony will be
> substantial and must be done through diplomatic channels.  Additionally, several
> other government witnesses reside in foreign countries.  The process of arranging
> for travel, passports, and visas for these foreign witnesses may take *several months*
> in normal circumstances and *will likely be further delayed* by the COVID-19
> (coronavirus) pandemic, which has affected government and court operations in
> this District and around the world.

Dkt. No. 35, at 7 (emphasis added).

None of this was brought to the Court's attention on March 3, 2020, or in prior proceedings or government filings.   In its motion for pretrial detention, the government stated, "the Government's evidence at trial will consist of testimony from *cooperating* witnesses . . . [and] statements of witnesses with personal knowledge of the Defendant's role in the designated businesses, *who are prepared to testify . . . .*"  Dkt. No. 12, at 2, 5.  In its motion for review and appeal of Magistrate Judge Meriweather's Release Order, the government stated:  "In addition to the documentary evidence mentioned above, the government has *cooperating sources* with personal knowledge of the Defendant's role in the designated businesses both before and after designation, *who are prepared to testify.*"  Dkt. No. 15, at 4 (emphasis added).  At the March 3, 2020 hearing, government counsel stated:

> Your Honor, there will also be, at a later date, 3500 material pursuant to the Jencks Act for some of the witnesses the Government intends to call at trial. That, also, will not be voluminous in nature. It will be based on debriefs with witnesses, but not exceptionally lengthy debriefs or lengthy cooperation periods.

Mar. 3, 2020 Hrg. Tr., at 6.  At no point, did the government tell this Court that "[t]he coordination of [its witness'] testimony will be substantial and must be done through diplomatic channels." Dkt. No. 35, at 7.

In its response to Ms. Gonzalez's emergency motion for reconsideration of the Court's detention Order, the government downplayed the risk of COVID-19, arguing the "DOC has undertaken several steps to ensure the safety of its incarcerated population . . . ."  Dkt. No. 29, at 7.  This stands in contrast to the government's most recent statement that "[t]he process of arranging for travel, passports, and visas for these foreign witnesses may take *several months* in normal circumstances and *will likely be further delayed* by the COVID-19 (coronavirus) pandemic, which has affected government and court operations in this District and around the world."  Dkt. No. 35, at 7 (emphasis added).  Conclusory statements that witnesses will not be able to appear at

trial for several months or longer due to logistics and the coronavirus are insufficient to permit the exclusion of time under the Speedy Trial Act.  This is also particularly true here, because the government has consistently maintained that its witnesses are cooperating with the prosecutors, and no mention was made about anything delaying their appearances in court.

> **B.**     **A Continuance Is Not Warranted Because Evidence May Exist In A Foreign Country.**

When the government demonstrates by a preponderance standard that it has requested evidence in a foreign country, the Court has discretion to delay a trial for up to one year.  18 U.S.C. § 3161(h)(8).  Under the plain reading of the statute, this period of delay is not automatically granted by the Court.  According to government, it "is still awaiting the receipt of the requested tax records and financial records" from Mexico.  Dkt. No. 35, at 9.  Pursuant to an MLAT, the government has already received "investigative records, documentary evidence, . . . evidence previously seized by Mexican law enforcement, . . . [and] foreign wiretap evidence" that it "anticipates" will show that Ms. Gonzalez engaged in certain business activities.  Dkt. No. 35, at 8.  Given this, there is not basis, on this record, to grant the government's request for a continuance "to exclude a period of delay, *not to exceed one year* . . . ."  Dkt. No. 35, at 9.  Again, this is particularly true here, in light of the government's prior representations that the MLAT to Mexico included "a very specific and narrow request."  Mar. 3, 2020 Hrg. Tr., at 6.

## III.  <u>CONCLUSION</u>

For the foregoing reasons, the government's motion to exclude time under the Speedy Trial Act must be denied.

Respectfully submitted,


<u>/s/ Steven J. McCool</u>
STEVEN J. McCOOL
D.C. Bar No. 429369
JULIA M. COLEMAN
D.C. Bar No. 1018085
McCOOL LAW PLLC
1776 K Street, N.W., Suite 200
Washington, D.C. 20006
Telephone: (202) 450-3370
Fax: (202) 450-3346
smccool@mccoollawpllc.com
jcoleman@mccoollawpllc.com

*Counsel for Jessica Johanna*
*Oseguera Gonzalez*

## CERTIFICATE OF SERVICE

I hereby certify that the 8th day of May 2020, I filed the foregoing opposition to the government's motion to exclude time under the Speedy Trial Act with the Clerk of the Court for the United States District Court for the District of Columbia and on counsel of record by using the CM/ECF system.


/s/ Steven J. McCool
STEVEN J. McCOOL