# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO.: 1:20-CR-040** |
| | ) | |
| **JESSICA JOHANNA OSEGUERA** | ) | |
| **GONZALEZ,** | ) | |
| **also known as "Jessica Johanna** | ) | |
| **Castillo" and "La Negra,"** | ) | |
| | ) | |
| **Defendant.** | ) | |

## GOVERNMENT'S OMNIBUS SET OF PRETRIAL MOTIONS

Pursuant to the Scheduling Order entered by the Court on May 26, 2020 (Minute Order), the government respectfully submits this omnibus set of pretrial motions. Specifically, the government moves (1) to introduce as "other crimes" evidence the defendant's association with a Mexico-based business not named in the indictment but which was designated as a Specially Designated Narcotics Trafficker by the Department of the Treasury's Office of Foreign Assets Control ("OFAC"); (2) to preclude argument and elicitation of testimony at trial suggesting that the government is required to show that the defendant had actual contemporaneous notice of the specific Foreign Narcotics Kingpin Designation Act ("Kingpin Act") designations underlying the indictment; and (3) to preclude argument and elicitation of testimony at trial aimed at challenging the nature or validity of the underlying Kingpin Act designations.[1]

## ARGUMENT

### I. Motion to Introduce Other Crimes Evidence At Trial

The government seeks to admit evidence of the defendant's involvement with another OFAC-designated entity. In particular, the government seeks to admit evidence stemming from

---

[1] Pursuant to the Court's Standing Order, Dkt. No. 16 (March 3, 2020), the government anticipates that additional motions *in limine* will be filed closer to trial.

the defendant's registration and management of a website for a company known as BRIC Inmobiliaria, a real estate business based in Jalisco, Mexico, which was designated by OFAC in August 2015, a month prior to the OFAC designation of five of the businesses in the indictment. Evidence of the defendant's connection to BRIC Inmobiliaria is admissible as intrinsic evidence that is inextricably intertwined with the proof of the charged crimes, or in the alternative, pursuant to Federal Rule of Evidence 404(b) in order to show her knowledge of the Kingpin Act's sanctions regime and the absence of mistake or accident in her continuing to transact or deal with the six OFAC-designated entities that are the subject of the indictment.

### A. The Charged Offenses

Count One alleges that the defendant engaged in transactions or dealings with J&P Advertising, S.A. de C.V. ("J&P Advertising"), a Mexico-based advertising company that was designated by OFAC on September 17, 2015. The government expects to show at trial that the defendant was listed on the incorporation paperwork of J&P Advertising as a 50% owner of the company, as well as the sole administrator ("administrador unico") of the business.[2] The government expects to show at trial that the defendant continued to operate the business after its designation by OFAC, in violation of the Kingpin Act.

Count Two of the indictment alleges that the defendant engaged in transactions or dealings with JJGON, S.P.R. de R.L. de C.V. ("JJGON"), a Mexico-based company that purported to transact in agricultural products, also designated by OFAC on September 17, 2015. The government expects to show at trial that the defendant was listed on the incorporation paperwork of JJGON as a 20% owner of the company, as well as its sole administrator.[3] The

---

[2] In Mexican corporate law, an "administrador unico" is "essentially a board of directors of one [person]." Robert E. Stevens *et al.*, *Doing Business in Mexico: A Practical Guide* 62 (2012).
[3] The company's name, JJGON, is also a portmanteau of the defendant's name, Jessica Johanna Oseguera Gonzalez.

government expects to show at trial that the defendant continued to operate the business after its designation by OFAC, in violation of the Kingpin Act.

Count Three of the indictment alleges that the defendant engaged in transactions or dealings with Las Flores Cabanas, an unincorporated business entity that provided vacation rental cabins in Mexico. Las Flores Cabanas was designated by OFAC on September 17, 2015. The government expects to show at trial that the defendant was involved in running the business, and in particular, that she applied for and owned the Mexican trademark for Las Flores Cabanas, and still owns the trademark today. Ownership of a trademark is a property interest specifically forbidden by the implementing regulations of the Kingpin Act. *See* 21 U.S.C. § 1904(c), 31 C.F.R. § 598.312. Additionally, the government expects to show at trial that the defendant changed the name of Las Flores Cabanas to Cabanas La Loma following the OFAC designation in an effort to evade the sanctions.

Count Four of the indictment alleges that the defendant engaged in transactions or dealings with two entities, Mizu Sushi Lounge and Operadora Los Famosos, S.A. de C.V., d/b/a Kenzo Sushi. Mizu Sushi Lounge was designated by OFAC on September 17, 2015, and thereafter changed its name to Kenzo Sushi, under the corporate umbrella of Operadora Los Famosos, S.A. de C.V. Operadora Los Famosos was then designated by OFAC on September 14, 2017. The government expects to show at trial that the defendant applied for and owned the Mexican trademark for Mizu Sushi Lounge, and continues to own the trademark today. Additionally, the government expects to show that Mizu Sushi Lounge's name change to Kenzo Sushi was motivated by the OFAC designation, because no other change was made to the business, which kept its logo, phone number, chefs, and menu. The government also expects to

show financial connections between the defendant and the re-named restaurant that continued after its designation.

