**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | **CRIMINAL NO.: 1:20-CR-040** |
| ) | |
| **JESSICA JOHANNA OSEGUERA** ) | |
| **GONZALEZ,** ) | |
|     also known as "Jessica Johanna ) | |
|     Castillo" and "La Negra," ) | |
| ) | |
| **Defendant.** ) | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FOR DUE PROCESS VIOLATIONS

The United States, through undersigned counsel, respectfully submits this response to Defendant's Motion to Dismiss the Superseding Indictment Based on Violations of Defendant's Due Process Rights ("Motion" or "Mot.") (Dkt. No. 67).

In the Motion's sole paragraph of argument, the defendant contends that she has been denied "notice and a meaningful opportunity to be heard" with respect to the decision by the Office of Foreign Assets Control of the U.S. Department of the Treasury ("OFAC") to designate the six entities underlying the Superseding Indictment as providing material support to the Mexican drug cartel known as the Cartel de Jalisco Nueva Generacion ("CJNG"). The defendant argues that she should have received both pre-deprivation and post-deprivation notice related to those designations, and received neither. In support of her claims, the defendant purports to rely wholly on *Zevallos v. Obama*, 793 F.3d 106 (D.C. Cir. 2015), a civil administrative law case in which the D.C. Circuit affirmed the district court's rejection of similar claims. With respect to pre-deprivation notice, the defendant distinguishes *Zevallos* simply by asserting that it involved risk that a party might conceal or move assets that OFAC intended to block or freeze and that "[t]he same is not true here." Motion at 3. As for post-deprivation notice, the defendant asserts

1

that whereas the plaintiff in *Zevallos* was "given actual notice," the Superseding Indictment "fails to allege that [the defendant] received any sort of notice that she would be in violation of the laws of the United States if she conducted business with [the OFAC-designated] entities located in Mexico." Motion at 3.

*Zevallos* and other cases foreclose the defendant's arguments as to both pre- and post-deprivation notice, as discussed in further detail below. But the defendant's suggestion related to post-deprivation notice that the Superseding Indictment should have "allege[d] that [she] received any sort of notice" betrays a more fundamental threshold issue: whether a motion to dismiss a criminal indictment is the proper forum for a civil due process claim against the Department of the Treasury. It is not, and for that reason alone, the defendant's motion should be denied.

## I. Any Claim by the Defendant that OFAC's Designation Was Improper Cannot Be Litigated Here

The Foreign Narcotics Kingpin Designation Act (the "Kingpin Act") allows the "Secretary of the Treasury—and by delegation [OFAC] . . . —to deem foreign persons who 'materially assist[] in international narcotics trafficking activities' as 'specially designated narcotics traffickers.'" *Fares v. Smith*, 901 F.3d 315, 318 (D.C. Cir. 2018) (quoting 21 U.S.C. § 1904(b)(2)-(4) and citing 31 C.F.R. §§ 598.314, 598.803). Additionally, but distinctly, the Kingpin Act makes it a crime for a United States person[1] to engage in "[a]ny transaction . . . in property or interests in property" of a designated entity (which must necessarily be a foreign person) or to engage in "[a]ny transaction or dealing . . . that evades or avoids, or has the effect of evading or avoiding" the prohibition on such transaction. 21 U.S.C. §§ 1904, 1906.

---

[1] The defendant is a United States person within the meaning of 21 U.S.C. § 1907(6) by virtue of her dual United States and Mexican citizenship.

Pursuant to those authorities, the president designated the defendant's father, Nemesio Oseguera Cervantes, and her uncle, Abigael Gonzalez Valencia, as well as the CJNG and the "Los Cuinis" drug trafficking organization as Specially Designated Narcotics Traffickers on April 8, 2015. *See* 31 C.F.R. § 598.314 (defining "specially designated narcotics trafficker"). Those designations were published in the Federal Register, publicized in a press release by the Department of the Treasury, and widely covered by news media in Mexico. Additionally, because of their relationships with Oseguera Cervantes and Gonzalez Valencia, several of the defendant's relatives were served, either by mail or in person, with letters from the Department of the Treasury detailing the designations and the Kingpin Act's provisions. Treasury attempted to mail one such letter to the defendant at a California address at which she had previously stayed and which she listed on a California driver's license, but it was returned. While that letter was returned, a copy of it was ultimately served on the defendant in person when she visited the United States in August 2019.

On September 17, 2015, OFAC designated five Mexican businesses for providing material support to the CJNG. Those five businesses were J&P Advertising S.A. de C.V., JJGON S.P.R. de R.L. de C.V., Las Flores Cabanas, Mizu Sushi Lounge, and Onze Blakc Tequila. This set of designations was also published in the Federal Register, publicized in a press release by the Department of the Treasury, and covered by Mexican news media. On September 14, 2017, OFAC additionally designated Operadora Los Famosos, S.A. de C.V., doing business as Kenzo Sushi Lounge, a successor entity to Mizu Sushi Lounge.

