**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 20-cr-00040 (BAH)** |
| | ) | |
| | ) | |
| **JESSICA JOHANNA OSEGUERA** | ) | |
| **GONZALEZ,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**DEFENDANT JESSICA JOHANNA OSEGUERA GONZALEZ'S OPPOSITION
TO THE GOVERNMENT'S OMNIBUS SET OF PRETRIAL MOTIONS**

Defendant Jessica Johanna Oseguera Gonzalez, by and through her undersigned counsel, respectfully submits the following in opposition to the Government's Omnibus Set of Pretrial Motions (ECF 63).

## I.  INTRODUCTION

On July 13, 2020, the government filed an omnibus set of pretrial motions.  ECF 63.  The government moves to introduce "other crimes' evidence.'"  *Id.*, at 1.  This evidence, which the government describes as a "notice," was issued prior to any designation of the entities identified in the Superseding Indictment, and it states as follows.

!!! Current template (Might not match what customer actually received): !!!

X-Revision: 1.3
MIME-Version: 1.0
Content-Type: text/plain; format="flowed"
From: Bluehost <legal@bluehost.com>
To: contacto@jp-adv.com
Reply-To: noreply@bluehost.com
Subject: Your Account Has Been Deactivated In Accordance with U.S. Law

1

Jessica,

It has recently come to our attention that a package under your control is providing service to individuals or businesses specifically designated as blocked, or who are located in Crimea, Sudan, Iran, Syria, Cuba, or North Korea.  Directives enforced by the Office of Foreign Assets Control (OFAC) of the US Department of the Treasury, which administers and enforces trade and economic sanctions in accordance with U.S. policy, do not allow us as a US company to do business with persons or entities on the blocked list or in these regions.  Subject to the OFAC sanctions, we are unable to provide hosting, domain registration and related services to any server, reseller, shared account, entity or person in the embargoed region or on the block list. As this is a federal regulation, there is no extension available on this action, and any requested exemption is not at our discretion.  At this time, the account or accounts in question have been suspended and disabled. This means that your websites are not currently accessible to visitors, and you cannot log into your account. In accordance with U.S. regulations, we cannot provide access to the account or the files within it, nor can we provide a refund for the services purchased. We apologize for any difficulty this may cause, but we are required to comply with U.S. law.  If you can demonstrate that you reside in a different region, or that your business is located in a different region, as well as that you are not engaged in direct financial relationships with sanctioned entities, please contact us immediately. Call us at 888-401-4678 or e-mail us at legal@bluehost.com, and we will review your account.

With Regret,

Bluehost Compliance Team[1]

The government also moves to introduce evidence of a telephone call that apparently took place the day following the issuance of the notice.  *Id.* at 6.

The government also seeks to "preclude argument and elicitation of testimony at trial" that the government is required to show that Ms. Gonzalez "had actual contemporaneous notice of the specific [] designations underlying the indictment."  *Id.* at 1.  Finally, the government moves the Court "to preclude argument and elicitation of testimony at trial aimed at challenging the nature or validity of the underlying Kingpin Act designations."  *Id.*  For the reasons set forth below, the government's motions should be denied.

---

[1] This is the full text of the document paraphrased by the government in its pretrial motion.  *See* ECF 63, at 6.

2

## II. ARGUMENT

### 1. The "Other Crimes" Evidence Is Not Intrinsic To The Charged Offenses.

The government first argues that the evidence set forth above is intrinsic to the charged offenses and, therefore, not subject to analysis under Rule 404(b) of the Federal Rules of Evidence. *Id.* at 8. This argument is without merit and is unsupported by Circuit precedent.

In *United States v. Bowie*, the D.C. Circuit considered the district court's admission of prior bad acts evidence against the defendant, Bowie, in connection with a charge against him for possession of counterfeit money. 232 F.3d 923 (D.C. Cir. 2000). The prior acts proffered by the government concerned an arrest of Bowie made one month earlier that had resulted in the recovery of counterfeit bills with the same exact serial numbers as the counterfeit money that Bowie was charged with possessing, along with an eyewitness description of Bowie passing a counterfeit bill (again, bearing the same serial number) on the same day of the prior arrest. *Id.* at 926. The D.C. Circuit rejected the district court's ruling that the evidence was admissible as "intrinsic" evidence. *Id.* at 929.

In *Bowie*, the D.C. Circuit held that proffered evidence can properly be considered "intrinsic" only if it "is of an act that is part of the charged offense" and, therefore, immune to Rule 404(b)'s limitations on evidence of criminal propensity. *Id.* at 929. Additionally, the *Bowie* Court held that "some uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime." *Id.* at 929 (emphasis added). To paraphrase the Circuit's query in *Bowie*: is the alleged prior act evidence at issue here "so indistinguishable from the charged crime that [the] item of evidence is entirely removed from Rule 404(b)?" *Id.* at 928. The answer in *Bowie*, as the answer must be here, is no.

The so-called notice proffered by the government was issued on August 23, 2015, prior to the designation of any of the entities identified in the Superseding Indictment. *See* ECF 63, at 6.

