UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

* * * * * * * * * * * * * * * * * *
UNITED STATES OF AMERICA,              )   Criminal Action
                               )   No. 20-40
vs.                             )
                               )
JESSICA JOHANNA OSEGUERA-GONZALEZ,  )   September 11, 2020
                             )   9:30 a.m.
              Defendant.      )   Washington, D.C.
                             )
* * * * * * * * * * * * * * * * * *

**(PROCEEDING HELD VIA VIDEOCONFERENCE)**

**TRANSCRIPT OF HEARING**
**BEFORE THE HONORABLE BERYL A. HOWELL,**
**UNITED STATES DISTRICT COURT CHIEF JUDGE**

<u>**APPEARANCES**</u>:

FOR THE GOVERNMENT: BRETT REYNOLDS
                   KATE NASEEF
                   U.S. Department of Justice
                   145 N Street, NE
                   Washington, DC 20530
                   (202) 598-2950
                   Email:  Brett.reynolds@usdoj.gov
                   Email:  Kate.naseef@usdoj.gov

FOR THE DEFENDANT:  STEVEN J. MCCOOL
                   JULIA M. COLEMAN
                   McCool Law PLLC
                   1776 K Street, NW, Suite 200
                   Washington, DC 20006
                   (202) 450-3370
                   Email: Smccool@mccoollawpllc.com
                   Email: Jcoleman@mccoollawpllc.com

ALSO PRESENT:       Teresa Salazar, Spanish Language Interpreter

Court Reporter:     Elizabeth SaintLoth, RPR, FCRR
                  Official Court Reporter

Proceedings reported by machine shorthand, transcript
produced by computer-aided transcription.

1                      **P R O C E E D I N G S**

2              THE DEPUTY:  The United States District Court for

3       the District of Columbia is now in session.  Chief Judge

4       Beryl A. Howell presiding.

5              Matter before the Court, Criminal Case No. 20-40,

6       United States of America versus Jessica Johanna Oseguera

7       Gonzalez.

8              Your Honor, for the record, the interpreter

9       Miss Theresa Salazar, is participating.

10             THE COURT:  Thank you.

11             THE DEPUTY:  Counsel, please state your names for

12      the record, starting with the Government.

13             MR. REYNOLDS:  Good morning, Your Honor.

14      Brett Reynolds, DOJ Criminal Division, on behalf of the

15      Government.

16             THE COURT:  Good morning, Mr. Reynolds.

17             MS. NASEEF:  Good morning, Your Honor.

18      Kate Naseef for the Government.

19             THE COURT:  Good morning.

20             MR. McCOOL:  Good morning, Your Honor.

21      Steven McCool and Julia Coleman on behalf of Jessica

22      Gonzalez.

23             THE COURT:  Good morning.

24             Good morning, Miss Gonzalez.

25             Are you able to hear?

1          THE DEFENDANT:  Yes, I can hear.

2          THE COURT:  Okay.  Good.

3          I can see you.  And are you able to see everybody,

4    or just me?

5          THE DEFENDANT:  I can see all of them.

6          THE COURT:  Perfect.  Okay.

7          Okay.  Miss Oseguera Gonzalez, do you agree, after

8    consultation with your counsel, to participate in the status

9    conference using the video teleconferencing capability?

10          THE DEFENDANT:  Yes, I do.

11          THE COURT:  All right.

12          All right.  So we're here to talk about the CIPA

13   process.  But let me just begin by mentioning the fact that

14   the probation office submitted its workup of how the

15   sentencing guidelines may or -- in this case, not apply to

16   Miss Oseguera Gonzalez's case; and I don't know whether the

17   parties wanted to talk about that at all.

18          But I did want to share with the parties that I

19   had a communication with the U.S. Sentencing Commission

20   about the conclusion reached by this Court's probation

21   office that there is not a sufficiently analogous guideline

22   that applies to the charged conduct.  And the sentencing

23   commission shared with me statistics that, over the last

24   five years, there were two convictions under 21 U.S.C.

25   Section 1904(c)(2) with which Miss Oseguera Gonzalez is

1          charged.  And in one of those cases, the guideline was

2          referenced through 2X5.2 to 2S1.1 which -- I understand from

3          the probation office's summary or memorandum -- is the

4          defense position presented to the probation office.

5                    The second case in the last five years involving a

6          conviction under 21 U.S.C. 1904(c)(2) was sentenced under

7          2D1.1 because there happened to be another conviction in the

8          case under 21 U.S.C. Section 959 which directly references

9          to 2D1.1.  So I did want to -- since I was privy to that

10         information, I wanted to share that information with the

11         parties as a follow on to the probation office's memorandum.

