**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.    )<br>)<br>JESSICA JOHANNA OSEGUERA )<br>GONZALEZ, )<br>   also known as "Jessica Johanna )<br>   Castillo" and "La Negra," )<br>)<br>Defendant.    ) | CRIMINAL NO.: 1:20-CR-040 |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S THIRD MOTION TO COMPEL PRODUCTION OF EVIDENCE AND WITNESSES

The United States, through undersigned counsel, respectfully submits this response to Defendant's Motion to Compel Production of Evidence and Witnesses ("Motion" or "Mot.") (Dkt. No. 105). The Motion seeks to compel the government to disclose documents or information "regarding any potential loss amount under Section 2B1.1 of the United States Sentencing Guidelines and any proceeds realized by the entities identified in the Superseding Indictment." Mot. at 1.

The Motion should be denied on several grounds. First, the defendant has not established that the amount of loss evidence she seeks to compel is relevant and material to preparing a defense or to the applicable sentencing guidelines. Second, the defendant's Motion is moot because the government has not withheld any information regarding amount of loss. Finally, the Motion is untimely because all relevant facts were known to the defendant prior to the July 13, 2020 pretrial motions deadline set by the Court.

### I.     Amount of Loss Evidence Sought by the Defendant Is Neither Relevant Nor Material to Guilt or Sentencing

Rule 16, in pertinent part, requires production only of items "within the government's possession, custody, or control" that are "material to preparing the defense." Fed. R. Crim. P.

1

16(a)(1)(E)(i).  "[I]n the context of Rule 16, 'the defendant's defense' means the defendant's response to the Government's case in chief."  *United States v. Armstrong*, 517 U.S. 456, 462 (1996).  In order to show materiality, a defendant must demonstrate that the requested evidence "bears some abstract logical relationship to the issues in the case . . . . There must be some indication that the pretrial disclosure of the disputed evidence would [enable] the defendant significantly to alter the quantum of proof in his favor."  *United States v. Lloyd*, 992 F.2d 348, 350-51 (D.C. Cir. 1993) (alterations in original) (internal citation and quotation marks omitted).  Although the materiality requirement is not a heavy burden, it is not enough that the documents sought bear an "abstract logical relationship to the issues in the case."  *United States v. George*, 786 F. Supp. 56, 58 (D.D.C. 1992).

In the defendant's motion, the defendant argues that documents showing a "loss amount" and "proceeds realized by the entities identified in the Superseding Indictment" are relevant primarily because of their application at sentencing.  *See* Mot. at 7–8.  Although the defendant does not argue it in extensive detail in the Motion, the defendant appears to contend that Section 2B1.1 of the Sentencing Guidelines Manual is the applicable offense conduct guideline.  *See* Mot. at 5.

The defendant's position is misguided.  Section 2B1.1 is not the offense conduct guideline that should apply here if the defendant is convicted of the charged Kingpin Act violations.  Unlike many federal criminal statutes, the Guidelines Manual does not prescribe a specific guideline for the Kingpin Act.  *See generally* Sentencing Manual Appendix A.  Thus, pursuant to Section 1B1.2(a), because the offense of conviction here would be a "statutory provision not listed in the Statutory Index," the "most analogous guideline" should be applied.

*See also* Sentencing Manual § 2X5.1 ("If the offense is a felony for which no guideline expressly has been promulgated, apply the most analogous offense guideline.").

The government contends that the most analogous guidelines are Section 2M5.1 or Section 2M5.3, which the Sentencing Commission has affirmatively indicated apply to criminal violations of the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1705. *See generally* Guidelines Manual Statutory Index, Appendix A.[1]  IEEPA gives the president authority to designate Specially Designated Global Terrorists ("SDGTs"). *See generally* 50 U.S.C. § 1902.  Through IEEPA and applicable executive orders, the Department of the Treasury can also block the interests of SDGTs in property, as well as designate persons or entities "owned, controlled, or directed by, or to have acted or purported to act for or on behalf of" an SDGT. *See* Exec. Order 13886, 84 Fed Reg. 48041 (2019). *Compare* 21 U.S.C. § 1904(b) (the Department of the Treasury can block the interests of significant foreign narcotics traffickers in property, as well as designate persons or entities "owned, controlled, or directed by, or acting for or on behalf of" a significant foreign narcotics trafficker).

