UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JESSICA JOHANNA OSEGUERA GONZALEZ,<br><br>Defendant. | Criminal Action No. 20-40 (BAH)<br><br>Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION

Having already resolved six of defendant Jessica Johanna Oseguera Gonzalez's sixteen pretrial motions, *see United States v. Oseguera Gonzalez*, Crim. Action No. 20-40 (BAH), 2020 WL 6158246 (D.D.C. Oct. 21, 2020), another six pretrial motions challenging aspects of the Superseding Indictment and the propriety of venue in the District of Columbia are addressed in this Memorandum Opinion. *See* Def.'s Mot. to Dismiss the Superseding Indictment for Lack of Venue and Incorporated Mem. of Points and Auths. ("Def.'s Venue Mot."), ECF No. 66; Def.'s Mot. to Dismiss the Superseding Indictment Based on Violations of Defendant's Due Process Rights and Incorporated Mem. of Points and Auths. ("Def.'s Due Process Mot."), ECF No. 67; Def.'s Mot. to Dismiss Counts One through Five of the Superseding Indictment as Duplicitous ("Def.'s Duplicity Mot."), ECF No. 68; Def.'s Mot to Dismiss the Superseding Indictment for Vagueness and Incorporated Mem. of Points and Auths. ("Def.'s Vagueness Mot."), ECF No. 74; Def.'s Mot. to Strike Surplusage from the Superseding Indictment and Incorporated Mem. of Points and Auths. ("Def.'s Surplusage Mot."), ECF No. 75; Def.'s Mot. to Dismiss the Superseding Indictment for Lack of Specificity and Incorporated Mem. of Points and Auths. ("Def.'s Specificity Mot."), ECF. No. 76. After a brief description of the charges against defendant, each of the six motions is addressed in turn.

1

I.       **BACKGROUND**

As described in this Court's previous memorandum opinion, *see Oseguera Gonzalez*, 2020 WL 6158246, at *1–2, defendant is charged in a Superseding Indictment with violations of the Foreign Narcotics Kingpin Designation Act ("Kingpin Act"), Pub. L. No. 106-120, 113 Stat. 1606 (1999), codified at 21 U.S.C. §§ 1901–08. The Kingpin Act allows "the Secretary of the Treasury—and by delegation the Office of Foreign Assets Control [("OFAC")] . . .—to deem foreign persons who 'materially assist[] in . . . international narcotics trafficking activities' as 'specially designated narcotics traffickers.'" *Fares v. Smith*, 901 F.3d 315, 318 (D.C. Cir. 2018) (quoting first 21 U.S.C. § 1904(b)(2)–(4) and then 31 C.F.R. § 598.314; citing 31 C.F.R. § 598.803).[1] The Kingpin Act, *inter alia*, makes it a crime for United States persons to engage in "[a]ny transaction . . . in property or interests in property" of a designated entity or to engage in "[a]ny transaction or dealing . . . that evades or avoids, or has the effect of evading or avoiding, and any endeavor, attempt, or conspiracy to violate" the prohibitions of the statute. 21 U.S.C. § 1904(c)(1)–(2). The Kingpin Act provides criminal penalties for an individual who "willfully violates the provisions of [the Statute]" and for "[a]ny officer, director, or agent of any entity who knowingly participates in a violation [of the Statute]." *Id.* § 1906(a)(1)–(2).

On February 13, 2020, a grand jury returned a sealed indictment against the defendant. In it the government alleges that "[b]eginning on or about September 17, 2015," the defendant began engaging in transactions with five separate companies, each of which had been designated under the Kingpin Act. *See* Indictment at 1–4, ECF No. 1.

Defendant entered the country from Mexico on February 22, 2020, when she was allegedly detained by United States Customs and Border Patrol ("CBP") in a secondary

---

[1]     For purposes of the Kingpin Act, "foreign person" is defined to include "any entity not organized under the laws of the United States." 21 U.S.C. § 1907(2).

inspection. *See* Def.'s Venue Mot. at 2; Def.'s Fifth Mot. to Compel Production of Evid. and Witnesses and Incorporated Mem. of Points and Auths ("Def.'s Fifth Mot. to Compel") at 8, ECF No. 110. Defendant was in a CBP database with an instruction to "detain the defendant and contact" the Drug Enforcement Administration ("DEA"), but DEA was not notified of defendant's entry until after she had been released and admitted into the United States. Gov't's Opp'n to Def.'s Mot. to Dismiss the Superseding Indictment for Lack of Venue ("Gov't's Venue Opp'n") at 6 n.3, ECF No. 88. She was arrested soon thereafter when, on February 26, 2020, she came to this Court to visit her brother, who is a defendant in a criminal case also pending in this Court. S*ee United States v. Oseguera-Gonzalez*, Crim. Action. No. 16-229 (BAH) (D.D.C. Dec. 14, 2016).

