**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.  )<br>)<br>JESSICA JOHANNA OSEGUERA )<br>GONZALEZ, )<br>   also known as "Jessica Johanna )<br>   Castillo" and "La Negra," )<br>)<br>Defendant. ) | CRIMINAL NO.: 1:20-CR-040<br><br><u>UNDER SEAL</u> |

## GOVERNMENT'S MOTION TO INTRODUCE OTHER CRIMES EVIDENCE AT TRIAL

The government respectfully moves to introduce "other crimes" evidence that the defendant was responsible for keeping ledgers of the proceeds and expenses of certain narcotics trafficking activities for a drug trafficking organization ("DTO") based in Jalisco, Mexico, known as the Cartel de Jalisco Nueva Generacion ("CJNG"), of which her father, Nemesio Oseguera Cervantes ("Mencho") is the leader.

In particular,  This evidence is admissible as intrinsic evidence that is inextricably intertwined with the proof of the charged crimes, or in the alternative, pursuant to Federal Rule of Evidence 404(b) in order to show a common scheme or plan, as well as the defendant's intent, knowledge, and lack of mistake or accident in her continued transactions and dealings with the six OFAC-designated entities that are the subject of the Superseding Indictment. The link between the defendant's bookkeeping for the cartel and the financial crimes charged here is readily apparent: the six entities in the Superseding

Indictment were designated by OFAC precisely because of their connection to the CJNG and its leaders.

## I. The Charged Offenses

Count One of the Superseding Indictment alleges that the defendant engaged in transactions or dealings with J&P Advertising, S.A. de C.V. ("J&P Advertising"), a Mexico-based advertising company that was designated by OFAC on September 17, 2015. The government expects to show at trial that the defendant was listed on the incorporation paperwork of J&P Advertising as a 50 percent owner of the company, as well as the sole administrator ("administrador unico") of the business.[1] The government expects to show at trial that the defendant continued to operate the business after its designation by OFAC, in violation of the Kingpin Act.

Count Two of the Superseding Indictment alleges that the defendant engaged in transactions or dealings with JJGON, S.P.R. de R.L. de C.V. ("JJGON"), a Mexico-based company that purported to transact in agricultural products, also designated by OFAC on September 17, 2015. The government expects to show at trial that the defendant was listed on the incorporation paperwork of JJGON as a 20 percent owner of the company, as well as its sole administrator.[2] The government expects to show at trial that the defendant continued to operate the business after its designation by OFAC, in violation of the Kingpin Act.

Count Three of the Superseding Indictment alleges that the defendant engaged in transactions or dealings with Las Flores Cabanas, an unincorporated business entity that provided vacation rental cabins in Mexico. Las Flores Cabanas was designated by OFAC on

---

[1] In Mexican corporate law, an "administrador unico" is "essentially a board of directors of one [person]." Robert E. Stevens *et al.*, *Doing Business in Mexico: A Practical Guide* 62 (2012).
[2] The company's name, JJGON, is also a portmanteau of the defendant's name, Jessica Johanna Oseguera Gonzalez.

September 17, 2015. The government expects to show at trial that the defendant was involved in running the business, and that she applied for and owned the Mexican trademark for Las Flores Cabanas, and still owns the trademark today. Ownership of a trademark is a property interest specifically forbidden by the implementing regulations of the Kingpin Act. *See* 21 U.S.C. § 1904(c), 31 C.F.R. § 598.312. Additionally, the government expects to show at trial that the defendant changed the name of Las Flores Cabanas to Cabanas La Loma following the OFAC designation in an effort to evade the sanctions.

Count Four of the Superseding Indictment alleges that the defendant engaged in transactions or dealings with two entities, Mizu Sushi Lounge and Operadora Los Famosos, S.A. de C.V., d/b/a Kenzo Sushi. Mizu Sushi Lounge was designated by OFAC on September 17, 2015, and thereafter changed its name to Kenzo Sushi, under the corporate umbrella of Operadora Los Famosos, S.A. de C.V. Operadora Los Famosos was then designated by OFAC on September 14, 2017. The government expects to show at trial that the defendant applied for and owned the Mexican trademark for Mizu Sushi Lounge, and continues to own the trademark today. Additionally, the government expects to show that Mizu Sushi Lounge's name change to Kenzo Sushi was motivated by the OFAC designation, because no other change was made to the business, which kept its phone number, chefs, and menu. The government also expects to show financial connections between the defendant and the re-named restaurant that continued after its designation.