Count Five of the indictment alleges that the defendant engaged in transactions or dealings with a tequila company known as Onze Black, which was designated by OFAC on September 17, 2015. As with Las Flores Cabanas and Mizu Sushi, the government expects to show at trial that the defendant applied for and owned the Mexican trademark for Onze Black, and continues to own the trademark today.

The government also expects to demonstrate the defendant's connections to the designated entities in other ways, including through photographs and social media postings. Although the government does not need to show that the defendant had actual notice of the particular OFAC designations,[4] the government nonetheless expects to show that the defendant's continuing transactions and dealings with the designated businesses were willful through a variety of documentary evidence. First, the government anticipates that corporate registration documents will show that the defendant dissolved the two legally incorporated entities, J&P Advertising and JJGON, shortly after the OFAC designation.[5] Second, the government anticipates that financial documents, corporate registration documents, and social media postings will show that the defendant changed the names of Mizu Sushi and Las Flores Cabanas following their designations, in an effort to evade the OFAC sanctions. Third, the government expects to show that OFAC "blocking notices" providing notice of the sanctions were provided

---

[4] *See infra.* Section II.A.

[5] Among other things, an OFAC designation would have limited those entities' access to financial institutions, web hosting services, and other business-to-business services. This both provides an explanation for the decision to dissolve the businesses as well as further evidence that the defendant willfully violated the OFAC sanctions by continuing to try to transact and deal with the designated entities even after the businesses' operations had been interrupted by other companies' decisions not to deal with or service the companies.

to an address previously used by the defendant in 2015, that such notices were provided to various family members of the defendant in 2015, and that one was personally hand-served on the defendant in 2019, but that at no time did the defendant seek a license from OFAC or otherwise seek to unwind her involvement in the designated businesses. Fourth, the government anticipates that messages sent to the defendant by one or more U.S.-based web hosting services will show that she was directly made aware of the OFAC sanctions by the web hosting services when they decided to disable her accounts in order to avoid transacting business with designated entities.[6]

### B. The Proposed Evidence

The proposed evidence generally relates to the fourth category of documentary evidence described above, which is evidence from web hosting services used by the defendant. Specifically, the government anticipates introducing direct documentary evidence related to the defendant's involvement with BRIC Inmobiliaria, a Mexico-based real estate company. On August 19, 2015, OFAC designated BRIC Inmobiliaria as a Specially Designated Narcotics Trafficker pursuant to the Kingpin Act. Although the instant charges against the defendant do not include charges related to BRIC Inmobiliaria, the government's investigation has revealed that the defendant transacted or dealt with BRIC Inmobiliaria in a manner that is probative of the charged conduct.

In particular, the government's investigation has revealed that the defendant, through her company J&P Advertising, was the listed registrant for BRIC Inmobiliaria's web address, bricinmobiliaria.com. Following OFAC's designation of BRIC Inmobiliaria, the web hosting

---

[6] This paragraph's description of anticipated documentary evidence is not intended to be exhaustive, but rather only to provide context for this motion. It should not be read to limit the proof that the government may present, nor does it account for non-documentary evidence in the form of witness testimony.

service used by the defendant to register BRIC Inmobiliaria's website, Bluehost, decided to deactivate the defendant's web hosting account. The defendant used the same account to register a number of other web domains as well, including domains related to businesses subject to the indictment: J&P Advertising (jp-adv.com), Tequila Onze Black (tequilaonce.com, tequilaonze.com), Mizu Sushi (mizusushi.mx, mizusushilounge.com), Las Flores Cabanas (cabanaslasflores.com, lasflorescabanas.com), and others. The web hosting service sent the defendant a notice on August 23, 2015, alerting her of the OFAC sanctions and its decision to deactivate her account. That notice read, in pertinent part:

> Jessica,
>
> It has recently come to our attention that a package under your control is providing service to individuals or businesses specifically designated as blocked . . . . Directives enforced by the Office of Foreign Assets Control (OFAC) of the U.S. Department of the Treasury, which administers and enforces trade and economic sanctions in accordance with U.S. policy, do not allow us as a U.S. company to do business with persons or entities on the blocked list . . . .
>
> Subject to the OFAC sanctions, we are unable to provide hosting, domain registration, and related services to any server, reseller, shared account, entity or person in the embargoed region or on the blocked list. . . .
>
> At this time, the account or accounts in question have been suspended and disabled. This means that your websites are not currently accessible to visitors, and you cannot log into your account. . . .[7]

Records from the web hosting service show that the very next day, a phone number registered to the Guadalajara, Mexico area – where the defendant resided and ran her businesses – contacted the company's customer service line and had a 26-minute phone call. Thereafter, the web hosting service appears to have severed the BRIC Inmobiliaria domain registration from the defendant's web hosting account in order to permit temporary reactivation of her account.

---

[7] This record and others received from the web hosting service have been provided to the defendant in discovery.

The next month, on September 17, 2015, OFAC designated additional businesses connected to the defendant: JJGON, J&P Advertising, Mizu Sushi, Tequila Onze Black, and Las Flores Cabanas. Thereafter, records from the web hosting service show that the defendant's domain registration account was again deactivated, and that the domain registrations for J&P Advertising, Mizu Sushi, Tequila Onze Black, and Las Flores Cabanas, among others, were specifically banned on account of the OFAC designations.