*Zevallos* makes clear that a Kingpin Act designation deprives a designated person of property. *See* 793 F.3d at 116 ("There is no doubt that blocking Zevallos's assets deprived him of his property."). The Due Process Clause, in turn, requires a designated person to be provided

3

"notice and a meaningful opportunity to be heard" with respect to their deprivation of property. *Id.* In the context of the Kingpin Act, designated persons (including corporate entities, as are the subjects of the designations at issue here) may request that Treasury remove their designations, may seek information from Treasury regarding their designations, may seek reconsideration of an adverse decision, and may file suit in federal court pursuant to the Administrative Procedures Act. *See id.* at 111-12. That is precisely what the plaintiff in *Zevallos* did to challenge his designation, even as he was separately under indictment in the Southern District of Florida for alleged criminal violations of the Kingpin Act.[2]

Here, by contrast, the defendant herself was not designated by OFAC. To be sure, the government alleges that the six business entities underlying the Superseding Indictment were controlled or owned, at least in part, by the defendant. But to the extent that the defendant contends that the OFAC designations of the six *businesses* deprived *her* of property—which implicitly concedes her ownership of the designated entities—she must pursue her claim with Treasury. *See* 31 C.F.R. § 501.807(a) ("A person blocked under the provisions of any part of this chapter, including . . . [a] specially designated narcotics trafficker . . . or a person owning a majority interest in a blocked vessel may submit arguments or evidence that the person believes establishes that insufficient basis exists for the designation. The blocked person also may propose remedial steps on the person's part, such as corporate reorganization, resignation of persons from positions in a blocked entity, or similar steps, which the person believes would negate the basis for designation.").

---

[2] The criminal matter has never been resolved as to Mr. Zevallos, who appears to remain in fugitive status. Publicly available news articles suggest that he is in prison in Peru.

Only after pursuing the claim within Treasury could the defendant bring to a federal district court a challenge alleging that the designation was improper, including any potential claim that the designation deprived her of due process.  *See In re 650 Fifth Ave.,* No. 08 CIV. 10934 KBF, 2013 WL 2451067, at *6 (S.D.N.Y. June 6, 2013) ("Defendants do not dispute that they have not filed a petition for administrative reconsideration before OFAC, as is their right. Nor have they filed a court challenge pursuant to the Administrative Procedure Act.  The [] Defendants cannot attack the [specially designated nationals] listing on due process grounds without first availing themselves of the processes they are due."); *Can v. United States*, 820 F. Supp. 106, 111 (S.D.N.Y. 1993), *aff'd*, 14 F.3d 160 (2d Cir. 1994) ("A party seeking to obtain blocked property must follow the procedure prescribed by [the Trading With the Enemy Act]: the party must apply for a license from OFAC and exhaust all available administrative remedies before seeking relief in court. . . . The provisions of the APA then . . . permit a district court to review OFAC's determination, which is deemed to be a 'final agency action.'  It is undisputed that plaintiffs have never applied to OFAC for a license or the unblocking of assets. . . . Thus, there is no agency action to review.") (internal citation omitted).  Even if the defendant had standing or authority to challenge the businesses' designation—which would require her to concede her relationship with the businesses—she has chosen not to do so.  If she were to do so, the Administrative Procedures Act provides a civil forum for litigating such claims.  A criminal case, involving the criminal aspects of the Kingpin Act, is not the proper forum.

Even if the defendant does not intend to claim that the OFAC *designations* deprived her of due process, she may be intending to assert that her *criminal prosecution* for transacting with designated entities has denied her of "notice and a meaningful opportunity to be heard."  Motion at 3.  But the defendant points to no case in which a court has held that the government has a

5

generalized obligation to specifically and individually warn all potential lawbreakers of crimes that they might commit.  And in the context of sanctions regimes, courts have made clear that criminal liability for violating sanctions, such as the International Economic Emergency Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq.*, upon which the Kingpin Act is based, does not require that a defendant have specific knowledge of the licensing requirements at issue.  *See* Government's Omnibus Pretrial Motions, Dkt. No. 63, at 19-20 (collecting cases).  If a defendant can be criminally prosecuted without having specific knowledge of the particular sanctions regime, it logically flows that no defendant is entitled as a matter of due process to a specific warning from the government prior to undertaking their illegal conduct.[3]

## II. Even if *Zevallos* Governs Here, the Defendant's Due Process Was Not Violated by Lack of Pre-Designation Notice

Even if, as the defendant contends, *Zevallos* is applicable here as a mechanism for challenging the underlying Kingpin Act designations, it squarely holds that she is not entitled to pre-designation notice.  As the D.C. Circuit explained, "providing notice before blocking the assets of international narcotics traffickers would create a substantial risk of asset flight. . . . To say that offering pre-deprivation process in this circumstance would prove 'impractical' understates the case; such process would likely cripple the Kingpin Act."  793 F.3d at 116 (internal citation omitted).