Moreover, the notice says nothing about the cartel listed in the Superseding Indictment.  Indeed, it does not even mention narcotics trafficking.  It speaks about "individuals or businesses specifically designated as blocked, or who are located in Crimea, Sudan, Iran, Syria, Cuba, or North Korea." The notice then states: "[a]s this is a federal regulation, there is no extension available on this action, and any requested exemption is not at our discretion.  At this time, the account or accounts in question have been suspended and disabled."  Yet, the government states that the defendant's web hosting account was reactivated.[2]

The government's reliance on the cases cited for its proposition that this "notice" is intrinsic evidence is misplaced.  The majority of the cases cited by the government involve circumstances in which evidence was admitted as "intrinsic" because it was deemed to be part of the charged offense.  *See*, *e.g.*, *United States v. Allen*, 960 F.2d 1055, 1056-58 (D.C. Cir. 1992), *cert. denied*, 506 U.S. 881 (1992) (admitting testimony that the defendant watched his co-defendant sell crack to undercover officers just minutes before the police executed a search warrant for the house where the charged sale was made, as an "intrinsic part of the witness' account of the circumstances surrounding the offense" for which defendant was indicted); *United States v. Gartmon*, 146 F.3d 1015, 1020 (D.C. Cir. 1998) (admitting evidence that the defendant lured his

---

[2] As an initial matter, it should be noted, the proffered evidence does not satisfy the requirements of Rule 401 of the Federal Rules of Evidence.  Whether prior acts are relevant depends on whether the acts "tend to make the existence of any fact that is of consequence to the determination of the action more or less probable." *United States v. Hicks*, 635 F.3d 1063, 1069-70 (7th Cir. 2011) (quoting Fed. R. Evid. 401). Given that this evidence provided no notice that Cartel de Jalisco Nueva Generacion had been designated as a significant foreign narcotics trafficker, that it was illegal to engage in transactions or dealing with designated narcotics traffickers, or that it was illegal to engage in transactions for dealings with entities that had yet to be designated, this evidence is irrelevant to the charged offenses.  Furthermore, the government proffers no evidence of the substance or identity of the individuals involved in the phone conversation that is alleged to have occurred on August 24, 2015, stating only that the phone call was placed from a phone number "registered to the Guadalajara, Mexico area" to the web hosting company's customer service line, and that the call lasted 26 minutes.  This lack of specificity negates any so-called evidence of this phone call's ability to "make the existence of any fact that is of consequence to the determination of the action more or less probable." *Id.*

co-defendant to his home under false pretenses and threatened her with a gun, after the co-defendant told the defendant she no longer wanted to participate in the charged scheme to defraud the George Washington University Health Plan, because the defendant's threat allowed the charged scheme to continue and, therefore, was part of the charged conduct); *United States v. Badru*, 97 F.3d 1471, 1474 (D.C. Cir. 1996), *cert. denied*, 520 U.S. 1150 (1997) (admitting, in a conspiracy to distribute heroin case, evidence of the defendants' overseas trips to Nigeria as "directly relevant" to the charged offenses because the defendants "had to obtain heroin from a source before they could distribute it."); *United States v. Lerma-Plata*, 919 F. Supp. 2d 152, 156 (D.D.C. 2013) (admitting evidence of conversations between the defendant and a co-conspirator about money laundering and firearms trafficking, because the money laundering and firearms trafficking constituted "uncharged acts *performed contemporaneously* with the charged crime" that "*facilitate[d] the commission of*" the charged drug trafficking conspiracy) (emphasis added).

The facts of these cases are easily distinguishable from the evidence the government proffers against Ms. Gonzalez.  Ms. Gonzalez was not indicted for any conduct involving or relating to BRIC Inmobiliaria.  Unlike the defendant in *Allen*, therefore, the August 23, 2015 "notice" proffered by the government cannot be considered an "intrinsic" part of any account of the conduct charged in the Superseding Indictment.  Similarly, there is no evidence that the August 23, 2015 "notice" allowed Ms. Gonzalez to engage in any alleged future conduct involving separate entities, as was the case in *Gartmon* and *Badru*, where the defendants' prior acts allowed their charged schemes to continue.  Nor can the August 23, 2015 "notice" be compared to the evidence admitted in *Lerma-Plata*, as the government's proffered evidence against Ms. Gonzalez has not been shown to have facilitated any future conduct charged in the Superseding Indictment. Simply put, the government fails to meet the burden set forth in *Bowie*:  the evidence concerning BRIC Inmobiliaria is not part of the charged offenses, as the charged offenses concern separate,

unrelated entities, and the proffered evidence did not facilitate the commission of the charged offenses as, again, the August 23, 2015 "notice" did not contain any information regarding the future OFAC-designation of any of the entities included in the Superseding Indictment, nor did it contain any reference whatsoever to the entities included in the Superseding Indictment.

The government also cites to cases admitting "intrinsic" evidence, which use standards that have been viewed with disfavor by more recent Circuit decisions.  In *United States v. Weeks*, the United States Court of Appeals for the Eleventh Circuit admitted evidence that an undercover officer had been investigating stolen vehicles when he was assaulted by the defendant.  716 F.2d 830, 832 (11th Cir. 1983).  In admitting this evidence, the Eleventh Circuit determined that the evidence about the ongoing investigation was "inextricably linked to the charged offense of assault [and] was reasonably necessary to complete the story of the crime." *Id.*; *see also United States v. Gray,* 292 F. Supp. 2d 71, 77-78 (D.D.C. 2003) (citing the "complete the story" standard in admitting evidence as intrinsic to the charged drug an RICO conspiracies).  This "completing the story" standard has been explicitly dismissed by case law in this Circuit.  *See*, *e.g.*, *Bowie*, 232 F.3d at 929 ("[W]e are confident that there is no general 'complete the story' or 'explain the circumstances' exception to Rule 404(b) in this Circuit.  Such broad exclusions have no discernible grounding in the 'other crimes, wrongs, or acts' language of the rule. Rule 404(b), and particularly its notice requirement, should not be disregarded on such a flimsy basis."); *United States v. Khanu*, 664 F. Supp. 2d 80, 82, 84 (D.D.C. 2009) (noting that the "D.C. Circuit has rejected a broad construction of the 'inextricably intertwined' test, noting that evidence needed only to 'complete the story' or 'explain the circumstances' is not intrinsic to the charged crime" and explaining that "when evidence of prior acts related to actions substantially different from the goals of the conspiracy charged, and occurs prior to the commencement of the conspiracy period, that evidence is better analyzed as falling under the purview of Rule 404(b).") (emphasis added); *United States*

*v. Sitzmann*, 856 F. Supp. 2d 55, 59 (D.D.C. 2012) (citing *Bowie*, 232 F.3d at 929) ("[U]nlike other circuits, the D.C. Circuit has said that "there is no general 'complete the story' or 'explain the circumstances' exception to Rule 404(b).").   For these reasons, the evidence proffered by the government cannot be considered "intrinsic" or "inextricably intertwined" with the charged crimes and, therefore, cannot be admitted under that standard.  Instead, this evidence is better analyzed as falling under the purview of Rule 404(b), as it occurred prior to the allegations in the superseding indictment.  *See Khanu*, 664 F. Supp. 2d 80 at 82, 84.  Even under the standard of Rule 404(b), however, the government's proffered evidence should be not admitted against Ms. Gonzalez.

## 2.    The "Other Crimes Evidence" Is Not Admissible Under Rule 404(b).

Generalized evidence of a defendant's "bad character" is forbidden under the Federal Rules of Evidence.  Under Rule 404(a), "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion[.]" Fed. R. Evid. 404(a).  Likewise, Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  *Id.*

Thus, if the government wishes to offer proof of other alleged wrongs or acts under Rule 404(b), it must first convince the Court that the evidence is probative of some material issue other than character.  *United States v. Clarke*, 24 F.3d 257, 264 (D.C. Cir. 1994).  Moreover, to be deemed admissible under Rule 404(b), evidence of prior bad acts must *also* be sufficiently similar to the crime charged.  *See United States v. Foskey*, 636 F.2d 517, 524 (D.C. Cir. 1980); *United States v. Kasouris*, 474 F.2d 689, 692 (5th Cir. 1973) ("Similarity, being a matter of relevancy, is judged by the degree in which the prior act approaches near identity with the elements of the offense charge[d]…there must be *substantial* relevancy…"); *see also United States v. Nicely*, 922 F.2d 850, 856 (D.C. Cir. 1991) ("A fundamental tenet in our criminal jurisprudence is that a jury

should not premise its verdict upon a general evaluation of the defendant's character but rather upon an assessment of the evidence relevant to the particular crime with which the defendant is presently charged.") (internal citation omitted).  Finally, "because of the *enormous danger of prejudice* to the defendant that evidence of other crimes creates," the proffered evidence must also be "necessary" as well as "clear and convincing" to gain admission, lest the jury "draw illogical and incorrect inferences from such evidence." *United States v. Shelton*, 628 F.2d 54, 56 (D.C. Cir. 1980) (emphasis added) (internal citations omitted).

District Courts are the gatekeepers regarding 404(b) evidence and must exclude such evidence if its admission would result in an unfair trial for the defendant.  Even if the Court determines that the other crimes evidence has a legitimate purpose under Rule 404(b), the Court must nevertheless exclude that evidence if it fails Rule 403's balancing test.  *See Clarke*, 24 F.3d at 264.  Indeed, the D.C. Circuit has "repeatedly emphasized the narrow scope of the 'bad acts' evidence exceptions under Rule 404(b) . . . and the continuing applicability of the Rule 403 limitation on unduly prejudicial evidence even if an exception is satisfied." *Nicely*, 922 F.2d at 856.

Here, the government argues that the proffered evidence regarding BRIC Inmobiliaria is evidence of a "common scheme or plan."  *See* ECF 63, at 12.  In making this argument, the government contends that "[e]vidence that [Ms. Gonzalez's] web hosting service notified her that it would no longer do business with her because of the OFAC designation of *BRIC Inmobiliaria*, after which she continued to operate *the designated entities* . . . is powerful evidence of her intent, knowledge, and lack of mistake in transacting with the designated businesses." *Id.* (emphasis added).  The government's argument misses the mark.  The government has proffered no connection between the August 23, 2015 "notice" regarding BRIC Inmobiliaria and any of the entities designated in the Superseding Indictment.  Indeed, as previously stated, the August 23,

2015 email from the web hosting company contained no information regarding the entity or entities that had been designated by OFAC, with which OFAC-designated entities BRIC Inmobiliaria had allegedly transacted business, or any information whatsoever that either BRIC Inmobiliaria or any other entity was allegedly engaged in narcotics trafficking.   Any notice regarding BRIC Inmobiliaria, therefore, cannot be used to infer any intent, knowledge, or lack of mistake on Ms. Gonzalez's part regarding any alleged conduct with the entities listed in the Superseding Indictment.

Furthermore, the government provides no evidence that Ms. Gonzalez was provided notice of BRIC Inmobiliaria's August 19, 2015 OFAC designation, and it concedes that Ms. Gonzalez did not receive any actual, in-person notice of the OFAC designations of the entities in the Superseding Indictment until, at best, 2019.  *See* ECF 63, at 5.  The government should not be permitted to back-door its alleged proof of Ms. Gonzalez's intent to commit the crimes charged in the Superseding Indictment through an unrelated interaction that occurred four years prior to Ms. Gonzalez receiving any actual notice that the entities in the Superseding Indictment had been designated by OFAC.  Such evidence runs afoul of the strictures of Rule 404(b) and should not be admitted by this Court.

The government's arguments that its proffered "other crimes" evidence shows Ms. Gonzalez's knowledge and absence of mistake similarly fail.  *See* ECF 63, at 14.  The government argues that the evidence of Ms. Gonzalez's connection to BRIC Inmobiliaria and the communication from the web hosting company makes it "substantially more probable that [Ms. Gonzalez] knew of the OFAC sanctions regime, knew that it was unlawful to transact or deal with designated entities, and yet continued to operate the entities that are the subject of the indictment." *Id.* at 14-15.  Again, the August 23, 2015 email from the web hosting company did not contain any statements that the entities listed in the Superseding Indictment had been designated by OFAC.

Indeed, it would have been impossible for the "notice" to contain this information, since the charged entities had not yet been designated.  Since Ms. Gonzalez had no knowledge of any of the entities in the Superseding Indictment being designated by OFAC, it strains credulity to conclude that the August 23, 2015 "notice" should have alerted her that any continuing connection with non-designated entities was illegal.   In sum, any notice regarding BRIC Inmobiliaria's OFAC designation (even though, again the August 23, 2015 email provides no such notice), cannot be connected with Ms. Gonzalez's knowledge of OFAC designations that had not yet happened.  For these reasons, the government's proffered evidence does not satisfy any of the legitimate purposes contemplated by Rule 404(b) and should not be admitted by the Court.

###    3.    The "Other Crimes Evidence" Should Be Excluded Because It Is Unfairly Prejudicial And Does Not Satisfy The Rule 403 Balancing Test.

Even if the Court finds that the government's proffered evidence is somehow admissible under Rule 404(b), the evidence should still be excluded under Rule 403, as it is unfairly prejudicial to Ms. Gonzalez.  The Court must weigh the probative value of that evidence against the countervailing considerations enumerated in Rule 403 to gauge its admissibility.  *See Foskey*, 636 F.2d at 525 ("Bad acts evidence must satisfy Federal Rule of Evidence 403").  In this case, where the probative value of the proffered evidence is at best limited (*see United States v. Loza*, Criminal No. 09–0226 (PLF), 2011 WL 553438, at *2-3 (D.D.C. Feb. 3, 2011)), admission of the evidence cannot be justified in light of the enormous risk of unfair prejudice to Ms. Gonzalez.  First, the notice states:  "!!! Current template (*Might not match what customer actually received*): !!!" (emphasis added).  Second, the notice was addressed to "contacto@jp-adv.com," and there is no evidence that Ms. Gonzalez received or read this email.  *See Parle v. Runnels*, 505 F.3d 922 (9th Cir.2007) (granting habeas relief where the state court's admission of "egregiously unreliable" other-acts evidence "rendered [the petitioner's] defense 'far less persuasive than it might have

been' "and thus "deprived Petitioner of a fair trial") (quoting *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973); *see also Valerio v. Crawford*, 306 F.3d 742, 775 (9th Cir.2002), *cert. denied*, 538 U.S. 994 (2003) (improper admission of evidence can amount to a due process violation if it "is clearly prejudicial and 'rendered the trial fundamentally unfair'").   Third, the notice includes references to a "package under [Ms. Gonzalez's] control [as] providing service to individuals or businesses specifically designated as blocked, or who are located in Crimea, Sudan, Iran, Syria, Cuba, or North Korea."   References to Crimea, Sudan, Iran, Syria, Cuba, and North Korea, all of which have been declared as embargoed and/or sanctioned counties, serve no purpose other than to inflame the jury against Ms. Gonzalez for providing services to these countries, even though none of the previously-listed counties are included in the Superseding Indictment.

The government relies on case law standing for the proposition that contested evidence under Rule 404(b) and 403 should be admitted when the evidence "indicates a close relationship to the offense charged."  *See* ECF 63, at 16 (citing *United States v. Harrison*, 679 F.2d 942, 948 (D.C. Cir. 1982)).  In *Harrison*, the D.C. Circuit admitted evidence of an eyewitness account of the defendant engaging in drug dealing on prior occasions, when that defendant was charged with possession of a controlled substance with intent to distribute.  *Harrison*, 679 F.2d at 944, 948.  In affirming the district court's decision to admit this evidence, the D.C. Circuit emphasized that there was "nothing 'unfair' in admitting direct evidence of the defendant's past acts by an eyewitness thereto that constituted substantive proof of the relevant intent alleged in the indictment."  *Id.* at 948.  The same circumstances are not present here.  The government does not seek to admit an eyewitness account of Ms. Gonzalez committing the crimes alleged in the Superseding Indictment.   Instead, it seeks to admit unreliable, unrelated evidence of communications that occurred prior to the entities in the Superseding Indictment being designated by OFAC, and which concerned a separate, unrelated entity, which is not included in the

11

Superseding Indictment.[3]  As the proffered evidence against Ms. Gonzalez is not admissible as "intrinsic" evidence under controlling D.C. Circuit authority, nor, as shown above, under Rules 401, 404(b) and 403, it must be excluded from the trial of this matter.

### 4.      The Government Is Required To Prove Notice.

The government, relying primarily on cases interpreting the International Emergency Economic Powers Act ("IEEPA" or "Economic Powers Act"), incredibly claims that notice is not an element of the Kingpin Act.  *See* ECF 63, at 19.  The government's position is meritless.

"The Kingpin Act is *not* the Economic Powers Act."  *Stansell v. Revolutionary Armed Forces of Colombia*, 704 F.3d 910, 917 (11th Cir. 2013) (emphasis added).  The IEEPA is "a statute with an entirely distinct target, purpose, and legislative history from the Kingpin Act." *World Fuel Corp. v. Geithner*, 568 F.3d 1345, 1349 (11th Cir. 2009).

In 1999, Congress enacted the Kingpin Act, and it followed the successful application of IEEPA, the Antiterrorism and Effective Death Penalty Act ("AEDPA"), and the Trading with the Enemy Act ("TWEA").  *See Sulemane v. Mnuchin*, Civil Action No. 16-1822 (TJK), 2019 WL 77428, at *1 (D.D.C. Jan. 2, 2019) (Kelly, J.) (citing *Zevallos v. Obama*, 793 F.3d 106, 109-10 (D.C. Cir. 2015)); *see also Work Fuel Corporation v. Paulson*, Case No.: 07-CIV-20398, 2008 WL 11453699, at *1 (S.D. Fla. Mar. 31, 2008) (Cooke, J.) ("Although there are some similarities, [] the Kingpin Act is *materially different* from [] IEEPA and TWEA.") (emphasis added).

OFAC's authority to block certain assets derives from some of these statutory schemes, namely the Kingpin Act, IEEPA and TWEA, to "further[] the specific goals of each act."  *World Fuel Corporation*, 2008 WL 11453699, at *3 n. 7.  "While there are some broad similarities

---

[3] The government once again relies on Ms. Gonzalez's "husband" being sanctioned for OFAC violations as proof of Ms. Gonzalez acting willfully in this case.  *See* ECF 63, at 17.  Ms. Gonzalez is divorced from her previous husband, and the government has offered no proof that Ms. Gonzalez was ever made aware of her ex-husband's designation by OFAC.

between the Kingpin Act, the IEEPA and the TWEA, *the differences between these acts are substantial and noteworthy*.  First, the Kingpin Act falls under Title 21 of the United States Code (Food and Drugs), whereas the IEEPA and the TWEA fall under Title 50 of the United States Code (War and National Defense)."  *Id.* at *3.  Moreover, "[t]he differences become even more expansive when the Kingpin Act and Regulations are contrasted against the various other programs under which OFAC conducts blocking actions."  *Id.*[4]

"Within the House Conference Report accompanying the Kingpin Act, in section 802, entitled 'Findings and Policy,' the twin aims of the Kingpin Act are set forth.  The Act is directed at 'foreign narco-trafficking organizations' and is meant to 'disrupt' these organizations and 'bankrupt' their leadership.  H.R. REP. NO. 106-457, at 42 (1999) (Conf. Rep.)."  *Id.* at *4.  Moreover, "[t]hese policies are reiterated in section 803, entitled 'Purpose,' wherein it is stated that '[t]he bottom line objective of these provisions is to bankrupt and disrupt the major narcotics trafficking organizations.'"  *Id.*

"Juxtaposed against these unambiguous assertions of what the Kingpin Act was intended to do, is a statement of what the Kingpin Act was not intended to do: '[t]here is no intention that this legislation affect Americans who are not knowingly and willfully engaged in international

---

[4] These include:

Iranian Transactions Regulations, 31 C.F.R. § 560 (2007) (deriving authority from 22 U.S.C. § 2349aa-9 (2007) (Foreign Relations and Intercourse) and 50 U.S.C. §§ 1601-1651 (2007) (War and National Defense)); Global Terrorism Sanctions Regulations, 31 C.F.R. § (2007) (deriving authority from 22 U.S.C. § 287c (2007) (Foreign Relations and Intercourse) and 50 U.S.C. §§ 1601-1651, 1701-1706 (2007) (War and National Defense)); Highly Enriched Uranium (HEU) Agreement Assets Control, 31 C.F.R. § 540 (2007) (deriving authority from 50 U.S.C. §§ 1601-1651, 1701-1706 (2007) (War and National Defense)); and Narcotics Trafficking Sanctions Regulations, 31 C.F.R. § 536 (2007) (deriving authority from 50 U.S.C. §§ 1601-1641, 1701-1706 (2007) (War and National Defense)).

*Id.*

narcotics trafficking.'" *Id.* (internal citations omitted). There are no corollary statements accompanying the IEEPA or the TWEA." *Id.* Indeed,

> [t]he purpose and goals of the IEEPA and the Kingpin Act stand distinct and apart from one another. Whereas the IEEPA exists to put the President in superior bargaining position when dealing with foreign governments and international terrorist organizations, the Kingpin Act aims to disrupt and bankrupt foreign narco-trafficking organizations and their leadership. Concluding that the underlying rationale and purpose of IEEPA and the Kingpin Act are substantially divergent, the arguments asserted by OFAC [to the contrary] fail.

*Id.* at *5. The Congressional policy supporting the Kingpin Act is directly related to the government's efforts to attack the sources of income and money laundering of significant narcotics traffickers that are the "most responsible." *See* H.R. REP. NO. 106-457, at 42 (Nov. 5, 1999), as reprinted in 1999 U.S.C.C.A.N. 304, 313). The Kingpin Act is intended to target significant drug kingpins as well as those involved in activities of money laundering, manufacturing narcotics, transporting narcotics and managing assets related thereto. *Id.* at 43.

IEEPA authorizes the President to deal with "any unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States, if the President declares a national emergency with respect to such threat." 50 U.S.C. § 1701(a). The authorities delegated to the President pursuant to IEEPA "may not be exercised for any other purpose." *Id.* § 1701(b). Although the Kingpin Act cites to the earlier IEEPA legislation and Executive Order, it exists as a completely independent piece of law.

In *Zevallos*, the appellant argued that the district court, in deciding his due process claim, wrongly relied on a line of cases under IEEPA that approved blocking assets without pre-deprivation notice. *Zevallos*, 793 F.3d at 116. The United States Court of Appeals for the District of Columbia Circuit declined to "decide whether [Zevallos was] right," because "[t]he due process

analysis [in that case was] straightforward *without analogizing the Kingpin Act to any other statute*." *Id.* (emphasis added).

The government goes on to list several cases in which defendants were charged with violations of IEEPA, in support of their premise that defendants charged with IEEPA violations do not need to know "the precise details of the law being violated." *See* ECF 63, at 20. In both *United States v. Quinn*, 403 F. Supp. 2d 57 (D.D.C. 2005) and *United States v. Mousavi*, 604 F.3d 1084 (9th Cir. 2010), the Courts held that while the government, prosecuting an individual for IEEPA violations, was not required to prove the defendant was aware of IEEPA's specific licensing requirements, the government was still required to prove "that [the defendant] knew their precise conduct was unlawful." *See Quinn*, 403 F. Supp. 2d at 66; *Mousavi*, 604 F.3d at 1094 (holding that "willfulness" under IEEPA requires the government to prove beyond a reasonable doubt that the defendant acted with knowledge "that his conduct was unlawful"). The holdings of *United States v. Turner*, 836 F.3d 849, 860 (7th Cir. 2016) and *United States v. Elashyi*, 554 F.3d 480, 505 (5th Cir. 2008) also require the government to prove, beyond a reasonable doubt, that a defendant charged with violating IEEPA knew that his conduct was unlawful. Lastly, in *United States v. Homa International Trading Corporation*, the Second Circuit held that the defendant could not be convicted of an IEEPA violation unless the government proved that "the defendant knew that such transmission of funds was a violation of the Iranian embargo, and was, thus, illegal." 387 F.3d 144, 147 (2d Cir. 2004).

Ms. Gonzalez maintains her position that the Kingpin Act is a statutory framework wholly separate and independent from IEEPA, and that, to prove a violation of the Kingpin Act, Ms. Gonzalez must have understood that she was transacting with entities that had been designated by OFAC, and that it was illegal to do so, because those entities were deemed by OFAC to have provided material assistance or goods or services to a specific Significant Foreign Narcotics

Trafficker.  This heightened willfulness standard is consistent with the holdings of *Cheek v. United States*, 498 U.S. 192 (1991) and *Ratzlaf v. United States*, 510 U.S. 135 (1994).  In *Cheek*, the United States Supreme Court addressed the willfulness standard for violation of a tax evasion statute, and held that "the willfulness requirement could be defeated by the defendant's good-faith belief that he 'was not a person required to file a return or to pay income taxes and that wages are not taxable income,' even if that belief was unreasonable."  *United States v. Burden*, 934 F.3d 675, 691 (D.C. Cir. 2019) (quoting *Cheek*, 498 U.S. at 203).  In reaching this holding, the Supreme Court reasoned that "[t]he proliferation of statutes and regulations has sometimes made it difficult for the average citizen to know and comprehend the extent of the duties and obligations imposed by the tax laws."  *Cheek*, 498 U.S. at 192.  The Supreme Court applied another heighted willfulness standard in *Ratzlaf*, in the context of a currency structuring statute.  *Ratzlaf*, 510 U.S. at 136.  In *Ratzlaf*, the Supreme Court held that "'willfulness' meant that the defendant had to be aware not only of reporting obligations applicable to banks, but of his own distinct obligation not to structure his transactions for the purpose of avoiding triggering the bank's obligation to report."  *Burden*, 934 F.3d at 691 (citing *Ratzlaf*, 510 U.S. at 137-38).  The statute at issue in *Ratzlaf*, 31 U.S.C. § 5322, like 21 U.S.C. § 1906, makes it a crime to willfully violate the statute itself.  *Compare* 31 U.S.C. § 5322(a) ("A person willfully violating this subchapter or a regulation prescribed or order issued under this subchapter . . . .") *with* 21 U.S.C. § 1906(a)(1) ("Whoever willfully violates the provisions of this chapter, or any license rule, or regulation issued pursuant to this chapter . . . .").  A heightened willfulness standard, therefore, is properly applicable to violations of 21 U.S.C. § 1906 as well.  *See*, *e.g.*, *United States v. Perry*, Criminal No. 2:13cr156, 2014 WL 7240236, at * 4 (E.D. Va. Dec. 19, 2014) (declining to apply *Ratzlaf*'s heightened willfulness standard to a violation of 18 U.S.C. § 1001 because the statute at issue in *Ratzlaf* criminalizes willful violations of the currency structuring laws set forth in the statute, whereas 18 U.S.C. § 1001 criminalizes

"willfully falsif[ying], conceal[ing] or cover[ing] up . . . a material fact, or mak[ing any false, fictitious or fraudulent statements," and holding that "[n]othing in the language or structure of § 1001 indicates that one may violate § 1001 only by acting with knowledge of the existence of the law and an intent to violate or disregard it.").

In *Bryan v. United States*, the Supreme Court distinguished the technical statutes at issue in *Cheek* and *Ratzlaf* with a defendant who was charged with unlicensed firearms dealing, and held that the defendant need only have knowledge that his conduct was unlawful. *Bryan*, 524 U.S. 184, 194-95 (1998). In *Burden*, the D.C. Circuit interpreted *Bryan*'s willfulness standard to require that the defendant "acted with knowledge that his conduct was unlawful." *Burden*, 934 F.3d at 693 (quoting Bryan, 524 U.S. at 193). In other words, the "conduct that [the defendant] must know was unlawful is the *actus reus* of the crime with which he is charged." *Id.*[5]

Even under the standards set forth in *Bryan and Burden*, and in the cases cited by the government, however, the same notice would be required. Without notice that the entities listed in the Superseding Indictment were designated by OFAC, because those entities were deemed by OFAC to have provided material assistance or goods or services to a specific Significant Foreign Narcotics Trafficker. Ms. Gonzalez would have absolutely no way of knowing that simply engaging in business transactions with those entities would violate any law. This notice is even more important in this case, as there is no evidence whatsoever, because no such evidence exists, that Ms. Gonzalez was involved in any sort of narcotics trafficking. The only alleged connection between Ms. Gonzalez and the Cartel de Jalisco Nueva Generacion ("CJNG") are the entities listed in the Superseding Indictment. And, as stated, above, the government has not provided any

---

[5] Similarly, the defendants in *United States v. Zeese* were charged with violations of a non-technical statute – 18 U.S.C. § 118. 437 F. Supp. 3d 86, 90 (D.D.C. 2020). Given the general nature of the statute, this Court in *Zeese* did not apply the heightened willfulness standard promulgated by *Cheek* and *Ratzlaf*. *Id.* at 95-96.

evidence that the charged entities were involved in any conduct that could considered as providing assistance to the CJNG.  As a result, the government has also not provided any evidence that Ms. Gonzalez knew or should have known that these entities were somehow linked to the CJNG.  For these reasons, notice of these entities' OFAC designations is required to prove that Ms. Gonzalez willfully violated the Kingpin Act.

### 5.    Ms. Gonzalez Should be Permitted to Challenge the Validity of the Underlying OFAC Designations.

Ms. Gonzalez faces five counts of Engaging in Transactions or Dealings in Properties of a Designated Foreign Person, in violation of 21 U.S.C. §§ 1904 and 1906.  *See generally* ECF 65. The government has produced no evidence in discovery that any of the entities identified in the Superseding Indictment have engaged in any conduct that could be considered as "materially assisting in, or providing support for or to, or providing goods or services in support of . . . the Cartel de Jalisco Nueva Generacion" or as "being controlled or directed by, or acting for or on behalf of, Cartel de Jalisco Nueva Generacion."  *Id.*  This undermines the intent of Congress in enacting the Kingpin Act.  "*There is no intention that this legislation affect Americans who are not knowingly and willfully engaged in international narcotics trafficking*."  H.R. REP. NO. 106-457, at 42 (1999) (Conf. Rep.), at 42 (emphasis added).

Instead, the government has provided an undated "Notification of Blocking of a Third Person" (hereinafter "Blocking Notice"), which states only that on April 8, 2015, Abigael Gonzalez Valencia, Nemesio Oseguera Cervantes, Los Cuinis, and Cartel de Jalisco Nueva Generacion were designated by OFAC as "Specially Designated Narcotics Traffickers" by OFAC. *See* Exhibit 1 (Blocking Notice).  As stated above, the government acknowledges that Ms. Gonzalez did not receive actual, in-person notice of this Blocking Notice until 2019.  *See* ECF 63, at 5.  Furthermore, the government's Blocking Notice contains no reference to the entities

identified in the Superseding Indictment, or to any conduct in which those entities were alleged to have engaged that would provide proof of those entities providing any support whatsoever to the CJNG.[6]

In an attempt to distract from this missing evidence, the government insists that Ms. Gonzalez should not be permitted to challenge the validity of the charged entities' OFAC designations.  *See* ECF 63, at 22.  The government cites several cases in support of its proposition, but, importantly, none of these cases involve conduct arising out of the Kingpin Act.  *Id.* at 22-23. Instead, the government relies on case law addressing other administrative law regimes, including the Immigration and Nationality Act, the Export Administration Act, the Emergency Price Control Act,[7] and the International Emergency Economic Powers Act.  *Id.*  The Kingpin Act is a separate

---

[6] At most, the government offers a conclusory chart listing the entities in the superseding indictment as being "Entities Linked to CJNG" without any support for that allegation.  *See* Exhibit 2 (Government Discovery produced at Bates No. 00000043) (redacted to remove identifying contact information regarding the entities in the Superseding Indictment).

[7] Contrary to the government's description of *Yakus's* holding in its Pretrial Motion, in *Yakus*, the United States Supreme Court stated:

> We have no occasion to decide whether one charged with criminal violation of a duly promulgated price regulation may defend on the ground that the regulation is unconstitutional on its face. Nor do we consider whether one who is forced to trial and convicted of violation of a regulation, while diligently seeking determination of its validity by the statutory procedure may thus be deprived of the defense that the regulation is invalid. There is no contention that the present regulation is void on its face, petitioners have taken no step to challenge its validity by the procedure which was open to them and it does not appear that they have been deprived of the opportunity to do so. Even though the statute should be deemed to require it, any ruling at the criminal trial which would preclude the accused from showing that he had had no opportunity to establish the invalidity of the regulation by resort to the statutory procedure, would be reviewable on appeal on constitutional grounds. It will be time enough to decide questions not involved in this case when they are brought to us for decision, as they may be, whether they arise in the Emergency Court of Appeals or in the district court upon a criminal trial.

*Yakus v. United States*, 321 U.S. 414, 446–47 (1944).  The *Yakus* Court did not, therefore, hold that a defendant could not collaterally attack the validity of the Emergency Price Control Act price regulations that he was accused of violating, as claimed by the government.  *See* ECF 63, at 23.

statutory scheme from the statutes referenced by the government's cited case law and, as such, should be subjected to its own analysis.

Although the government has previously argued that IEEPA case law should be used to interpret the application of the Kingpin Act, the Order cited by the government in *United States v. Chichakli*, provides no helpful analysis.  *See* ECF 63, at 23 (citing *United States v. Chichakli*, No. 1:09-cr-01002-WHP (S.D.N.Y. Nov. 18, 2013)).   In *Chichakli*, the Court stated, with no supporting analysis or citation to any authority aside from Fed. R. 401 and 403, that the defendant was "prohibited from introducing irrelevant evidence and arguments seeking to relitigate whether [the defendant] should have been on the [Specially Designated Nationals (SDN)] list." *Id.* at ECF 70, at 9.   In *Chichakli*, the government sought to introduce background information on the Executive Order that provided the support for the defendant's placement on the SDN list.  *Id.*  The Court held, without explanation, that the reason why Chichakli was placed on the SDN was not relevant, but it also precluded the government from introducing unfairly prejudicial evidence suggesting that Chichakli had been placed on the SDN list for undermining democracy in Liberia. *Id.*

Ms. Gonzalez is faced with a different situation.  She has not been designated by OFAC. Instead, she is charged with violating 21 U.S.C. §§ 1904 and 1906 for engaging in transactions with entities that had been designated by OFAC.  Whether these entities were properly designated, therefore, is directly relevant to Ms. Gonzalez's defense.   Indeed, in determining whether Ms. Gonzalez should be permitted to challenge the validity of the underlying OFAC designations in this case, the Court should be guided by the principles set forth by the United States Supreme Court, which provide that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding."  *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38

(1987) (citing *Estep v. United States*, 327 U.S. 114, 121-122 (1946); *Yakus*, 321 U.S. at 444). There is no question that OFAC's designations of the entities listed in the Superseding Indictment will play a critical role in the imposition of any criminal sanction against Ms. Gonzalez, as Ms. Gonzalez would not be charged with any criminal violations but for the OFAC's designations. As the government has failed to provide substantive evidence linking the entities in the Superseding Indictment with CJNG, a review and challenge of the underlying designations is crucial to Ms. Gonzalez's defense.

Contrary to the government's arguments, allowing Ms. Gonzalez to challenge the validity of the underlying OFAC designations would not confuse the issues, mislead the jury, or unfairly prejudice the government. *See* ECF 63, at 23. It does not follow that allowing Ms. Gonzalez to challenge the decision that forms the basis for the criminal charges against her would do anything but clarify the issues before the Court and provide needed evidence to the jury, so the jury is afforded a full understanding of the facts underlying the charges against Ms. Gonzalez. The government does not, because it cannot, specify any sort of "unfair prejudice" that it would suffer as a result of a challenge to the OFAC designations in this case. Precluding Ms. Gonzalez from challenging the validity of the underlying designations, however, will hamstring her ability to fully investigate the government's evidence and call into question any witnesses and evidence presented by the government at trial, and will negate Ms. Gonzalez's ability to fully probe the strength of the government's case against her.

Allowing Ms. Gonzalez to challenge the OFAC designations in this case will also bring to light whether she is being prosecuted for refusing to cooperate with the government. In *United States v. Meadows*, the D.C. Circuit declined to make a finding of vindictive prosecution after the defendant refused to cooperate with the government and was subsequently charged with six felony counts, including wire fraud and theft of government property. 867 F.3d 1305, 1314-15 (D.C. Cir.

21

2017).  The *Meadows* Court based its holding that the defendant was not being punished for her refusal to cooperate on the fact that the "government met its burden of producing objective evidence justifying the prosecution's charging decisions."  *Id.* at 1315.  This is precisely why the rationale underlying the OFAC designations is critical in this case.  Ms. Gonzalez's refusal to cooperate, paired with five felony charges supported by invalid OFAC designations, would substantially undermine any "objective evidence" the government could proffer to justify its charging decision.  In this way, Ms. Gonzalez's ability to challenge the underlying OFAC designations is not only crucial to the development and presentation of her defense, but also to her ability to cast doubt upon the credibility of the government's case.  For these reasons, Ms. Gonzalez should be permitted to challenge the validity of the underlying OFAC designations in this matter.

## III.  CONCLUSION

For the reasons set forth above, the government's motions should be denied.

Respectfully submitted,

/s/ Steven J. McCool
STEVEN J. McCOOL
D.C. Bar No. 429369
JULIA M. COLEMAN
D.C. Bar No. 1018085
McCOOL LAW PLLC
1776 K Street, N.W., Suite 200
Washington, D.C. 20006
Telephone: (202) 450-3370
Fax: (202) 450-3346
smccool@mccoollawpllc.com
jcoleman@mccoollawpllc.com

*Counsel for Jessica Johanna Oseguera Gonzalez*

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 2nd day of September 2020, the foregoing was served electronically on the counsel of record through the U.S. District Court for the District of Columbia Electronic Document Filing System (ECF) and the document is available on the ECF system.


/s/ Steven J. McCool
STEVEN J. McCOOL