12                    Is there anything that the parties want to discuss

13         about that, or shall we now just turn to the CIPA part of

14         the hearing?

15                    For the Government --

16                    MR. McCOOL:  Your Honor.

17                    THE COURT:  Or Mr. McCool.

18                    MR. McCOOL:  Yes.  If I may.

19                    Thank you, Your Honor.  And good morning again.

20                    I believe the first case Your Honor was

21         referencing may have been the Sanchez case from the Southern

22         District of Florida.  May I ask if that's the case?

23                    THE COURT:  You know, the sentencing commission

24         just gives me bare statistics.

25                    MR. McCOOL:  Okay.

1          THE COURT:  I didn't follow up with them to find

2    out, you know, when.  I know it's in the last five years.

3    But precisely the district -- if it had been this district

4    they would have told me; but they gave me nor more details

5    about it.  You may know more than I do then.

6          MR. McCOOL:  I am not even sure if Sanchez was

7    within the last five years in the Southern District of

8    Florida, and I have looked.

9          I did not see the Kingpin Act conviction that

10   dealt with 2D1.1 for the reasons Your Honor just stated.  I

11   was going to ask for the name of that case, but again -- I

12   believe you have answered it by addressing my first

13   question.  So I am ready to proceed to the CIPA thing.

14          But thank you, Your Honor, for the information you

15   have provided.

16          THE COURT:  All right.

17          And does the Government have anything to add, or a

18   question?

19          MR. REYNOLDS:  Thank you, Your Honor.

20          All I would say -- I know Your Honor knows this,

21   and this is on the record already.  I think the reason we

22   had requested probation do that was in order to provide

23   clarity that might help us all assess the case; and,

24   unfortunately, their view of it -- that there is no

25   applicable guideline -- doesn't provide us that level of

1    clarity.

2            The only thing I would add to the two cases you

3    already discussed -- and Mr. McCool already knows this from

4    me -- there is an impending sentencing in the Southern

5    District of New York in which -- on the same charge in which

6    the public record already discloses that.  I believe the

7    plea agreement or the judge has already determined that he

8    is going to use 2M5.2 which is one of the guidelines that

9    the Government posited would be applicable.  I don't know

10   that that changes anything, where we are.  But that

11   sentencing should occur in the next month or two, if I

12   remember the date right; so that's another data point that's

13   out there on the possible applicable sentencing guidelines.

14           THE COURT:  Well, I think -- thank you; and I

15   don't know that we need to discuss it anymore.

16           But perhaps it all does rest on what the

17   Government can show about the defendant-at-issue's knowledge

18   of other criminal activity outside of the kingpin specific

19   charge, so perhaps that becomes relevant in courts analysis

20   of which is the most analogous guideline; but I think it's

21   premature to say any more than that on this.  But I did

22   think since I had certain information, the parties -- I did

23   need to share that with you, about the guidelines

24   application.

25           MR. REYNOLDS:  Thank you.

1           THE COURT:  Let's turn to the CIPA part of this

2      hearing which is the purpose.

3           Why don't you tell me, Mr. Reynolds or

4      Miss Naseef, how do you plan to proceed?  What's your plan

5      for this morning's hearing?

6           MS. NASEEF:  Well, Your Honor, it should be very

7      brief.  The Government has conducted the necessary reviews

8      for discoverable information --

9           THE COURT:  Could you speak up, Miss Naseef?

10           I am having some difficulty hearing you,

11      Mr. Reynolds as well.  It may be your machines, my machines;

12      but if you could just speak up a little bit.  Thank you.

13           MS. NASEEF:  Yes, Your Honor.

14           THE COURT:  Much better.

15           MS. NASEEF:  The Government has conducted the

16      necessary reviews for discoverable information, and we plan

17      to file a motion pursuant to CIPA Section 4.  We would

18      propose filing that motion on October 5th, which is a

19      CIPA-related deadline that has already been scheduled.  And

20      the Government believes that the Section 4 motion could be

21      decided over the papers; but if the Court would prefer, we

22      could schedule a time for an ex parte Section 4 hearing if

23      that becomes necessary.

24           And the Section 4 --

25           THE COURT:  So I take it from that -- I'm sorry to

1    interrupt you, Miss Naseef, but that is the prerogative of

2    the Court.

3              So I take it from that statement that -- one of

4    the first questions I wanted to ask you is whether the

5    Government's review of the classified information has, in

6    the Government's view, surfaced information that's

7    discoverable by the defendant.

8              MS. NASEEF:  Your Honor, our Section 4 motion will

9    address that.  I don't think we can really get into the

10   details of that in this setting, but I do think that the

11   Section 4 motion will resolve all CIPA issues before this

12   Court.

13             The Government does not plan to disclose any

14   classified information to defense counsel or the defendant

15   so there shouldn't be any Section 5 or Section 6 proceedings

16   in this case.

17             THE COURT:  Okay.  All right.  And have I set the

18   October 5 date before?  I don't remember that date.

19             MS. NASEEF:  The October 5 date refers to motions

20   that would be filed after CIPA discovery, so it's not

21   exactly on point; but we have been using that as a reference

22   for what would be timely.

23             THE COURT:  Okay.  And as part of that October 5

24   motion, am I going to have to review any of the items of

25   classified information --

```
 1                  MS. NASEEF:  Yes, Your Honor.

 2                  THE COURT:  -- to make any determination about

 3      discoverability?

 4                  MS. NASEEF:  Yes, Your Honor.

 5                  A Section 4 motion is for the Court to make a

 6      determination about discoverability.  So we will file these

 7      motions -- I believe we need to confer with the court

 8      security officer; I believe Maura Peterson will handle that

 9      part if it becomes necessary.

10                  THE COURT:  Okay.  Well, are you -- I think I am

11      typically required to enter a protective order that appoints

12      the Court security officer.

13                  MS. NASEEF:  Yes, Your Honor.

14                  THE COURT:  Is that contemplated by your -- is

15      that going to be part of your request in the October 5

16      motion, or does that have to come first?

17                  MS. NASEEF:  Your Honor, I believe you appointed

18      Maura previously to that position.

19                  THE COURT:  Okay.  I have already done that.  Got

20      it.  Okay.  I have already done that.  Perfect.

21                  Okay.  And then in this October 5 motion which is

22      essentially going to be asking the Court to look at the

23      classified information to see whether I concur with the

24      Government's view it is not discoverable; is that what you

25      are contemplating?
```

1              I'm feeling my way here.

2              MS. NASEEF:  Yes.  So a Section 4 motion can

3    address two -- there are two decisions the Court can make

4    pursuant to that.  One is whether or not the information is

5    discoverable; and the other is -- if it is discoverable,

6    whether any substitution proposed by the Government would be

7    sufficient.

8              THE COURT:  All right.  And are you planning on

9    providing an outline of what that substitution will be in

10   your October 5 motion?

11             MS. NASEEF:  If there are any substitutions they

12   would be attached to the motion.

13             THE COURT:  Okay.  I am just trying to figure

14   out -- perhaps Mr. McCool already knows.

15             But is there going to be -- what does Mr. McCool

16   have to say in opposition -- or whatever -- in response to

17   this Government motion; because I presume what's being filed

18   in the October 5 motion is not ex parte, or is it?

19             MS. NASEEF:  Yes, Your Honor.  It is ex parte,

20   Your Honor.

21             THE COURT:  It will be ex parte.

22             MS. NASEEF:  Yes.  Section 4 --

23             THE COURT:  So Mr. McCool will just know this is

24   going on in the background.

25             MS. NASEEF:  Yes, Your Honor.

1                Section 4 by statute provides for these motions to

2      be ex parte.  And then, if Your Honor needs a hearing to

3      discuss the motion, that hearing is also held ex parte.

4                THE COURT:  Okay.

5                MR. McCOOL:  May I address that, Your Honor?

6                THE COURT:  I was going to hear from you next,

7      Mr. McCool.

8                MR. McCOOL:  Thank you.  I am sorry to jump in.

9                So I have had conversations with Government

10     counsel on this.  And I make -- Section 4 does not require

11     the Court to conduct this examination ex parte.  So as we

12     think this through, we may wish to oppose an ex parte

13     proceeding.  But I have let Mr. Reynolds know that, and I

14     just wanted to share that with Your Honor.

15               THE COURT:  Okay.  Well, this will be interesting.

16               I mean, I have certainly read the CIPA statute.  I

17     have actually written academic articles in the CIPA statute,

18     but this is the first time I am actually doing it --

19     implementing it.  So I am curious about how this is going to

20     all work, and the staging of it.

21               All right.  So once we have that, do I need to set

22     up any other dates for -- or a schedule for CIPA

23     proceedings?

24               MS. NASEEF:  No, Your Honor.

25               Because defense counsel won't be receiving

1    classified information and the defendant is not privy to

2    classified information, there shouldn't be any per

3    Section 5; and the Government and the defendant think that

4    makes sense.

5            The only thing to schedule would be if you wanted

6    to preserve a time for the Section 4 hearing; we could

7    schedule that now, or that could be decided after you see

8    the filing.

9            THE COURT:  Yes.  I think I'm going to wait until

10   after the filing.  And then we can -- if it's just -- I

11   mean, I would think that, you know, I am going to be wanting

12   to do this fairly promptly since the trial date in this case

13   is December 14.  So this is all going to be in a fairly

14   quick turnaround.  Yes.

15           Okay.  Well, Miss Naseef, did you want to add

16   something?

17           MS. NASEEF:  Yes.  I would just ask that if

18   Mr. McCool is opposing the ex parte motion that that

19   opposition be filed before the Section 4 motion.

20           Because this information is classified and the

21   Department of Justice is not the original classification

22   authority, we are not in a position to disclose that

23   information to defense counsel or the defendant without the

24   approval of Government agencies which would likely not be

25   forthcoming.  So just to avoid any problems, I would ask

1    that that motion be filed and resolved before the Section 4

2    filing.

3              THE COURT:  Okay.  Well, I mean, when you make

4    your filing on October 5 you will -- even though it's

5    ex parte and it will be sealed, you will file a notice on

6    the docket saying that you have filed the ex parte motion.

7              MS. NASEEF:  Yes, Your Honor.

8              THE COURT:  And in that notice you can explain the

9    reasons why it is both ex parte, the statutory authority for

10   it being ex parte, if there is both statutory and case law

11   for that.

12             So I think at that point -- when Mr. McCool sees

13   what your position is and your authority for the position is

14   the time when Mr. McCool can say, you know, some chunks of

15   this may, indeed, be required to be ex parte but other parts

16   of it may not.  So to me that seems like the best way to tee

17   it up, as opposed to having litigation in the next two weeks

18   about whether that can proceed on an ex parte basis.

19             MS. NASEEF:  Your Honor, if I may.

20             Sorry.  I got some feedback.

21             On the Section 2 filing that the Government filed

22   when we originally asked for this hearing to happen contains

23   all of the case law and statutory cites explaining why a

24   Section 4 proceeding needs to be ex parte, and that is part

25   of the purpose of filing that in the Section 2 pleading.  So

1    all of that information is on the record and is available to

2    defense counsel -- to Mr. McCool.

3              THE COURT:  All right.  So Mr. McCool --

4              MR. McCOOL:  Your Honor.

5              THE COURT:  -- if you are contemplating whether or

6    not to challenge the ex parte nature of the Section 4

7    filing, do you feel you are prepared with the reasoning and

8    the case law and the statutory authority now to file any

9    motion so that it will not be ex parte?

10             MR. McCOOL:  I could have -- if I could have a

11   week, I will either file a notice with the Court that I will

12   not challenge the ex parte proceeding or I will file

13   something with the Court explaining why I believe that it

14   should not be ex parte.

15             Would that be appropriate, Your Honor?

16             THE COURT:  Yes.  That sounds like a plan, so I

17   will set that in a minute order.

18             All right.  Is there anything further to address

19   today from the Government?

20             MR. REYNOLDS:  No, Your Honor.  There is not from

21   the Government.

22             THE COURT:  Mr. McCool?

23             MR. McCOOL:  No.  No, Your Honor.

24             THE COURT:  All right.  Okay.  Then you are all

25   excused.  And I will enter a minute order with the schedule

1    we have discussed today.

2              MR. McCOOL:  All right.  Have a nice day.

3              MR. REYNOLDS:  Thank you, Your Honor.

4              MS. NASEEF:  Thank you, Your Honor.

5              THE COURT:  Thank you.  You are excused.

6              MR. McCOOL:  Thank you.

7              (Whereupon, the proceeding concludes, 9:53 a.m.)

8                          * * * * *

9                          **CERTIFICATE**

10

11   I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby
     certify that the foregoing constitutes a true and accurate
     transcript of my stenographic notes, and is a full, true,
12   and complete transcript of the proceedings to the best of my
     ability.
13

14   PLEASE NOTE:  This hearing was held telephonically
     in compliance with the COVID-19 pandemic stay-safer-at-home
     orders and is, therefore, subject to the limitations
15   associated with the use of technology, including but not
     limited to telephone signal interference, static, signal
16   interruptions, and other restrictions and limitations
     associated with remote court reporting via telephone,
17   speakerphone, and/or videoconferencing capabilities.

18   This certificate shall be considered null and void
     if the transcript is disassembled in any manner by any party
19   without authorization of the signatory below.

20

21       Dated this 16th day of September, 2020.

22       /s/ Elizabeth Saint-Loth, RPR, FCRR
         Official Court Reporter
23

24

25