### a. History and Text of the Kingpin Act Supports Applicability of Guidelines Sections 2M5.1 or 2M5.3 at Sentencing

Congress expressly modeled the Kingpin Act on IEEPA, giving the president authority to name "significant foreign narcotics traffickers" for the purpose of imposing sanctions. 21 U.S.C. § 1901(a).  Congress also found that prior to the Kingpin Act's enactment in 1999, "IEEPA was successfully applied to international narcotics traffickers in Colombia." *Id.* § 1901(a)(3).  It is

---

[1] The Sentencing Manual's Statutory Index also links criminal violations of IEEPA to offense conduct guidelines Section 2M5.2, which applies specifically to weapons exports.  Because weapons exports are not alleged in this case, Section 2M5.2 is not applicable.

therefore no surprise that the Kingpin Act's penalty provisions are similar to those of IEEPA.

Specifically, IEEPA's penalty provision provides:

> A person who willfully commits, willfully attempts to commit, or willfully conspires to commit, or aids or abets in the commission of, an unlawful act described in subsection (a) [which makes it unlawful to violate any 'license, order, regulation, or prohibition issued under IEEPA] shall, upon conviction, be fined not more than $1,000,000, or if a natural person, may be imprisoned for not more than 20 years, or both.

50 U.S.C. § 1705(c).

The Kingpin Act's criminal penalty provision provides:

> (1) Whoever willfully violates the provisions of this chapter, or any license rule, or regulation issued pursuant to this chapter . . . shall be—
>
>   (a) Imprisoned for not more than 10 years,
>   (b) Fined in the amount provided in title 18, or in the case of an entity, fined not more than $10,000,000,
>
> or both.
>
> (2) Any officer, director, or agent of any entity who knowingly participates in a violation of the provisions of this chapter shall be imprisoned for not more than 30 years, fined nor more than $5,000,000, or both.

21 U.S.C. § 1906(a). Thus, although the Kingpin Act has a lower base maximum prison sentence than IEPPA, it prescribes substantially higher fines. In the case of an officer, director, or agent of an entity, the Kingpin Act envisions a higher maximum prison sentence.

Furthermore, similar to IEEPA, Congress expressly envisioned the Kingpin Act as protecting the national security of the United States. Specifically, the stated purpose of the Kingpin Act is to identify and sanction "significant foreign narcotics traffickers, their organizations, and the foreign persons who provide support to those significant foreign narcotics

4

traffickers and their organizations, *whose activities threaten the national security*, foreign policy, and economy of the United States." 21 U.S.C. § 1902 (emphasis added).

Because the Kingpin Act is, by its own terms, a national security control, Guidelines Section 2M5.1 would be the appropriate guideline to apply following a conviction in this case. Section 2M5.1 is titled "Evasion of Export Controls; Financial Transactions with Countries Supporting International Terrorism." U.S.S.G. § 2M5.1. Under this section, a base offense level of 26 applies if "national security controls *or* controls relating to the proliferation of nuclear, biological, or chemical weapons or materials were evaded." U.S.S.G. § 2M5.1(a)(1)(A) (emphasis added). Particularly here, where each of the five counts of the Superseding Indictment alleges that the defendant engaged in transactions or dealings "to evade or avoid, or that had the effect of evading and avoiding" the Kingpin Act's sanctions, Section 2M5.1's reference to "evasion" of national security controls is apt. Several other courts have looked to the stated purpose of a statute or regulation when determining whether it qualifies as a national security control under 2M5.1. *See, e.g.*, *United States v. Elashyi*, 554 F.3d 480, 508 (5th Cir. 2008) (finding that export regulation with Libya constituted national security control where relevant Executive Order stated that Libya posed an "unusual and extraordinary threat to the national security and foreign policy of the United States" (internal quotation marks omitted)); *United States v. Min*, No. 99 CR. 875 (KTD), 2000 WL 1576890, at *2 (S.D.N.Y. Oct. 23, 2000) ("While Defendant correctly points out that 'national security' is not defined in the Sentencing Guidelines, his assertion that the goods in question do not threaten 'national security' is misplaced. The more critical analysis is whether the embargo or prohibition is based on national security concerns. The embargo on the shipment of goods to North Korea is unquestionably

based on national security concerns." (citing *United States v. McKeeve*, 131 F.3d 1 (1st Cir. 1997)).

In the alternative to Section 2M5.1, Section 2M5.3 applies to "Providing Material Support or Resources to Designated Foreign Terrorist Organizations or Specially Designated Global Terrorists, or For a Terrorist Purpose," and calls for a base offense level of 26. U.S.S.G. § 2M5.3. The acts of providing material support to an SDGT and a significant foreign narcotics trafficker are analogous. As detailed above, IEEPA's sanctions regime and that set forth in the Kingpin Act are similarly constructed, with the Kingpin Act explicitly based on IEEPA, and with similar maximum penalties prescribed by Congress. Thus, a sentencing court should view Section 2M5.3 as an appropriate analogue when sentencing a defendant convicted of a criminal violation of the Kingpin Act for providing material support to a significant foreign narcotics trafficker as the court would, pursuant to the Sentencing Guidelines' statutory index, in sentencing a defendant convicted for providing material support to an SDGT under IEEPA.

In the defendant's case, either Section 2M5.1 or 2M5.3 should apply. The Superseding Indictment alleges in each Count that the defendant "willfully (1) engaged in transactions or dealings in property or interests in property of a foreign person," designated for materially assisting, supporting, or being controlled or directed by, a significant foreign narcotics trafficker known as the Cartel de Jalisco Nueva Generacion, and/or "(2) engaged in transactions or dealings to evade or avoid, or that had the effect of evading or avoiding, the prohibition on transactions or dealings in property or interests in property of said foreign person." Dkt. No. 65. The Superseding Indictment further alleges that the defendant "is an officer, director, and/or agent of" each designated foreign person. *Id.* Thus, under clause (1), the defendant allegedly provided material support or resources, directly or indirectly, to a significant foreign narcotics

6

trafficker by willfully engaging in transactions with a designated business. Such material support to a designated narcotics trafficker is analogous to providing material support to an SDGT, warranting the application of Section 2M5.3. Under clause (2), the defendant allegedly evaded sanctions, which are national security controls, by willfully engaging in transactions or dealings with a foreign person designated under the Kingpin Act, warranting the application of Section 2M5.1.

### b. Guideline Section 2S1.1 is Inapplicable in this Case as Amount of Loss is Not an Accurate Measure of the Nature and Circumstances of the Offense

Although some courts have found that Section 2S1.1 is the most analogous guideline for a criminal violation of the Kingpin Act, those cases involved at least one money laundering charge in addition to the Kingpin Act violation. *See, e.g.*, *United States v. Balagia*, No. 16-cr-176 (E.D.T.X.); *United States v. Sanchez*, Case No. 07-cr-20587-ASG-2 (S.D. Fla. Jul. 27, 2007). Here, the defendant is not charged with money laundering. None of the Counts in the Superseding Indictment reference financial transactions. And the government is not required to present any evidence of financial transactions involving proceeds of unlawful activity to establish the elements of the offense. Amount of loss is not an accurate measure of "the nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1).

Admittedly, Sections 2M5.1 and 2M5.3 permit a sentencing court to consider the amount of funds involved in the transactions at issue. Application Note 2 to Section 2M5.1 provides that "[i]n determining the sentence within the applicable guideline range, the court *may* consider . . . the volume of commerce involved . . . ." U.S.S.G. § 2M5.1 cmt. n.2 (emphasis added). Similarly, the Departure Provisions of Section 2M5.3 provide that "[i]n determining the sentence within the applicable guideline range, the court *may* consider . . . the volume of the funds or other material support or resources involved . . . ." U.S.S.G. § 2M5.1 cmt. n.2(A) (emphasis

7

added).  However, nothing in Sections 2M5.1 and 2M5.3 *requires* the government to prove an amount of loss or the volume of commerce affected in order for those sections to apply.  And the permissive nature of the commentary to Sections 2M5.1 and 2M5.3—explaining that the "volume" of funds or commerce *may* be relevant—stands in stark contrast to the loss table of Section 2B1.1, which *requires* a sentencing court to apply an increasing, purely linear relationship between the amount of money involved and the base offense level.[2]  Unlike the "amount of loss" in Section 2B1.1, the application notes to Sections 2M5.1 and 2M5.3 do not change the base offense level.

      Thus, because Section 2B1.1 of the Sentencing Guidelines will not apply at sentencing in this case, documents that the defendant seeks concerning "amount of loss" are not discoverable under Rule 16.  They are neither relevant nor material to the defense, nor will they be used in the government's affirmative case.[3]

      **II.**    **The Defendant's Motion is Moot Because the Government Has Not Withheld Evidence of Amount of Loss**

      As noted above, Rule 16 requires production only of items "within the government's possession, custody, or control."  Fed. R. Crim. P. 16(a)(1)(E)(i).  The government has already

---

[2] It is also notable in making the comparison that the Sentencing Commission, in interpreting the various criminal statutes at issue, envisioned a substantially higher starting point for national security crimes than fraud crimes, even before a sentencing court considers the amounts of money at issue.  *Compare* U.S.S.G. §§ 2M5.1, 2M5.3 (base offense level of 26) *with* U.S.S.G. § 2B1.1 (base offense level of 7).

[3] The government is aware of another, recent Kingpin Act case in which the record indicates that either Section 2M5.1 or 2M5.3 is likely to apply at sentencing.  *See United States v. Coro*, No. 1:19-cr-044 (S.D.N.Y.).  Although that defendant has not yet been sentenced and the plea documents are not publicly available, the public plea colloquy makes clear that the base offense level is a level 26.  *See id.*, Dkt. No. 49 at 13 ("The letter says that you and the government have reached agreement regarding the appropriate calculation of your sentence under a part of our law known as the sentencing guidelines, and that the appropriate guidelines sentencing range is 70 to 87 months' imprisonment.  Do you understand that?").  A sentencing range of 70 to 87 months corresponds to a level 26, which, as set forth above, is the base offense level for Guidelines Sections 2M5.1 and 2M5.3.

disclosed to defense counsel all evidence in the government's possession related to financial transactions between the defendant and the designated businesses named in the Superseding Indictment, including records in the government's possession from the defendant's Mexico-based accountant. The government has not withheld any amount of loss information from the defendant, and the defendant has not presented any reason to believe the government possesses the additional information she seeks to compel. Accordingly, the defendant's motion should be denied as moot.[4]

### III. The Defendant's Motion Should Be Denied As Untimely

In the Scheduling Order that currently governs this case, the Court ordered that all "pretrial motions not related to CIPA materials or materials not in the government's possession prior to the May 19 hearing in this matter must be filed" by no later than July 13, 2020. *See* Dkt. No. 41 (May 26, 2020 Minute Order). The discovery request letter from the defendant that underlies her Motion was sent on May 8, 2020. *See* Dkt. No. 105-1. The government's response thereto was sent on June 5, 2020. *See* Dkt. No. 105-2. On July 13, 2020, the defendant filed thirteen different pretrial motions. *See* Dkt. Nos. 51-63. Following the return of the Superseding Indictment on July 16, 2020, *see* Dkt. No. 65, the defendant filed twelve different pretrial motions on July 31, 2020, largely updated versions of those previously filed. *See* Dkt. Nos. 66–77.

All of the information and facts necessary for the defendant's Motion were in her possession prior to the pretrial motions deadline. The Motion does reference an August 24, 2020

---

[4] As the owner and/or manager of the entities named in the Superseding Indictment, the government notes that the defendant is likely in the best position to possess full and complete financial data related to those entities, and the government has requested reciprocal discovery from the defendant on this front pursuant to Fed. R. Crim. P. 16(b)(1)(A).

*Brady* disclosure made by the government, as well as its September 25, 2020 disclosure to the defendant of the identity of the witness who had provided the *Brady* information.  *See* Mot. at 8–9.  But that *Brady* disclosure has no relevance to the arguments in the defendant's Motion, and the defendant should not be permitted to shoehorn the government's compliance with its *Brady* obligations in order to make belated motions.  The Motion also cites the Court's statements at the status hearing held on September 11, 2020, regarding the guidelines that other courts have applied when imposing sentences for criminal violations of the Kingpin Act within the last five years.  *See* Mot. at 7–8, 10.  However, the defendant was aware well before the pretrial motions deadline that courts have applied different guidelines to criminal violations of the Kingpin Act.  In fact, the defendant cited a case applying Section 2S1.1 in her Opposition to the Government's Motion for Pretrial Detention on March 2, 2020.  *See* Dkt. No. 14 at 4–5 (citing *Sanchez*, Case No. 07-cr-20587-ASG-2 (S.D. Fla. Jul. 27, 2007)); Dkt. No. 14-4 at 3–4 (attaching *Sanchez* plea agreement in which parties agreed Section 2S1.1 applied).

As the above chronology shows, the defendant had ample time to file her Motion to Compel on the schedule previously set by the Court.  The Court should therefore use its discretion to deny the defendant's Motion as untimely filed.

## CONCLUSION

For the foregoing reasons, the defendant's motion to compel should be denied.

Respectfully submitted this 21st day of October, 2020.

                                      Arthur Wyatt, Chief
                                      Narcotic and Dangerous Drug Section
                                      Criminal Division
                                      U.S. Department of Justice

By:    /s/
Kaitlin Sahni, Trial Attorney
Kate Naseef, Trial Attorney
Brett Reynolds, Trial Attorney
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice
Washington, D.C. 20530
Telephone: (202) 514-0917

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was sent via the Electronic Case Filing (ECF) system with the United States District Court for the District of Columbia to counsel of record for the defendant, this 21st day of October, 2020.

By:   /s/
       Kaitlin Sahni
       Trial Attorney
       Narcotic and Dangerous Drug Section
       Criminal Division
       U.S. Department of Justice