On July 16, 2020, a grand jury returned the Superseding Indictment charging that defendant (1) engaged in transactions with five separate companies, each of which had been designated under the Kingpin Act, (2) "engaged in transactions or dealings to evade and avoid" the Act's prohibitions on dealing with designated entities; (3) aided, abetted, and caused others to engage in dealings to evade the Act's prohibitions; and (4) knowingly participated in violation of the Act as an officer, director, and/or agent of each designated entity. *See* Superseding Indictment at 1–5, ECF No. 65. The first count of the Superseding Indictment reads in full:

> Beginning on or about September 17, 2015, and continuing to the present day, in the District of Columbia, Mexico, and elsewhere, the defendant, JESSICA JOHANNA OSEGUERA GONZALEZ, willfully (1) engaged in transactions or dealings in property or interests in property of a foreign person, J&P Advertising, S.A. de C.V. (also known as J and P Advertising, S.A. de C.V.), designated as materially assisting in, or providing support for or to, or providing goods or services in support of, the international narcotics trafficking activities of the significant foreign narcotics trafficker known as the Cartel de Jalisco Nueva Generacion, and/or being controlled or directed by, or acting for or on behalf of, Cartel de Jalisco Nueva Generacion, under Title 21, United States Code, Sections 1904(b)(2), 1904(b)(3), and did not first obtain the required license from the

>Office of Foreign Asset Control ("OFAC"); and (2) engaged in transactions or dealings to evade and avoid, and that had the effect of evading and avoiding, the prohibition on transactions or dealings in property or interests in property of said foreign person; and aided, abetted, and caused others to engage and attempt to engage in transactions and dealings to evade and avoid the prohibition on transactions or dealings in property of said foreign person. The Defendant's transactions or dealings violate Title 21, United States Code, Sections 1904(c)(l), 1904(c)(2) and 1906(a)(1), and Title 18, United States Code, Section 2. The Defendant is an officer, director, and/or agent of J&P Advertising, S.A. de C.V. (also known as J and P Advertising, S.A. de C.V.), who knowingly participated in the violation alleged in this Count, in violation of Title 21, United States Code, Section 1906(a)(2).

Superseding Indictment at 1–2. Each of the other four counts makes the same allegations with regard to one of the other designated entities. *See* Superseding Indictment at 1–5. These entities are (1) J&P Advertising S.A. de C.V.; (2) JJGON S.P.R. de R.L. de C.V.; (3) Las Flores Cabanas (aka Cabanas Las Flores); (4) Mizu Sushi Lounge and Operadora Los Famosos, S.A. de C.V. (aka Kenzo Sushi and Operadora Los Famosos, S.A.P.I. de C.V.); and (5) Onze Black (aka Tequila Onze Black).

## II.    ANALYSIS

Defendant seeks dismissal or transfer of the Superseding Indictment on various grounds, as well as removal as surplusage of the same sentence repeated in each count. None of these motions has any merit and each is therefore denied.

### A.    Defendant's Motion to Dismiss for Lack of Venue

Defendant moves to dismiss the superseding indictment for lack of venue, arguing (1) that venue is not proper in the District of Columbia under 18 U.S.C. § 3237(a) because none of the offense conduct took place in this district and (2) that venue is not proper under 18 U.S.C. § 3238 because defendant was "first brought" to the Southern District of California when she was taken to secondary inspection by CBP. Def.'s Venue Mot. at 2 & n.2. In the alternative,

4

defendant requests that the case be transferred to the Southern District of California under Federal Rule of Criminal Procedure 21(b).  Def.'s Venue Mot. at 1 n.1.

The first relevant venue statute, 18 U.S.C. § 3237 ("Offenses begun in one district and completed in another"), provides, in relevant part:

> Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

18 U.S.C. § 3237(a).  The second statute, 18 U.S.C. § 3238 ("Offenses not committed in any district"), provides, in relevant part:

> The trial of all offenses begun or committed . . . out of the jurisdiction of any particular State or district, shall be in the district in which the offender . . . is arrested or is first brought; but if such offender or offenders are not so arrested or brought into any district, an indictment or information may be filed in the district of the last known residence of the offender . . . , or if no such residence is known the indictment or information may be filed in the District of Columbia.

18 U.S.C. § 3238.  These venue provisions are not mutually exclusive: venue might be proper under § 3237(a) or § 3238, or both.  *See United States v. Miller*, 808 F.3d 607, 620 & n.9 (2d Cir. 2015) (venue not improper under § 3238 simply because it might exist elsewhere under § 3237(a)); *see also United States v. Hassanshahi*, 185 F. Supp. 3d 55, 59 (D.D.C. 2016) (citing *Miller*).

The government contends that venue is appropriate under § 3237(a) because the crimes charged include omissions of actions that should have occurred in the District of Columbia.  Gov't's Venue Opp'n at 2.  The Kingpin Act prohibits certain transactions and dealings involving specially designated narcotics traffickers "except to the extent provided in regulations, orders, instructions, licenses, or directives issued pursuant to [the Act] . . . ."  21 U.S.C. § 1904(c); *see also* 31 C.F.R. § 598.314 (defining "specially designated narcotics trafficker").

5

Each of the five counts of the superseding indictment charges defendant with "engag[ing] in transactions or dealings" with designated entities without "first obtain[ing] the required license from the Office of Foreign Asset Control ('OFAC')." *See* Superseding Indictment at 1–5.

In the context of an analogous statute, the International Economic Emergency Powers Act ("IEEPA"), 50 U.S.C. §§ 1701–06, venue has repeatedly been found proper in this District when a defendant was required to apply for a license from an agency within the district before engaging in otherwise prohibited behavior but failed to do so. *See, e.g., Hassanshahi*, 185 F. Supp. 3d at 57; *United States v. Montgomery*, 441 F. Supp. 2d 58, 60–61 (D.D.C. 2006); *United States v. Quinn*, 401 F. Supp. 2d 80, 87 (D.D.C. 2005). This holds even if the agency were highly unlikely to have granted the license. *See Montgomery*, 441 F. Supp. 2d at 60. While failing to obtain a license from OFAC is only a part of the criminal offenses with which defendant is charged, "it is a critical one" for purposes of establishing venue under § 3237(a). *See Hassanshahi*, 185 F. Supp. 3d at 57. Venue is therefore proper under § 3237(a).[2]

Venue is also proper under § 3238. Defendant argues that she was "first brought" to the Southern District of California because she was subject to secondary inspection by CBP when she crossed the border and was "not free to leave" while she was undergoing secondary inspection. Def.'s Venue Mot. at 2 (citing *United States v. Han*, 199 F. Supp. 3d 38, 48 (D.D.C. 2016)). The only case she cites as support for this argument is grossly inapposite, however. In

---

[2] Defendant barely confronts the government's § 3237(a) venue argument. In her motion, she states simply that "the offenses alleged in the Superseding Indictment were obviously not committed in the United States," Def.'s Venue Mot. at 1, without addressing the possibility that failing to apply for a license from OFAC was an omission that would be relevant to the criminal offense. In reply, defendant references without substantive argument *another* one of her briefs, in which she argues that "the Kingpin [A]ct is wholly separate from IEEPA, and should not be analyzed under IEEPA's framework or case law." Def.'s Omnibus Reply in Supp. of Her Other Pretrial Mots. and Incorporated Mem. of Points and Auths. ("Def.'s Omnibus Reply") at 3, ECF No. 98 (citing Def.'s Opp'n to Gov't's Omnibus Set of Pretrial Mots. ("Def.'s Opp'n") at 12–15, ECF No. 96). This argument, however, does not address the relevant omissions that form the basis for the government's § 3237(a) venue argument, nor does defendant's broader rejection of the IEEPA framework explain why the venue analysis should not operate similarly in the two statutory contexts.

*Han*, the court found that the defendant was under the functional equivalent of custody when the government (1) confined him to a ship for a month, (2) took his passport, and (3) refused to allow him to return to his home country. 199 F. Supp. 3d at 50. Defendant alleges nothing of the sort here. Specifically, she describes nothing more than a brief detention before being released into the United States and, further, cites no law for the proposition that a secondary inspection at the border can constitute an arrest, or the functional equivalent, for purposes of 18 U.S.C. § 3238.

In any event, the details of defendant's interaction with CBP are irrelevant. Even if defendant were first bought to or arrested in the Southern District of California, venue would be proper in the District of Columbia under the second prong of § 3238, which allows the government to file an indictment in the District of Columbia if the defendant has "last known" United States residence, which defendant does not claim to have. If a defendant is indicted in the District of Columbia before she is arrested or "first brought" into the United States, venue is proper in the District of Columbia. *United States v. Gurr*, 471 F.3d 144, 155 (D.C. Cir. 2006); *see also* 2 Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE: CRIMINAL § 304 (4th ed. 2020); *United States v. Hong Vo*, 978 F. Supp. 2d 49, 59 (D.D.C. 2013). The original indictment against defendant was returned on February 13, 2020, but she last entered the United States—and underwent secondary inspection by CBP—after that date, on February 22, 2020. *See* Indictment (dated February 13, 2020); Def.'s Fifth Mot. to Compel (providing February 22, 2020, as the date defendant last entered the United States). Thus, the government brought the indictment in the District of Columbia in accordance with the terms of 18 U.S.C. § 3238, and defendant may properly be tried in this district.[3]

---

[3] Since venue is proper in this district regardless of whether defendant was "first brought" to or arrested in the Southern District of California, defendant's manufactured venue argument, as violative of the first prong of

Defendant requests in the alternative to transfer venue to the Southern District of California under Rule 21(b) of the Federal Rules of Criminal Procedure. Def.'s Venue Mot. at 1 n.1. In *Platt v. Minnesota Mining & Mfg., Co.*, 376 U.S. 240 (1964), the Supreme Court articulated a set of factors to guide district courts in exercising discretion under Rule 21(b). The ten *Platt* factors are: (1) location of the defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer. *Id*. at 243–44. Notwithstanding these factors, "[t]here is a general presumption that a criminal prosecution should be retained in the original district." *United States v. Bowdoin*, 770 F. Supp. 2d 133, 138 (D.D.C. 2011) (citing *Quinn*, 401 F. Supp. 2d at 85 and *United States v. Baltimore & Ohio R.R.*, 538 F. Supp. 200, 205 (D.D.C. 1982)). "To warrant a transfer from the district where an indictment was properly returned, it should appear that a trial there would be so unduly burdensome that fairness requires the transfer to another district of proper venue where a trial would be less burdensome." *Id.* (quoting *Baltimore & Ohio R.R.*, 538 F. Supp. at 205).

Even if venue were also proper in the Southern District of California, defendant's request to transfer is meritless. Defendant requests transfer based only on the assertion that unspecified "witnesses and evidence" are closer to that alternative district. Def.'s Venue Mot. at 1 n.1. Given the presumption in favor of the original district, an argument based solely on the proximity of witnesses and documents, without any convincing description of how defendant might be prejudiced, falls short of meeting defendant's burden of establishing either that a

---

§ 3238, Def.'s Venue Mot. at 2, need not be further addressed. For the same reason, defendant is not entitled to an evidentiary hearing on her detention by CBP. *See* Def.'s Omnibus Reply at 3.

substantial balance of inconveniences is in her favor, or that the interests of justice require a transfer. *See Bowdoin*, 770 F. Supp. 2d at 139.

Venue is proper under 18 U.S.C. §§ 3237(a) and 3238. Consequently, defendant's motion to dismiss for lack of venue is denied.

### B. Defendant's Motion to Dismiss for Violating Defendant's Due Process Rights

Defendant argues that the indictment must be dismissed because the indictment fails to allege that she "received any sort of notice that she would be in violation of the laws of the United States" if she conducted business with the designated entities. Def.'s Due Process Mot. at 3. Defendant's arguments on this point are not entirely clear. She relies on civil cases involving notice before the government deprives of an individual of a property interest to argue by analogy that "fair notice" is required before the government subjects her to criminal liability for dealing with the OFAC-designated entities. *See id.* at 2–3 (citing *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976) and *Zevallos v. Obama*, 793 F.3d 106, 116 (D.C. Cir. 2015)).

This challenge to the indictment appears to be a premature attack on the sufficiency of the government's proof. Indeed, defendant is charged with "willfully" violating—and "knowingly" participating in violations of—the Kingpin Act, Superseding Indictment at 1–6, requiring, as the government acknowledges, proof that defendant knew her conduct in dealing with the designated entities was in violation of the law, *see* Gov't's Omnibus Set of Pretrial Mots. at 19–20, ECF No. 63. The parties disagree over precisely what defendant must have known, but the "willfully" *mens rea* requirement sets the bar of what the government must prove higher than what most criminal violations require. *See United States v. Burden*, 934 F.3d 675, 690 (D.C. Cir. 2019) ("Most criminal prohibitions require only proof that the crime was committed 'knowingly,' meaning that the defendant knew of the facts that made his act illegal, even if he did not know the act was illegal.").

9

Defendant presents no authority for the proposition that a criminal indictment can violate due process simply because the government fails to provide defendant actual notice of all the myriad facts relevant to the criminal conduct that the government will seek to prove at trial. That is because the law is to the contrary. *See United States v. Critzer*, 951 F.2d 306, 307–08 (11th Cir. 1992) (reversing dismissal of indictment based on district court's evaluation of government's proof, explaining "[t]here is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of sufficiency of the evidence. . . . The sufficiency of a criminal indictment is determined from its face. The indictment is sufficient if it charges in the language of the statute."); *see also United States v. Clayton*, Crim. No. 08-06J, 2009 WL 1033664, at *17 (W.D. Pa. Apr. 16, 2009) (denying defendant's motion to dismiss indictment for due process violation, since defendant, at trial, "will have a full and complete opportunity to challenge any offered proof of this *mens rea* element, and should such proof also show that notice was somehow inadequate, then the Court will again address this due process issue, resolution of which seems incapable of determination prior to the trial, as it is dependent upon the facts of the general matter."); *United States v. Schraud*, No. 4:07 CR 411 CDP DDN, 2007 WL 4289660, at *3 (E.D. Mo. Dec. 4, 2007) (denying due process challenge to indictment on ground of "insubstantial proof of his intent" since "[t]his argument attacks the legal sufficiency of the proof of a required element of the government's case . . . similar to seeking summary judgment in a civil case" when "[c]riminal prosecutions are not subject to such pretrial summary judgment determinations.").

Defendant's motion to dismiss for violation of due process is therefore denied.[4]

---

[4] The parties spill much ink debating whether the OFAC designations themselves may be properly challenged in these criminal proceedings, *see* Gov't's Opp'n to Def.'s Mot. to Dismiss for Violations of Due Process at 2–8, ECF No. 85; Def.'s Omnibus Reply at 4–5, but that distinct issue is presented separately in the government's Omnibus Set of Pretrial Motions and does not appear to relevant to defendant's due process argument.

### C. Defendant's Motion to Dismiss for Duplicity

Rule 7(c)(1) of the Federal Rules of Criminal Procedure provides that a single count of an indictment "may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means." FED. R. CRIM. P. 7(c)(1). Accordingly, "the prosecution may in a single count of an indictment or information charge several or all of such acts in the conjunctive and under such charge make proof of any one or more of the acts, proof of one alone, however, being sufficient to support a conviction." *United States v. Brown*, 504 F. 3d 99, 104 (D.C. Cir. 2007) (quoting *District of Columbia v. Hunt*, 163 F.2d 833, 837–38 (D.C. Cir. 1947)); *see also United States v. Klat*, 156 F.3d 1258, 1266 (D.C. Cir. 1998) ("[S]everal acts may be charged in a single count if the acts 'represent a single, continuing scheme that occurred within a short period of time and that involved the same defendant.'" (quoting *United States v. Alsobrook*, 620 F.2d 139, 142 (6th Cir.1980)). A count is duplicitous only if it joins "distinct and separate offenses." *Klat*, 156 F.3d at 1266 (citing *United States v. Mangieri*, 694 F.2d 1270, 1281 (D.C.Cir.1982)).

Defendant contends that each count of the superseding indictment is duplicitous insofar as each count charges her with violating both (1) 21 U.S.C. § 1904(c)(1), by transacting or dealing with a designated entity, and (2) 21 U.S.C. § 1904(c)(2), by transacting or dealing to evade, and by aiding and abetting others in evading, the Kingpin Act's prohibitions. Mem. of Points and Auths. in Supp. of Def.'s Mot. to Dismiss Counts One through Five of the Superseding Indictment as Duplicitous ("Def.'s Duplicity Mem.") at 6, ECF No. 68-1. These references to two separate statutory paragraphs capture different ways of committing a single offense and describe the same criminal endeavor. No duplicity has been found in the analogous context of the IEEPA when a defendant is charged with engaging in a prohibited transaction and evading prohibitions on certain transactions. In *United States v. Quinn*, for example, the court

11

held that an indictment alleging a violation of IEEPA was not duplicitous where each count combined allegations of evasion, attempt, violation of the law, and aiding and abetting. 401 F. Supp. 2d at 104. As the court explained, the indictment was not duplicitous because "each count simply described alternate means of committing the same offense based on the same set of events." *Id.*; *see also id.* (separately charging "attempt, evasion, and aiding and abetting as distinct counts" risks "inappropriate multiple punishments for a single criminal episode" (citation and internal quotation marks omitted)).

Defendant tries to distinguish *Quinn* by pointing out that while the Kingpin Act and IEEPA have similar prohibitions, those prohibitions are spread out in two subsections in the Kingpin Act, *see* 21 U.S.C. § 1904(c)(1)–(2), and are in a single subsection of IEEPA, *see* 50 U.S.C. § 1705(a). Def.'s Omnibus Reply at 6–7. This distinction is irrelevant. The various means of violating the Kingpin Act's prohibition on dealing with designated entities still constitute the same offense, even if Congress elected to list them in separate subsections of the statute. Defendant's motion to dismiss the Superseding Indictment as duplicitous is therefore denied.[5]

### D. Defendant's Motion to Dismiss for Vagueness

A criminal statute is unconstitutionally vague if it "fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *United States v. Bronstein*, 849 F.3d 1101, 1106 (D.C. Cir. 2017) (alteration in original) (quoting *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015)). This is a stringent standard. Thus, no void for vagueness challenge is successful merely because a statute "'requires a person to

---

[5] Even if defendant's duplicity argument had merit, the proper remedy would be a corrective instruction, not dismissal with prejudice. *See, e.g. United States v. Miller*, 891 F.3d 1220, 1230 (10th Cir. 2018); *see also* 1A Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL § 146.

conform his conduct to an imprecise but comprehensible normative standard,' whose satisfaction may vary depending upon whom you ask." *Id.* at 1107 (quoting *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971)). Instead, unconstitutional vagueness arises only if the statute "specifies no standard of conduct at all." *Id.* (alterations and internal quotation marks removed) (quoting *Coates*, 402 U.S. at 614 and citing *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n.7 (1982)).

Defendant argues that the Kingpin Act is unconstitutionally vague for failing to define "transaction" and "dealing." Def.'s Vagueness Mot. at 3. For support, defendant relies on the Supreme Court's recent "residual clause" cases concerned with imprecise threshold terms, such as a "substantial risk" that physical force may be used in committing an offense. See *id.* at 2 (citing *United States v. Davis*, 139 S. Ct. 2319, 2323–24 (2019) (finding residual clause in 18 U.S.C. § 924(c)(3)(B) unconstitutional because it "provides no reliable way to determine which offenses qualify as crimes of violence") and *Sessions v. Dimaya*, 138 S. Ct. 1204, 1216 (2018) (finding residual clause in 18 U.S.C. §16 unconstitutional because it required courts "to picture the kind of conduct that the crime involves in the ordinary case, and to judge whether that abstraction presents some not-well-specified-yet-sufficiently-large degree of risk" (internal quotation marks and citation omitted))). The Kingpin Act contains no analogous language requiring an assessment of an abstract risk, so these cases are inapposite. To the contrary, the terms "transaction" and "dealing" are everyday terms with widely understood ordinary meanings that define concrete, measurable actions. A "transaction" is "an instance of buying or selling something; a business deal." *Transaction*, THE NEW OXFORD AMERICAN DICTIONARY (2d ed. 2005); *see also Transaction*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993 ed.) ("a business deal"). A "dealing" is a "a business relation or transaction." *Dealing*, THE NEW

13

OXFORD AMERICAN DICTIONARY (2d ed. 2005); *see also Dealing*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993 ed.) ("[a] method of conducting business").  The statute is not only constitutional but also reasonably clear in plainly prohibiting specific conduct of business with designated entities.[6]  Defendant's motion to dismiss for vagueness is therefore denied.

        E.        **Defendant's Motion to Strike Surplusage**

Rule 7(d) of the Federal Rules of Criminal Procedure provides that "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information."  FED. R. CRIM. P. 7(d).  The D.C. Circuit has "strictly construed" Rule 7(d) "against striking surplusage."  *United States v. Rezaq*, 134 F.3d 1121, 1134 (D.C. Cir.1998) (quoting *United States v. Jordan*, 626 F.2d 928, 930 n.1 (D.C.Cir.1980)).  A motion to strike surplusage "should be granted only if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial."  *Id.* (quoting 1 Charles Alan Wright, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL § 127, at 426 (1982)).  "[T]he striking of surplusage from an indictment, although *permissible*, is by no means mandatory," and is left to the discretion of the Court.  *United States v. Watt*, 911 F. Supp. 538, 554 (D.D.C. 1995) (emphasis in original).

The Superseding Indictment alleges that each of the five OFAC-designated organizations was "designated as materially assisting in, or providing support for or to, or providing goods or services in support of, the international narcotics trafficking activities of the significant foreign narcotics trafficker known as the Cartel de Jalisco Nueva Generacion, and/or being controlled or directed by, or acting for or on behalf of, Cartel de Jalisco Nueva Generacion," *See* Superseding

---

[6]     Defendant also contends that the phrase "any of the prohibitions contained in this chapter," 21 U.S.C. § 1904(c)(2), is unconstitutionally vague.  Def.'s Vagueness Mot. at 3.  This undeveloped argument seems to be predicated on the alleged vagueness of "transaction" and "dealing," and is therefore rejected for the same reason discussed in the text.

14

Indictment at 1–5.  Defendant argues that this sentence must be stricken as "inflammatory and prejudicial" surplusage.  Def.'s Surplusage Mot. at 3–4.  According to defendant, this language will lead the jury to believe that defendant is "charged with drug trafficking." *Id.* at 5.

This language is neither inflammatory nor prejudicial.  Rather, the sentence simply tracks the language of the Kingpin Act in describing the entities for which assets may be blocked, under 21 U.S.C. § 1904(b)(2), and with which persons may be prohibited from dealing, under § 1904(c).[7]  Such incorporation of statutory language in an indictment is reasonable and not inflammatory.  *See Watt*, 911 F. Supp at 555 ("Courts have routinely denied challenges to the reasonable use of statutory terms in an indictment.").  OFAC used the same language when publishing its notice in the Federal Register designating the five entities pursuant to the Kingpin Act and blocking their property.  *See* Additional Designations, Foreign Narcotics Kingpin Designation Act, 80 Fed. Reg. 57433 (September 23, 2015).  This notice is likely to be evidence at trial, so the jury will likely see language linking the designated entities with narcotics trafficking regardless of whether the language appears in the Superseding Indictment.  Furthermore, this information can provide background information to help the jury understand why the alleged conduct is criminal, even if the government need not prove anything about the relationship between the designated entities and the Cartel de Jalisco Nueva Generacion beyond the fact that they have been designated by OFAC under the Kingpin Act.

This case is distinguishable from *Quinn*, an IEEPA case in which the defendant was accused of violating the trade embargo against Iran.  401 F. Supp. 2d. at 84.  The court granted

---

[7]  Defendant suggests that the superseding indictment accuses *her* of materially supporting the Cartel de Jalisco Nueva Generacion, Def.'s Omnibus Reply at 19, but the language in the indictment clearly describes the designated entities.  To the extent defendant is concerned that the jury might misapprehend the language of the Superseding Indictment, she may request an instruction at trial to clarify that she is being charged under the Kingpin Act with engaging in prohibited transactions and not with a drug trafficking offense.

defendant's motion to strike from the indictment as surplusage language regarding the "threat posed by . . . Iran's support for international terrorism" and Iran's status "as a supporter of international terrorism," after determining the language was irrelevant and inflammatory because the underlying reasons for the embargo were immaterial—various countries were subject to IEEPA embargoes for a variety of reasons, and the details behind the Iran embargo were of no consequence.  *Id.* at 98 (internal quotation marks omitted).  By contrast, here, the language defendant targets for removal is drawn directly from the statute and describes the formal designation given to each entity.  Defendant's motion to strike the targeted language as surplusage from the Superseding Indictment is therefore denied.

      **F.**      **Defendant's Motion to Dismiss for Lack of Specificity**

An indictment's primary purpose is "to inform the defendant of the nature of the accusation against him." *Russell v. United States*, 369 U.S. 749, 767 (1962).  To that end, "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974); *see also United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) ("[T]o be sufficient, an indictment need only inform the defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense.").  Sufficiency "is not a question of whether [the indictment] could have been more definite and certain," *United States v. Debrow*, 346 U.S. 374, 378 (1953), as long as the indictment contains "a plain, concise, and definite written statement of the essential facts constituting the offense charged," FED. R. CRIM. P. 7(c)(1).  Because a court "directly encroaches upon the fundamental role of the grand jury" when dismissing an indictment, "dismissal is granted only in unusual circumstances." *United States v. Ballestas*, 795

16

F.3d 138, 148 (D.C. Cir. 2015) (internal quotation marks omitted) (quoting *Whitehouse v. U.S. Dist. Court*, 53 F.3d 1349, 1360 (1st Cir. 1995)).

Defendant argues that the superseding indictment is fundamentally defective because it does not describe precisely which "transactions or dealings" form the basis for the criminal offenses alleged each of the counts. Def.'s Specificity Mot. at 7. [8] The government alleges that defendant "engaged in transactions or dealings in property or interests in property" with designated entities, names the designated entities, and further alleges that defendant was "an officer, director, and/or agent" of each of the designated entities at the time of the violations. *See* Superseding Indictment at 1–5.

Defendant argues this is not enough, asserting that an indictment must allege more facts with greater specificity. She correctly points out that indictments are sometimes required to provide heightened particularly and detail, particularly in cases involving false statements, where the relevant criminal conduct might not be clear if not specifically identified. *See, e.g.*, *United States v. Thomas*, 444 F.2d 919, 921–22 (D.C. Cir. 1971) (holding that indictment charging violation of burglary statute, which prohibited entering a dwelling with intent to commit a criminal offense, had to specify the offense the accused intended to commit, explaining that "where the definition of an offen[s]e . . . includes generic terms, it is not sufficient that the indictment shall charge the offen[s]e in the same generic terms as in the definition; but it must state the species[ ]—it must descend to particulars."); *United States v. Nance*, 533 F.2d 699, 701 (D.C. Cir. 1976) (holding that indictment alleging defendant made "false representations" to obtain something of value, yet failed to describe the representations, was fatally deficient because it was "not framed to apprise the defendant 'with reasonable certainty[ ] of the nature of

---

[8] This argument is a variation on the one that this Court rejected in denying defendant's motion for a bill of particulars. *Oseguera Gonzalez*, 2020 WL 6158246, at *2–4.

17

the accusation against him[.]'") (quoting *United States v. Simmons*, 96 U.S. 360, 362 (1877)); *see also United States v. Hillie*, 227 F. Supp. 3d 57, 73–74 (D.D.C. 2017) (dismissing seven counts of an indictment for production and possession of child pornography because indictment did not contain any allegations of fact that would enable the court to determine the relevant criminal conduct).

This is not a prosecution based on false statements, however, nor does this case depend on factual details that necessitate great specificity in the indictment.  The Supreme Court has acknowledged that "while an indictment parroting the language of a federal criminal statute is *often sufficient*, there are crimes that must be charged with greater specificity," namely those that depend "crucially upon . . . a specific identification of fact." *United States v. Resendiz-Ponce*, 549 U.S. 102, 109 (2007) (emphasis added) (quoting *Hamling*, 418 U.S. at 117 and *Russell*, 369 U.S. at 764).  Crimes involving false statements or hard-to-define conduct might fall into this latter category, but the crimes defined by the Kingpin Act do not.  This is one of the cases where "parroting the language of the federal criminal statute" with some factual elaboration—here the timeframe for the criminal conduct and the entities with which defendant is alleged to have dealt—is enough.  Defendant need not guess whether one transaction or another is contemplated by the Superseding Indictment because *all* transactions and dealings with a designated entity fall within the scope of the statute when carried out with the requisite state of mind.  Unlike an offense based on making false statements or production of child pornography, conviction for dealing with designated businesses under the Kingpin Act does not hinge on the precise factual details of the underlying conduct.  Moreover, the Superseding Indictment alleges that defendant was "an officer, director, and/or agent" of the designated entities during the relevant time period.  *See* Superseding Indictment at 1–5.  This is a factual allegation that points to a significant

managerial relationship with the designated entities and would almost certainly involve "transactions" or "dealings."[9]

The superseding indictment sets forth sufficient information to put defendant on notice of the offense with which she is charged so that she can prepare an adequate defense and avoid double jeopardy. *See Resendiz-Ponce*, 549 U.S. at 109. Defendant's motion to dismiss for lack of specificity is therefore denied.

### III.     CONCLUSION

For the foregoing reasons, the following six motions filed by defendant are denied: (1) Motion to Dismiss the Superseding Indictment for Lack of Venue, ECF No. 66; (2) Motion to Dismiss the Superseding Indictment Based on Violations of Defendant's Due Process Rights, ECF No. 67; (3) Motion to Dismiss Counts One through Five of the Superseding Indictment as Duplicitous, ECF No. 68; (4) Motion to Dismiss the Superseding Indictment for Vagueness, ECF No. 74; (5) Motion to Strike Surplusage from the Superseding Indictment, ECF No. 75; and (6) Motion to Dismiss the Superseding Indictment for Lack of Specificity, ECF No. 76. An appropriate Order accompanies this Memorandum Opinion.

Date: October 29, 2020

_____
BERYL A. HOWELL
Chief Judge

---

[9]     Additionally, although not included in the superseding indictment, the government has in various pleadings provided additional facts about defendant's transactions and dealings that it intends to prove at trial, including "her ownership interests, management roles, ownership of trademarks, and receipt of income from the six designated entities." Gov't's Opp'n to Def.'s Mot. to Dismiss the Superseding Indictment for Lack of Specificity at 7–8, ECF No. 87; *see also Oseguera Gonzalez*, 2020 WL 6158246, at *3–4 (collecting evidence and concluding that "[t]he charges laid out in the Superseding Indictment have been amply supplemented with extensive discovery and provide defendant with sufficient notice of the charges against her").