Count Five of the Superseding Indictment alleges that the defendant engaged in transactions or dealings with a tequila company known as Onze Black, which was designated by OFAC on September 17, 2015. As with Las Flores Cabanas and Mizu Sushi, the government

expects to show at trial that the defendant applied for and owned the Mexican trademark for Onze Black and continues to own the trademark today.

Each of the five counts of the Superseding Indictment allege that the business named in the count was "designated as materially assisting in, or providing support for or to, or providing goods or services in support of, the international narcotics trafficking activities of the significant foreign narcotics trafficker known as the Cartel de Jalisco Nueva Generacion, and/or being controlled or directed by, or acting for or on behalf of, Cartel de Jalisco Nueva Generacion."

The government expects to show that the defendant's continuing transactions and dealings with the designated businesses were willful through a variety of evidence. First, the government anticipates that corporate registration documents will show that the defendant dissolved the two legally incorporated entities, J&P Advertising and JJGON, shortly after the OFAC designation.[3] Second, the government anticipates that financial documents, corporate registration documents, and social media postings will show that the defendant changed the names of Mizu Sushi and Las Flores Cabanas following their designations, in an effort to evade the OFAC sanctions. Third, the government expects to show that OFAC "blocking notices" providing notice of the sanctions were provided to an address previously used by the defendant in 2015, that such notices were provided to various family members of the defendant in 2015, and that one was personally hand-served on the defendant in 2019, but that at no time did the defendant seek a license from OFAC or otherwise seek to unwind her involvement in the

---

[3] Among other things, an OFAC designation would have limited those entities' access to financial institutions, web hosting services, and other business-to-business services. This both provides an explanation for the decision to dissolve the businesses as well as further evidence that the defendant willfully violated the OFAC sanctions by continuing to try to transact and deal with the designated entities even after the businesses' operations had been interrupted by other companies' decisions not to deal with or service the companies.

designated businesses. Fourth, the government expects to show that the OFAC designations were covered extensively by the Mexican press. Fifth, the government anticipates that messages sent to the defendant by one or more U.S.-based web hosting services will show that she was directly made aware of the OFAC sanctions by the web hosting services when they decided to disable her accounts in order to avoid transacting business with designated entities.[4]

## II. The Proposed Evidence

The government anticipates introducing ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ that the defendant was responsible for keeping ledgers of certain proceeds and expenses of narcotics trafficking activities for her father, Mencho, the leader of the CJNG.



The government will show that the cabanas where the meeting took place are Las Flores Cabanas, the designated business named in Count Three of the Superseding Indictment.

---

[4] *See* Government's Omnibus Set of Pretrial Motions, Dkt. No. 63 (July 13, 2020), p. 1-18. This paragraph's description of anticipated documentary evidence is not intended to be exhaustive, but rather only to provide context for this motion. It should not be read to limit the proof that the government may present, nor does it account for non-documentary evidence in the form of witness testimony.



the defendant kept accounts for her father, Mencho, of the proceeds and expenses of narcotics trafficking activities.

### III. Argument

A. The Proposed Evidence Is an Intrinsic Part of, and Inextricably Intertwined With, the Charged Crimes and Constitutes Direct Evidence Related to the Defendant's Willfulness

Rule 404(b) of the Federal Rules of Evidence provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Fed. R. Evid. 404(b).

Rule 404(b) "excludes only evidence 'extrinsic' or 'extraneous' to the crimes charged, not evidence that is 'intrinsic' or 'inextricably intertwined.'" *United States v. Allen*, 960 F.2d 1055, 1058 (D.C. Cir. 1992), *cert. denied*, 506 U.S. 881 (1992); *see also United States v. Gartmon*, 146 F.3d 1015, 1020 (D.C. Cir. 1998) (holding evidence that defendant charged with fraud had threatened a co-conspirator not "other crimes evidence" but instead "inextricably intertwined" with charged offense).

This Circuit has defined intrinsic "other crimes" evidence this way:

Evidence of criminal activity other than the charged offense is not considered extrinsic if it is an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, if it was inextricably intertwined with

      the evidence regarding the charged offense, or it is necessary to complete the story of the crime of trial . . .

*United States v. Badru*, 97 F.3d 1471, 1474 (D.C. Cir. 1996), *cert. denied*, 520 U.S. 1150 (1997) (*citing United States v. Weeks*, 716 F.2d 830, 832 (11th Cir. 1983)).

    Intrinsic evidence is admissible as direct evidence of the crimes charged and not subject to analysis under Federal Rule of Evidence 404(b). Because intrinsic evidence, "by its very nature, does not involve other crimes, wrongs or bad acts…there is no concern that it might be used as improper character evidence," *United States v. Lerma-Plata*, 919 F. Supp. 2d 152, 156 (D.D.C. 2013), and therefore, Rule 404(b) does not apply.

    As a practical matter, "[w]hen evidence is 'inextricably intertwined' with the charged crime [or intrinsic], courts typically treat it as the same crime," *United States v. Bowie*, 232 F.3d 923, 928 (D.C. Cir. 2000), and admit such evidence. The D.C. Circuit has explicitly recognized "that evidence can be intrinsic to the crimes charged." *United States v. Sitzmann*, 856 F. Supp. 2d 55, 59 (D.D.C. 2012). According to the *Bowie* court, "(at least) two types of evidence may be properly considered 'intrinsic,' that is, not subject to Rule 404(b): (1) evidence 'of an act that is part of the charged offense'; and (2) evidence of 'some uncharged acts performed contemporaneously with the charged crime…[that] facilitate the commission of the charged crime.'" *Lerma-Plata*, 919 F. Supp. 2d at 156 (quoting *Bowie*, 232 F.3d at 929).

    The D.C. Circuit also acknowledged that there are even "several forms of 'other crimes' evidence . . . [that] are not considered extrinsic within the meaning of Rule 404(b)." *Badru*, 97 F.3d at 1474. For instance, evidence of uncharged crimes may be intrinsic if it "arose out of the same series of transactions as the charged offense…or it is necessary to complete the story of the crime on trial." *Weeks*, 716 F.2d at 832. Thus, "[a]s long as evidence of the uncharged criminal conduct is offered as direct evidence of a fact in issue and not as circumstantial evidence of the

character of the accused, it is admissible independent of its superficial similarity to that which would be considered evidence of 'other crimes' under Rule 404(b)." *United States v. Gray*, 292 F. Supp. 2d 71, 77-78 (D.D.C. 2003) (citing *Badru*, 97 F.3d at 1475) (citing 22 Charles A. Wright and Kenneth W. Graham, Jr., Federal Practice and Procedure § 5239 at 450 (1978)).

Here, the government's proffered evidence should be admitted as inextricably intertwined and intrinsic to the charged conduct. According to the proffered evidence, the defendant had a role in keeping the financial records of the CJNG's narcotics trafficking activities at the same time that she was running the six businesses named in the Superseding Indictment, which were themselves designated by the Department of the Treasury for providing material support to the CJNG and for being controlled by the CJNG. The defendant even used one of the designated businesses, Las Flores Cabanas, as a location for at least one meeting to receive drug ledgers and discuss their contents with other traffickers ███████████████████████.

The defendant's involvement in the financial operations of the CJNG through maintaining the ledgers of drug proceeds bears directly on her willfulness in continuing to transact and deal with the designated entities. As the government argued in its Omnibus Set of Pretrial Motions, the willfulness standard requires that a defendant know that his or her conduct was unlawful, but not that he or she knew the precise details of the law being violated. *See* Dkt. No. 63, p. 20-21. The fact that the defendant was responsible for maintaining the ledgers of the proceeds of narcotics trafficking of the CJNG makes it substantially more likely that the defendant knew that the six designated businesses were a part of the larger CJNG enterprise, that she would have been aware of legal sanctions relating to drug trafficking including OFAC designations, and that her involvement with those businesses was therefore unlawful.

B. The Proposed Evidence Is Admissible Pursuant to Rule 404(b)

In the alternative, evidence that the defendant was responsible for keeping ledgers of the proceeds of narcotics trafficking activities of the CJNG is admissible pursuant to Rule 404(b).

Rule 404(b) permits the admission of "evidence of other crimes, wrongs, or acts" to prove a material issue other than character, such as "motive, opportunity, intent, preparation, plan, knowledge, identity and absence of mistake or accident." Fed. R. Evid. 404(b). "Under the law of this circuit, 'Rule 404(b) is a rule of inclusion rather than exclusion'…and it is 'quite permissive,' excluding evidence only if it is offered for the sole purpose of proving that a person's actions conformed to his or her character." *United States v. Long*, 328 F.3d 655, 660-61 (D.C. Cir. 2003) (quoting *Bowie*, 232 F.3d at 923) (citations and quotations omitted). The Rule lists several permissible purposes of other crimes – e.g., to prove "motive, opportunity, intent, preparation, plan, knowledge, identity and absence of mistake or accident;" however, this list is "not exhaustive." *United States v. Miller*, 895 F.2d 1431, 1435 (D.C. Cir. 1990). "[T]he Government need not show that the evidence is being offered for one of the purposes specifically enumerated in the rule." *Lerma-Plata*, 919 F. Supp. 2d at 155. As the D.C. Circuit noted, "in some cases '[e]xtrinsic acts evidence may be critical…especially when th[e] issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." *United States v. Brown*, 597 F.3d 399, 404 (D.C. Cir. 2009) (quoting *Huddleston v. United States*, 485 U.S. 681, 685 (1988)). Even a collateral showing of character is insufficient to bar the evidence. As the D.C. Circuit has explained, "under Rule 404[b], '*any* purpose for which bad acts evidence is introduced is a proper purpose so long as the evidence is not offered *solely* to prove character.'" *United States v. Cassell*, 292 F.3d 788, 795 (D.C. Cir. 2002) (quoting *Miller*, 895 F.2d at 1436) (emphasis added).

This Circuit has accepted a two-pronged test for determining whether evidence of prior crimes is admissible under 404(b).[5]  First, the evidence must be "probative of a material issue other than character."  *See Miller*, 895 F.2d at 1435 (quoting *Huddleston*, 485 U.S. at 686).  Second, the evidence is subject to the balancing test of Federal Rule of Evidence 403, so that it is inadmissible only if the prejudicial effect, or to a lesser extent the effect of any other consideration under Rule 403, of admitting the evidence substantially outweighs its probative value.  *See id.*  Even so, these considerations "[g]enerally . . . do not flatly prohibit the introduction of such evidence but instead limit the purpose for which it may be introduced."  *Huddleston*, 485 U.S. at 687.

In assessing the relevance of other acts evidence under the first prong, the court "neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence.  The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence."  *Id.* at 690.  As to the probative value of such evidence, the court should consider "the similarity of the bad act with the charged offense, the time separating the two events, and the prosecution's need for the evidence."  *United States v. Lavelle*, 751 F.2d 1266, 1277 (D.C. Cir.), *cert. denied*, 474 U.S. 817 (1985) (citations and footnote omitted), *abrogated on other grounds by Huddleston*, 485 U.S. at 687 n.5.

In this case, evidence of the defendant's role in keeping ledgers of the proceeds of narcotics trafficking activities of the CJNG should be admitted as evidence that demonstrates a

---

[5] The *Miller* Court notes that "[t]his two-step analysis—certification of a 'proper' and relevant purpose under Rule 404(b), followed by the weighing of probity and prejudice under Rule 403—is firmly rooted in the law of this circuit." *Miller*, 895 F.2d at 1435 (citing *United States v. Manner*, 887 F.2d 317, 321 (D.C. Cir.1989), *cert. denied* 493 U.S. 1062 (1990) and *United States v. Lavelle*, 751 F.2d 1266, 1275 (D.C. Cir. 1985), *cert. denied*, 474 U.S. 817 (1985)).

common scheme or plan, as well as the defendant's intent, knowledge, and lack of mistake, pursuant to Rule 404(b), in continuing to transact and deal with the designated businesses that underlie the Superseding Indictment. Evidence that the defendant was intimately involved in the financial side of the CJNG's operations, such that she was trusted by Mencho to maintain the ledgers, is powerful evidence of her intent, knowledge, common scheme, and lack of mistake in transacting with the designated businesses.

It is well-established that intent may be inferred by the repetition of similar acts and thus courts regularly admit evidence of the commission of similar crimes to prove intent. *See, e.g.*, *United States v. Douglas*, 482 F.3d 591, 596-97 (D.C. Cir. 2007) (holding that evidence that [the defendant] previously possessed and distributed crack cocaine to an undercover police officer has a tendency to make "it more probable," both that he knew the nature of the substance that he was charged with possessing and that he intended to distribute it.); *United States v. Crum*, 57 F.3d 1071, 1995 WL 364142, at *1-2 (6th Cir. 1995) (unpublished) (upholding admission of prior bribe to prove intent in bribery prosecution); *United States v. Zedner*, 401 F.3d 36, 49-50 (2d Cir. 2005) (holding in prosecution for defrauding a financial institution evidence of two prior episodes where the defendant committed mortgage fraud were admitted to prove defendant's "financial sophistication, his ability to execute complex schemes, and his ability to form intent to defraud."). If other crimes evidence is offered to show intent, "[w]hat matters is that the evidence be relevant to show a pattern of operation that would suggest intent and that tends to undermine the defendant's innocent explanation." *United States v. Long*, 328 F.3d 655, 661 (D.C. Cir. 2003) (citation and internal quotation marks omitted). In this case, evidence that the defendant had a role in maintaining the ledgers for the CJNG is evidence that the defendant engaged in a pattern of assisting the CJNG with its financial operations and undermines any

"innocent" explanation for why she continued to own and operate the businesses named in the Superseding Indictment after they were designated for materially supporting the CJNG and being controlled by the DTO.

Likewise, evidence of the commission of similar crimes is also regularly admitted to prove knowledge and absence of mistake. *See, e.g.*, *United States v. Johnson*, 970 F.2d 907, 913-14 (D.C. Cir. 1992) (finding admission of two prior moneygram frauds to establish knowledge and participation in charged moneygram fraud scheme); *United States v. Brown*, 597 F.3d 399, 404-05 (D.C. Cir. 2010) (upholding admission of other crimes evidence regarding recent use of fraudulent financial documents in fraud prosecution to demonstrate knowledge, motive, and absence of mistake or accident); *United States v. Wilson*, 31 F.3d 510, 515 (7th Cir. 1994) (admitting evidence of other drug activity because it "tend[ed] to show that [the defendant] was familiar with the cocaine business and was not some innocent bystander mistakenly caught up in an overzealous law enforcement"); *United States v. Leahy*, 82 F.3d 624, 636 (5th Cir. 1996) (finding in prosecution for conspiracy to defraud the United States, other instances of submitting false invoices admitted to prove intent and negate mistake); *United States v. Perholtz*, 842 F.2d 343, 358 (D.C. Cir.), *cert. denied,* 488 U.S. 821 (1988) (citation omitted) (holding in an appeal from convictions for several schemes to fraudulently procure U.S. Postal Service contracts, the court upheld the admission of evidence that was "highly probative of efforts to further an ongoing scheme to defraud and demonstrate[d] conscious awareness of guilt on the part of the defendants"), *cert. denied*, 488 U.S. 821 (1988).

As with a showing of intent, the proffered evidence is probative of the defendant's knowledge and absence of mistake regarding the charged offenses. In short, the evidence that the defendant had a role in keeping the ledgers of drug transactions makes it substantially more

probable that the defendant knew that the businesses were materially supporting the CJNG or were controlled by the CJNG, and that it was unlawful to transact or deal with the designated entities. Nevertheless, the defendant continued to operate the entities that are the subject of the Superseding Indictment.

For the foregoing reasons, this evidence should be admitted as proper Rule 404(b) evidence.

### C. The Proposed Evidence Is Not Unfairly Prejudicial Under Rule 403

As to the second prong of the D.C. Circuit's 404(b) inquiry, "the relevant inquiry…is whether the probative value of evidence is 'substantially outweighed' by a danger of unfair prejudice." *Lerma-Plata*, 919 F. Supp. 2d at 159.  This Circuit has noted that it is not enough that the evidence is simply prejudicial; the prejudice must be "unfair."  *See Cassell*, 292 F.3d at 796 (quoting *Dollar v. Long Mf'g, N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977) ("Virtually all evidence is prejudicial or it isn't material. The prejudice must be unfair"); *Sitzmann*, 856 F. Supp. 2d at 61-62 ("the test under Rule 403 is 'unfair prejudice,' not just any prejudice or harm to the defense.").  For evidence to be unfairly prejudicial within the meaning of the Rule, it must have "'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"  *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (quoting Advisory Committee Notes on Fed. R. Evid. 403).

Furthermore, Rule 403 strongly favors admission of 404(b) evidence.  "Rule 403 tilts, as do the rules as a whole, toward the admission of evidence in close cases, even when other crimes evidence is involved." *United States v. Douglas*, 482 F.3d 591, 600 (D.C. Cir. 2007) (citing *Cassell*, 292 F.3d at 795) (internal quotation marks omitted).  "In determining whether 'the probative value is substantially outweighed by the danger of unfair prejudice' it is a sound rule that the balance should generally be struck in favor of admission when the evidence indicates a

close relationship to the event charged." *United States v. Harrison*, 679 F.2d 942, 948 (D.C. Cir. 1982) (quoting *United States v. Day*, 591 F.2d 861, 878 (D.C. Cir. 1978)).

The D.C. Circuit has consistently minimized the risk of potential prejudice not by exclusion, but by issuing limiting instructions to the jury. *See, e.g.*, *Cassell*, 292 F.3d at 796 (emphasizing the significance of the district court's instructions to jury to "consider the evidence for the limited and proper purposes"); *Douglas*, 482 F.3d at 601 (same); *Pettiford*, 517 F.3d at 590 (same); *United States v. Crowder*, 141 F.3d 1202, 1210 (D.C. Cir. 1998) (en banc) (stating that mitigating instructions to jury enter into the Rule 403 balancing analysis); *United States v. Mitchell*, 49 F.3d 769, 777 (D.C. Cir. 1995) (stating that limiting instructions concerning other crimes evidence may guard against improper inferences). "[I]t is the law, pure and simple, that jury instructions can sufficiently protect a defendant's interest in being free from undue prejudice." *Perholtz*, 842 F.2d at 361 (citation omitted).

The proposed evidence should not be excluded under Rule 403 because the probative value substantially outweighs any possible prejudicial effect. The law in this Circuit is clear that in balancing the probativeness and prejudice of other crimes, "it is a sound rule that the balance should generally be struck in favor of admission when the evidence indicates a close relationship to the offense charged." *Harrison*, 679 F.2d at 948 (internal quotation marks and citation omitted). That other crimes evidence may be prejudicial "does not suggest that such evidence has an automatic unfair and substantial prejudicial effect on the jury." *Cassell*, 292 F.3d at 796. Furthermore, the extent of any prejudice, or the potential misuse of such evidence by the jury, can effectively be eliminated by limiting instructions that the Court can make either concurrent with the introduction of the evidence at trial or during final jury instructions.

Here, the defendant is charged with criminal violations of the Kingpin Act not only for her transactions and dealings with six different Mexico-based businesses, which were designated by OFAC for materially supporting or being controlled by the CJNG, but also for her role as an officer, director, or agent of each of the businesses. If interpreted as "other crimes" evidence, the defendant's role in maintaining ledgers of the CJNG's drug proceeds shows that she was involved in CJNG's financial operations in more ways than simply running businesses that supported the DTO. The government does not plan to introduce into evidence graphic or inflammatory details of CJNG's narcotic trafficking activities in Mexico, such as the extraordinary violence or rampant public corruption perpetrated by the DTO. In so limiting the evidence, the government distinguishes this case from cases in which a party seeks to introduce an inherently inflammatory or shocking "other crime" in connection with a defendant on trial for non-violent charges that do not provoke the conscience. *See, e.g.*, *United States v. Lawson*, 410 F.3d 735, 742 (D.C. Cir. 2005) (admitting evidence where it did not "add [] emotional or other pejorative emphasis not already introduced" by evidence of the charged conduct). On the other hand, the probative value of the proposed evidence is substantial. It shows that the defendant was knowingly and intentionally involved in the financial operations of the CJNG, and that her involvement was not limited to her transactions with the designated businesses. It also tends to show that the defendant would have known that the designated businesses were supporting the CJNG – because she had separate awareness of the CJNG's finances in her other role – and therefore makes it more likely that she knew that it was unlawful for her to transact or deal with the designated entities.

## IV.  CONCLUSION

For the foregoing reasons, the Court should grant the government's motion to introduce

other crimes evidence related to the defendant's role in keeping ledgers of the proceeds and expenses of narcotics trafficking activities.

Respectfully submitted this 29th day of October, 2020.

        Arthur Wyatt, Chief
        Narcotic and Dangerous Drug Section
        Criminal Division
        U.S. Department of Justice

By:    /s/
        Kate Naseef, Trial Attorney
        Kaitlin Sahni, Trial Attorney
        Brett Reynolds, Trial Attorney
        Narcotic and Dangerous Drug Section
        Criminal Division
        U.S. Department of Justice
        Washington, D.C. 20530
        Telephone: (202) 514-0917