The government anticipates introducing this documentary evidence at trial, as well as related testimony, possibly to include testimony from investigative agents, representatives of the of the web hosting service, associates of the defendant who were aware of her activities vis-à-vis BRIC Inmobiliaria, associates of the defendant who were aware of her involvement in registering websites and domain names for various businesses, and others.

### C. Argument

1.  <u>The Proposed Evidence Is an Intrinsic Part of, and Inextricably Intertwined With, the Charged Crimes and Constitutes Direct Evidence Related to the Defendant's Willfulness</u>

Rule 404(b) of the Federal Rules of Evidence provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Fed. R. Evid. 404(b).

Rule 404(b) "excludes only evidence 'extrinsic' or 'extraneous' to the crimes charged, not evidence that is 'intrinsic' or 'inextricably intertwined.'" *United States v. Allen*, 960 F.2d 1055, 1058 (D.C. Cir. 1992), *cert. denied*, 506 U.S. 881 (1992); *see also United States v.*

*Gartmon*, 146 F.3d 1015, 1020 (D.C. Cir. 1998) (holding evidence that defendant charged with fraud had threatened a co-conspirator not "other crimes evidence" but instead "inextricably intertwined" with charged offense).

This Circuit has defined intrinsic "other crimes" evidence this way:

> Evidence of criminal activity other than the charged offense is not considered extrinsic if it is an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, if it was inextricably intertwined with the evidence regarding the charged offense, or it is necessary to complete the story of the crime of trial . . .

*United States v. Badru*, 97 F.3d 1471, 1474 (D.C. Cir. 1996), *cert. denied*, 520 U.S. 1150 (1997) (*citing United States v. Weeks*, 716 F.2d 830, 832 (11th Cir. 1983)).

Intrinsic evidence is admissible as direct evidence of the crimes charged and not subject to analysis under Federal Rule of Evidence 404(b). Because intrinsic evidence, "by its very nature, does not involve other crimes, wrongs or bad acts…there is no concern that it might be used as improper character evidence," *United States v. Lerma-Plata*, 919 F. Supp. 2d 152, 156 (D.D.C. 2013), and therefore, Rule 404(b) does not apply.

As a practical matter, "[w]hen evidence is 'inextricably intertwined' with the charged crime [or intrinsic], courts typically treat it as the same crime," *United States v. Bowie*, 232 F.3d 923, 928 (D.C. Cir. 2000), and admit such evidence. The D.C. Circuit has explicitly recognized "that evidence can be intrinsic to the crimes charged." *United States v. Sitzmann*, 856 F. Supp. 2d 55, 59 (D.D.C. 2012). According to the *Bowie* court, "(at least) two types of evidence may be properly considered 'intrinsic,' that is, not subject to Rule 404(b): (1) evidence 'of an act that is part of the charged offense'; and (2) evidence of 'some uncharged acts performed contemporaneously with the charged crime…[that] facilitate the commission of the charged crime.'" *Lerma-Plata*, 919 F. Supp. 2d at 156 (quoting *Bowie*, 232 F.3d at 929).

The D.C. Circuit also acknowledged that there are even "several forms of 'other crimes' evidence . . . [that] are not considered extrinsic within the meaning of Rule 404(b)." *Badru*, 97 F.3d at 1474. For instance, evidence of uncharged crimes may be intrinsic if it "arose out of the same series of transactions as the charged offense…or it is necessary to complete the story of the crime on trial." *Weeks*, 716 F.2d at 832. Thus, "[a]s long as evidence of the uncharged criminal conduct is offered as direct evidence of a fact in issue and not as circumstantial evidence of the character of the accused, it is admissible independent of its superficial similarity to that which would be considered evidence of 'other crimes' under Rule 404(b)." *United States v. Gray*, 292 F. Supp. 2d 71, 77-78 (D.D.C. 2003) (citing *Badru*, 97 F.3d at 1475) (citing 22 Charles A. Wright and Kenneth W. Graham, Jr., Federal Practice and Procedure § 5239 at 450 (1978)).

Here, the government's proffered evidence of the defendant's involvement with registering BRIC Inmobiliaria's web domain – and, as a result, receiving notification from the web host that it was shutting down her account because of the OFAC sanctions – should be admitted as inextricably intertwined and intrinsic to the charged conduct. The defendant used the same account with the web hosting service to register accounts for both BRIC Inmobiliaria *and* several of the later-designated businesses that are the subject of the indictment. Fortuitously, she received notice from the web hosting service informing her of the OFAC sanctions related to BRIC Inmobiliaria's OFAC designation first, shortly before the later designations of the businesses named in the indictment, but it nonetheless informed her of the OFAC sanctions regime and its consequences. And, indeed, the message sent to the defendant by the web hosting service informing her of the decision to suspend her account due to the OFAC designation did not specifically reference BRIC Inmobiliaria. Instead, it shut down her entire account. So when her account was again banned by the web hosting service a month later on account of the OFAC

designations that underlie the indictment, the previous notification message that she had received still supplied the reason: the web hosting service would not do business with her because of her affiliation with OFAC-designated websites and entities.

For this reason, the defendant's connection to BRIC Inmobiliaria, and the fact that she received a notice from the web hosting service related to the OFAC sanctions, bears directly on her willfulness in continuing to transact and deal with the designated entities. In other words, although specific notice of an OFAC designation is not required to prove a violation of the Kingpin Act, the fact that the defendant *did* receive notice from the web hosting service is powerful evidence of the willfulness of her conduct. And because the defendant used the same account with the web hosting service to register web domains for BRIC Inmobiliaria and several of the businesses in the indictment, the proposed evidence stemming from the earlier BRIC Inmobiliaria OFAC designation is intrinsic to, and inextricably intertwined with, her registration and management of websites for the businesses in the indictment.

    2.    <u>In the Alternative, the Proposed Evidence Is Admissible Pursuant to Rule 404(b)</u>

In the alternative, evidence of the defendant's connection to BRIC Inmobiliaria and the fact that she received notice from the web hosting service that it was suspending her account because of OFAC sanctions is admissible pursuant to Rule 404(b).

Rule 404(b) permits the admission of "evidence of other crimes, wrongs, or acts" to prove a material issue other than character, such as "motive, opportunity, intent, preparation, plan, knowledge, identity and absence of mistake or accident." Fed. R. Evid. 404(b). "Under the law of this circuit, 'Rule 404(b) is a rule of inclusion rather than exclusion'…and it is 'quite permissive,' excluding evidence only if it is offered for the sole purpose of proving that a person's actions conformed to his or her character." *United States v. Long*, 328 F.3d 655, 660-61

(D.C. Cir. 2003) (quoting *Bowie*, 232 F.3d at 923) (citations and quotations omitted). The Rule lists several permissible purposes of other crimes – e.g., to prove "motive, opportunity, intent, preparation, plan, knowledge, identity and absence of mistake or accident;" however, this list is "not exhaustive." *United States v. Miller*, 895 F.2d 1431, 1435 (D.C. Cir. 1990). "[T]he Government need not show that the evidence is being offered for one of the purposes specifically enumerated in the rule," *Lerma-Plata*, 919 F. Supp. 2d at 155. As the D.C. Circuit noted, "in some cases '[e]xtrinsic acts evidence may be critical…especially when th[e] issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." *United States v. Brown*, 597 F.3d 399, 404 (D.C. Cir. 2009) (quoting *Huddleston v. United States*, 485 U.S. 681, 685 (1988)). Even a collateral showing of character is insufficient to bar the evidence. As the D.C. Circuit has explained, "under Rule 404[b], '*any* purpose for which bad acts evidence is introduced is a proper purpose so long as the evidence is not offered *solely* to prove character.'" *United States v. Cassell*, 292 F.3d 788, 795 (D.C. Cir. 2002) (quoting *Miller*, 895 F.2d at 1436) (emphasis added).

This Circuit has accepted a two-pronged test for determining whether evidence of prior crimes is admissible under 404(b).[8] First, the evidence must be "probative of a material issue other than character." *See Miller*, 895 F.2d at 1435 (quoting *Huddleston*, 485 U.S. at 686)). Second, the evidence is subject to the balancing test of Federal Rule of Evidence 403, so that it is inadmissible only if the prejudicial effect, or to a lesser extent the effect of any other consideration under Rule 403, of admitting the evidence substantially outweighs its probative

---

[8] The *Miller* Court notes that "[t]his two-step analysis—certification of a 'proper' and relevant purpose under Rule 404(b), followed by the weighing of probity and prejudice under Rule 403— is firmly rooted in the law of this circuit." *Miller*, 895 F.2d at 1435 (citing *United States v. Manner*, 887 F.2d 317, 321 (D.C. Cir.1989), *cert. denied* 493 U.S. 1062 (1990) and *United States v. Lavelle*, 751 F.2d 1266, 1275 (D.C. Cir. 1985), cert. denied, 474 U.S. 817 (1985)).

value.  *See id.*  Even so, these considerations "[g]enerally . . . do not flatly prohibit the introduction of such evidence but instead limit the purpose for which it may be introduced." *Huddleston*, 485 U.S. at 687.

In assessing the relevance of other acts evidence under the first prong, the court "neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence.  The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence."  *Id.* at 690.  As to the probative value of such evidence, the court should consider "the similarity of the bad act with the charged offense, the time separating the two events, and the prosecution's need for the evidence."  *United States v. Lavelle*, 751 F.2d 1266, 1277 (D.C. Cir.), *cert. denied*, 474 U.S. 817 (1985) (citations and footnote omitted), *abrogated on other grounds by Huddleston*, 485 U.S. at 687 n.5.

In this case, evidence of the defendant's connection to BRIC Inmobiliaria and the notification provided to her by the web hosting service that it was suspending her account because of the OFAC designation should be admitted as evidence that demonstrates a common scheme or plan, as well as the defendant's intent, knowledge, and lack of mistake, pursuant to Rule 404(b), in continuing to transact and deal with the designated businesses that underlie the indictment.  Evidence that the defendant's web hosting service notified her that it would no longer do business with her because of the OFAC designation of BRIC Inmobiliaria, after which she either continued to operate the designated entities or, in the case of Mizu Sushi and Las Flores Cabanas, changed their names, is powerful evidence of her intent, knowledge, and lack of mistake in transacting with the designated businesses.  Indeed, without conceding the defendant's position on the appropriate willfulness standard, this is precisely the kind of

evidence that defense counsel previously argued that the government would have to present at trial. As the defendant's counsel argued at the detention hearing, "the government would have to prove that Ms. Gonzalez knew the specific law or conduct she violated . . . [or] that Ms. Gonzalez knew it was unlawful to deal with designated entities . . . ." *See* March 3, 2020 Transcript, Dkt. No. 25 at 25.

It is well-established that intent may be inferred by the repetition of similar acts and thus courts regularly admit evidence of the commission of similar crimes to prove intent. *See, e.g.*, *United States v. Douglas*, 482 F.3d 591, 596-597 (D.C. Cir. 2007) (holding that evidence that [the defendant] previously possessed and distributed crack cocaine to an undercover police officer has a tendency to make "it more probable," both that he knew the nature of the substance that he was charged with possessing and that he intended to distribute it.); *United States v. Crum*, 57 F.3d 1071, 1995 WL 364142, at *1-2 (6th Cir. 1995) (unpublished) (upholding admission of prior bribe to prove intent in bribery prosecution); *United States v. Zedner*, 401 F.3d 36, 49-50 (2d Cir. 2005) (holding in prosecution for defrauding a financial institution evidence of two prior episodes where the defendant committed mortgage fraud were admitted to prove defendant's "financial sophistication, his ability to execute complex schemes, and his ability to form intent to defraud."). If other crimes evidence is offered to show intent, "[w]hat matters is that the evidence be relevant to show a pattern of operation that would suggest intent and that tends to undermine the defendant's innocent explanation." *United States v. Long*, 328 F.3d 655, 661 (D.C. Cir. 2003) (citation and internal quotation marks omitted). In this case, evidence that the defendant had previously been informed that her web hosting account was being shut down because of her connection to BRIC Inmobiliaria upon its designation by OFAC undermines any "innocent" explanation that she did not know why her websites for Las Flores Cabanas, Tequila

Onze Black, Misu Sushi, and J&P Advertising, among others, were also shut down following the designations of those entities.

Likewise, evidence of the commission of similar crimes is also regularly admitted to prove knowledge and absence of mistake. *See, e.g.*, *United States v. Johnson*, 970 F.2d 907, 913-14 (D.C. Cir. 1992) (finding admission of two prior moneygram frauds to establish knowledge and participation in charged moneygram fraud scheme); *United States v. Brown*, 597 F.3d 399, 404-405 (D.C. Cir. 2010) (upholding admission of other crimes evidence regarding recent use of fraudulent financial documents in fraud prosecution to demonstrate knowledge, motive, and absence of mistake or accident); *United States v. Wilson*, 31 F.3d 510, 515 (7th Cir. 1994) (admitting evidence of other drug activity because it "tend[ed] to show that [the defendant] was familiar with the cocaine business and was not some innocent bystander mistakenly caught up in an overzealous law enforcement"); *United States v. Leahy*, 82 F.3d 624, 636 (5th Cir. 1996) (finding in prosecution for conspiracy to defraud the United States, other instances of submitting false invoices admitted to prove intent and negate mistake); *Perholtz*, 842 F.2d at 358 (holding in an appeal from convictions for several schemes to fraudulently procure U.S. Postal Service contracts, the court upheld the admission of evidence that was "highly probative of efforts to further an ongoing scheme to defraud and demonstrate[d] conscious awareness of guilt on the part of the defendants"), *cert. denied*, 488 U.S. 821 (1988).

As with a showing of intent, the proffered evidence is probative of the defendant's knowledge and absence of mistake regarding the charged offenses. In short, the evidence of the defendant's connection to BRIC Inmobiliaria and the communication from the web hosting service detailing the OFAC violation make it substantially more probable that the defendant knew of the OFAC sanctions regime, knew that it was unlawful to transact or deal with

designated entities, and yet continued to operate the entities that are the subject of the indictment. *See, e.g., United States v. Bussey*, 432 F.2d 1330 (D.C. Cir. 1970) (where the Government seeks to introduce evidence of prior offenses to prove identity and that prior and subsequent offenses are so nearly identical in method as to mark them as handiwork of accused, such evidence should be part of the government's case-in-chief.) Further, as the defense is anticipated to argue the defendant had no knowledge of the OFAC designations or the unlawfulness of her conduct, evidence of similar prior dealings with a designated entity and, in particular, evidence of her receiving notice that it was unlawful to deal with that entity on account of the designation, is critical to the government in negating such an argument. Accordingly, this evidence should be admitted as proper Rule 404(b) evidence.

### 3.     The Proposed Evidence Is Not Prejudicial Under Rule 403

As to the second prong of the D.C. Circuit's 404(b) inquiry, "the relevant inquiry…is whether the probative value of evidence is 'substantially outweighed' by a danger of unfair prejudice." *Lerma-Plata*, 919 F. Supp. 2d at 159. This Circuit has noted that it is not enough that the evidence is simply prejudicial; the prejudice must be "unfair." *See Cassell*, 292 F.3d at 796 (quoting *Dollar v. Long Mf'g, N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977) ("Virtually all evidence is prejudicial or it isn't material. The prejudice must be unfair"); *Sitzmann*, 856 F. Supp. 2d at 61-62 ("the test under Rule 403 is 'unfair prejudice,' not just any prejudice or harm to the defense.")) For evidence to be unfairly prejudicial within the meaning of the Rule, it must have "'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (quoting Advisory Committee Notes on Fed. R. Evid. 403).

Furthermore, Rule 403 strongly favors admission of 404(b) evidence. "Rule 403 tilts, as do the rules as a whole, toward the admission of evidence in close cases, even when other crimes

evidence is involved." *United States v. Douglas*, 482 F.3d 591, 600 (D.C. Cir. 2007) (citing *Cassell*, 292 F.3d at 795) (internal quotation marks omitted). "In determining whether 'the probative value is substantially outweighed by the danger of unfair prejudice' it is a sound rule that the balance should generally be struck in favor of admission when the evidence indicates a close relationship to the event charged." *United States v. Harrison*, 679 F.2d 942, 948 (D.C. Cir. 1982) (quoting *United States v. Day*, 591 F.2d 861, 878 (D.C. Cir. 1978)).

The D.C. Circuit has consistently minimized the risk of potential prejudice not by exclusion, but by issuing limiting instructions to the jury. *See, e.g., Cassell*, 292 F.3d at 796 (emphasizing the *significance of the district court's instructions to jury to "consider the evidence for the limited and pro*per purposes"); *Douglas*, 482 F.3d at 601 (same); *Pettiford*, 517 F.3d at 590 (same); United *States v. Crowder*, 141 F.3d 1202, 1210 (D.C. Cir. 1998) (en banc) (stating that mitigating instructions to jury enter into the Rule 403 balancing analysis); *United States v. Mitchell*, 49 F.3d 769 (D.C. Cir. 1995) (stating that limiting instructions concerning other crimes evidence may guard against improper inferences). "[I]t is the law, pure and simple, that jury instructions can sufficiently protect a defendant's interest in being free from undue prejudice." *United States v. Perholtz*, 842 F.2d 343, 361 (D.C. Cir.), *cert. denied,* 488 U.S. 821 (1988) (citation omitted).

The proposed evidence should not be excluded under Rule 403 because the probative value substantially outweighs any possible prejudicial effect. The law in this Circuit is clear that in balancing the probativeness and prejudice of other crimes, "it is a sound rule that the balance should generally be struck in favor of admission when the evidence indicates a close relationship to the offense charged." *Harrison*, 679 F.2d at 948 (internal quotation marks and citation omitted). That other crimes evidence may be prejudicial "does not suggest that such evidence

has an automatic unfair and substantial prejudicial effect on the jury." *Cassell*, 292 F.3d at 796. Furthermore, the extent of any prejudice, or the potential misuse of such evidence by the jury, can effectively be eliminated by limiting instructions that the Court can make either concurrent with the introduction of the evidence at trial or during final jury instructions.

Here, the defendant is charged with criminal violations of the Kingpin Act connected with six different Mexico-based businesses. If interpreted as "other crime" evidence, evidence of her connection to BRIC Inmobiliaria shows a connection to a seventh Mexico-based entity also designated by OFAC. To the extent that there is any, the additional prejudice from that connection is slight indeed. This is a far cry from cases in which a party seeks to introduce an inherently inflammatory or shocking "other crime" in connection with a defendant on trial for non-violent charges that do not provoke the conscience. *See, e.g., United States v. Lawson*, 410 F.3d 735, 742 (D.C. Cir. 2005) (admitting evidence where it did not "add [] emotional or other pejorative emphasis not already introduced" by evidence of the charged conduct). And on the other hand, the probative value of the proposed evidence is substantial. It shows that the defendant received specific notice – albeit from an unexpected source, her web hosting service – of the illegality of transacting with OFAC-designated entities even before her companies were designated by OFAC. This Court has explained in a different context that evidence that the fact that the defendant's husband had been sanctioned by OFAC was probative of the likelihood that she acted willfully. *See* Transcript, Mar. 3, 2020, Dkt. No. 25 at 48-49 ("I do find it quite probative on this score – that the defendant's own husband had been sanctioned for violations of OFAC regulations, that some familiarity of the severity and seriousness of an OFAC notice would lend – would strain credulity that she did not try and look up and figure out what this was about . . . ."). Here, too, the fact that the defendant's web sites had been completely shut down

because of an uncharged OFAC designation is probative of her willfulness. The evidence of BRIC Inmobiliaria's designation and the resulting exchanges with the web hosting service should be admitted.

## II. Motions to Preclude Impermissible Testimony

Rule 401 defines "relevant evidence" as evidence having "any tendency to make a fact more or less probable than it would be without the evidence," where "the fact is of consequence in determining the action." Rule 402, in turn, provides that irrelevant evidence is not admissible. *See United States v. Doe*, 903 F.2d 16, 21 (D.C. Cir. 1990) ("Irrelevance is not defined, but it is clear that any evidence failing the test of Rule 401 is "not relevant" under Rule 402.").

Pursuant to Rule 403, even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Courts also have broad discretion to exclude evidence if it has an "undue tendency to suggest decision on an improper bias, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 Advisory Committee's Note. "Courts therefore frequently employ Rule 403 to exclude irrelevant, confusing, and misleading evidence." *United States v. Libby*, 467 F. Supp. 2d 1, 7 (D.D.C. 2006) (internal citations omitted).

### A. The Court Should Preclude Argument and Elicitation of Testimony That Suggests That Notice of Specific OFAC Designations is Required by the Kingpin Act

The defendant may attempt to suggest through argument and elicitation of testimony that the defendant's receipt of actual notice of OFAC's particular designation of the specific businesses named in the indictment is a required element of the charged offense. On multiple occasions, orally and in pleadings, before this Court and the D.C. Circuit, the defendant has argued that she did not receive, review, or read any blocking notice for the five businesses named

in the Indictment.  *See, e.g.* March 3, 2020 Transcript, Dkt. No. 25, at 23 ("Exhibit 1 [an OFAC

blocking notice letter] does not reference any entity that's listed in the Indictment.  There is no

evidence that my client ever received this letter."); *id*. at 25 ("There is no evidence that I am

aware of that shows that my client read the [T]reasury press release, that she read the notice in

the *Federal Register* or even accessed the [T]reasury [D]epartment's website."); *United States v.*

*Oseguera Gonzalez*, D.C. Cir. Nos. 20-3018 & 20-3023, Appellant Br. at 12 ("No evidence was

presented by the government to show that Ms. Gonzalez read the [] Treasury press release, read

the notice in the *Federal Register*, or accessed [] Treasury's website"), *id.* at 13 ("no evidence to

show that Ms. Gonzalez actually received post-designation notice").  For the reasons set forth

below, the Court should preclude the defendant from suggesting to the jury that the defendant's

receipt of notice is required by the Kingpin Act.

First, notice is not an element of the offense.  *See* 21 U.S.C. § 1906.  Although the

government has to prove "willful" violation, *see* 21 U.S.C. § 1906(a)(1), it does not have to

prove that the defendant received notice of OFAC's designations.  To suggest that the

government must prove that the defendant received notice that a particular business has been

designated would amount to a requirement that the government prove that the defendant was

aware of the specific law or rule that the conduct violates.  However, this Court and several

circuits have held that this is not the appropriate willfulness standard for Treasury sanctions

cases.

While there is little Kingpin Act-specific case law, the D.C. Circuit has previously

explained that the Kingpin Act was modeled on the International Emergency Economic Powers

Act ("IEEPA") and has looked to IEEPA cases in interpreting the Kingpin Act.  *See Zevallos v.*

*Obama*, 793 F.3d 106, 109-113 (D.C. Cir. 2015); *see also* 21 U.S.C. § 1901 ("IEEPA was

successfully applied to international narcotics traffickers in Colombia and based on that successful case study, Congress believes similar authorities should be applied worldwide."). IEEPA criminalizes the willful violation of economic sanctions in much the same manner as the Kingpin Act. *Compare* 50 U.S.C. § 1705(c) ("A person who willfully commits . . . an unlawful act described in subsection (a) . . . .") *with* 21 U.S.C. § 1906(a)(1) ("Whoever willfully violates the provisions of this chapter . . ."). Courts consistently have held that the IEEPA willfulness standard requires only that a defendant know that his or her conduct was unlawful, not that he or she knew the precise details of the law being violated. *See United States v. Quinn*, 403 F. Supp. 2d 57, 60-66 (D.D.C. 2005) (rejecting argument that government had to prove defendants' "specific knowledge" of the OFAC licensing requirement); *United States v. Mousavi*, 604 F.3d 1084, 1094 (9th Cir. 2010) ("[W]e reject Mousavi's argument that the government [] had to prove that Mousavi had a specific understanding of the [Iranian Transaction Regulations] licensing requirements."); *United States v. Turner*, 836 F.3d 849, 860 (7th Cir. 2016) (affirming jury instruction that defendant "need not be aware of the specific law or rule that his conduct may be violating"). *See also United States v. Elashyi*, 554 F.3d 480, 505 (5th Cir. 2008); *United States v. Homa Int'l Trading Corp.*, 387 F.3d 144, 146-47 (2d Cir. 2004).

Additionally, the D.C. Circuit has held that the willfulness standard in the Arms Export Control Act—which criminalizes exporting defense articles without a license —requires only that the defendant knew that the conduct was unlawful, not "that a defendant had read, was aware of, or had consulted the licensing provisions of the" statute. *See United States v. Burden*, 934 F.3d 675, 690-92 (D.C. Cir. 2019). In so ruling, the D.C. Circuit emphasized that the Supreme Court "has required proof that a defendant know which law he was breaking in only two contexts: criminal tax evasion, and currency structuring." *Id.* at 691.

The United States does not need to prove that the defendant received, reviewed, or read OFAC notices to establish that the defendant willfully violated the Kingpin Act. Courts consistently have held in IEEPA cases that circumstantial evidence of subjective knowledge, including efforts to conceal conduct, and willful blindness are sufficient to prove willfulness. *See Homa*, 387 F.3d at 147 (holding that sufficient evidence of willfulness existed where evidence showed that defendant's bank refused to complete transactions on two occasions, OFAC wrote defendant letters alerting him to regulations, and the defendant "conducted his business practices in stealth"); *United States v. Soussi*, 316 F.3d 1095, 1103–07 (10th Cir. 2002) (evidence of evasive actions—including lying to manufacturers, removing markings from trailers, and modifying invoices—as well as a refusal to read a general fact sheet on the U.S. embargo on Libya was sufficient evidence of willfulness); *Mousavi*, 604 F.3d at 1094–95 (evidence that the defendant concealed his dealings from the government on his tax returns, in addition to the fact that the defendant regularly traveled to and conducted business in Iran, was sufficient to indicate knowledge of unlawfulness); *United States v. Abdullaev*, 761 F. App'x 78, 81–82 (2d Cir. 2019) (actions suggesting purposeful circumvention of regulations and evidence suggesting a detailed knowledge of U.S. export regulations due to personal employment was sufficient evidence of willfulness).

For the foregoing reasons, the government submits that any statements, questions and arguments that suggest that notice is an element of the offense would confuse the issues, mislead the jury, and result in unfair prejudice to the government. *See* Fed. R. Evid. 403. Thus the Court should preclude the defendant from suggesting that the government must prove that the defendant received notice of the designations during jury addresses or the presentation of evidence in the case.

**B. The Court Should Preclude Argument and Elicitation of Testimony Designed to Challenge the Validity of the Underlying OFAC Designations**

Pursuant to the Kingpin Act, the President may designate "significant foreign narcotics traffickers," 21 U.S.C. § 1904(b)(1), and the Secretary of the Treasury, through delegated and statutory authority, may designate and block the assets of foreign persons generally involved in materially assisting or providing support to significant foreign narcotics traffickers, *id.* § 1904(b)(2)-(4). A criminal prosecution for violation of the Kingpin Act, in turn, relies on these underlying designations. *See* 21 U.S.C. § 1906 (referring to "license[s], rule[s], or regulation[s]" issued under the Kingpin Act). Accordingly, the issue for the jury at trial is the defendant's willful violation of the Kingpin Act's sanctions, not the underlying designations themselves. The Court should therefore preclude the defendant from challenging the validity of the OFAC designations.

Well-settled law specifically prohibits a criminal defendant from collaterally attacking an administrative designation at trial, since "the *fact* of an organization's designation … is an element of [the crime], but the *validity* of the designation is not." *United States v. Hammoud*, 381 F.3d 316, 331 (4th Cir. 2004) (emphasis in original), *cert. granted, judgment vacated*, 543 U.S. 1097 (2005), *opinion reinstated in part*, 405 F.3d 1034 (4th Cir. 2005) (rejecting the defendant's request to challenge Hizballah's designation as a Foreign Terrorist Organization ("FTO")). *See also United States v. Bozarov,* 974 F.2d 1037, 1045–46 (9th Cir.1992) (holding that defendant's inability to challenge administrative classification under the Export Administration Act did not violate due process because the validity of the classification was not an element of the offense); *United States v. Mandel*, 914 F.2d 1215, 1222 (9th Cir. 1990) (holding that a criminal defendant could not collaterally attack the Secretary of Commerce's decision to place an item on the Commodity Control List and declining defendant's discovery

request for information underlying the determination); *Yakus v. United States*, 321 U.S. 414, 447, 64 S. Ct. 660, 678, 88 L. Ed. 834 (1944) (holding that the defendant could not collaterally attack the validity of the Emergency Price Control Act price regulations that the government accused him of violating); Order, *United* States *v. Chichakli*, No. 1:09-cr-01002-WHP (S.D.N.Y. Nov. 18, 2013), Dkt. No. 70 at 9 (finding that a defendant may not relitigate his designation by OFAC in a criminal trial in which he was charged with violating IEEPA as a result of that designation).

A violation of the Kingpin Act, similar to the statutes addressed by the aforementioned courts, requires only proof that the named entity that the defendant transacted with was in fact designated. *See* 21 U.S.C. 1904(c) and 1906(a). OFAC's decision to designate an entity under the Kingpin Act "does not involve the defendant's individual rights and is not an element of the criminal offense in the pending case." *Mandel*, 914 F. 2d at 1221.

For the foregoing reasons, the government submits that any statements, questions and arguments that challenge the OFAC designations would confuse the issues, mislead the jury, and result in unfair prejudice to the government. *See* Fed. R. Evid. 403. Thus the Court should preclude the defendant from challenging the designations during jury addresses or the presentation of evidence in the case.

## CONCLUSION

For the foregoing reasons, the Court should grant the government's motions to (1) introduce other crimes evidence related to the defendant's association with BRIC Inmobiliaria, (2) preclude argument and elicitation of testimony suggesting that actual notice of specific OFAC designations is a required element of the charged crime, and (3) preclude argument and elicitation of testimony designed to challenge the underlying OFAC designations.

Respectfully submitted this 13th day of July, 2020.

Marlon Cobar, Acting Chief
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice

By:  _____/s/_____
Kate Naseef, Trial Attorney
Kaitlin Sahni, Trial Attorney
Brett Reynolds, Trial Attorney
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice
Washington, D.C. 20530
Telephone: (202) 598-2493