---

[3] The defendant's suggestion that she was entitled to notice of the possibility of criminal penalties for her conduct raises an additional practical problem that ends in absurdity:  the government has no way of knowing in advance who might violate the criminal provisions of the Kingpin Act.  This is so because the criminal provisions of the Kingpin Act do not only apply to OFAC-designated persons, but to *any* United States person who willfully transacts or deals with designated persons or entities.  As with all criminal investigations, the government can only look backwards to determine whether a crime has been committed on the available facts.  The defendant has offered no authority to suggest that due process is violated where the government fails to provide particularized advance notice to persons who "would be in violation of the laws of the United States" if they transact business with designated entities.  Motion at 3.

6

The Kingpin Act is expressly modeled on the IEEPA sanctions regime. *See* 21 U.S.C. § 1901(a). And a string of IEEPA cases compels the same conclusion as to the constitutionality of declining to provide pre-deprivation notice. *See, e.g., Holy Land Found. for Relief and Dev. v. Ashcroft*, 333 F.3d 156, 163-64 (D.C. Cir. 2003); *Islamic Am. Relief Agency v. Unidentified FBI Agents,* 394 F. Supp. 2d 34, 49-50 (D.D.C. 2005)*; GRF v. O'Neill,* 315 F.3d 748, 754 (7th Cir. 2002). But as the D.C. Circuit explained in *Zevallos*, "the due process analysis here is straightforward without analogizing the Kingpin Act to any other statute." 793 F.3d at 116 (citing *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 679 (1974)). Because *Zevallos* held that due process is not violated where designated entities are not given pre-deprivation notice of Kingpin Act designations, the defendant's pre-deprivation claim fails.

### III. Even if *Zevallos* Governs Here, the Defendant Has Received Post-Designation Notice and May Challenge the OFAC Designations in an Appropriate Forum

*Zevallos* also rejected that plaintiff's post-deprivation claim. As the court explained, the plaintiff had been given the opportunity to challenge the designation within Treasury, to seek reconsideration and file additional "delisting" requests with Treasury as time went on, and ultimately to seek review of Treasury's adverse decision through a civil suit. *Zevallos*, 793 F.3d at 117. Thus, the *Zevallos* court concluded, the plaintiff had been given "notice and a meaningful opportunity to be heard, which is what the Due Process Clause requires." *Id.* at 116.

The defendant here has the same opportunity (assuming, that is, that she concedes a relationship with the designated entities sufficient to give her standing to challenge their designations). She has simply chosen not to avail herself of it. The defendant appears to suggest that she could not have done so because she did not "receive[] any sort of notice" of the risk of transacting with OFAC-designated businesses. Motion at 3. As the government has explained, "actual notice" is not an element of the criminal offenses charged. *See* Dkt. No. 63 at 18-20.

7

The government has also proffered evidence that shows that the defendant *was* in fact aware of the OFAC designations, which can support a finding of willfulness even though "actual notice" is not required.[4] But for present purposes, it does not matter when the defendant learned of the Kingpin Act designations of the six entities underlying the Superseding Indictment. She is aware of them *now*. If she so desires, she can challenge the designation through Treasury and seek "delisting," just like the *Zevallos* plaintiff. The post-deprivation process that *Zevallos* held satisfies due process is fully available to the defendant and the designated businesses. As the D.C. Circuit explained in that case, where a defendant "ha[s] the chance to contest the propriety and adequacy" of an OFAC designation, "due process does not require more." 793 F.3d at 117. Even if this were the proper forum for raising a post-deprivation due process claim, OFAC's procedures afford the defendant due process, and her claim should therefore be denied.

---

[4] These include the following facts: (1) "blocking letters" were sent to the defendant and various of her relatives; (2) the designations were published in the Federal Register; (3) the designations were covered by news media in Mexico; (4) the defendant changed the names of some of the designated businesses and wound down others after their designations; (5) the defendant's web hosting service emailed her to tell her that they were suspending her account because of OFAC designations, and in fact did shut down the websites of the designated businesses; (6) the defendant's husband was designated as a "specially designated narcotics trafficker" pursuant to the Kingpin Act; and (7) the defendant was personally provided with a copy of the "blocking letter" in August 2019.

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss the indictment for violating the Due Process Clause of the Fifth Amendment should be denied.

Respectfully submitted this 2nd day of September, 2020.

                              Marlon Cobar, Acting Chief
                              Narcotic and Dangerous Drug Section
                              Criminal Division
                              U.S. Department of Justice

By:      /s/
                              Kaitlin Sahni, Trial Attorney
                              Kate Naseef, Trial Attorney
                              Brett Reynolds, Trial Attorney
                              Narcotic and Dangerous Drug Section
                              Criminal Division
                              U.S. Department of Justice
                              Washington, D.C. 20530
                              Telephone: (202) 514-0917

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was sent via the Electronic Case Filing (ECF) system with the United States District Court for the District of Columbia to counsel of record for the defendant, this 2nd day of September, 2020.

By:  /s/
Kaitlin Sahni
Trial Attorney
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice