**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO.: 1:20-CR-040** |
| | ) | |
| **JESSICA JOHANNA OSEGUERA** | ) | |
| **GONZALEZ,** | ) | |
|     **also known as "Jessica Johanna** | ) | |
|     **Castillo" and "La Negra,"** | ) | |
| | ) | |
|     **Defendant.** | ) | |

**GOVERNMENT'S CONSOLIDATED RESPONSE TO DEFENDANT'S SIXTH AND
SEVENTH MOTIONS TO COMPEL PRODUCTION OF EVIDENCE AND WITNESSES**

The United States, through undersigned counsel, respectfully submits this consolidated

response to Defendant's Sixth and Seventh Motions to Compel Production of Evidence and

Witnesses ("Sixth Motion" and "Seventh Motion," respectively, or "Motions," collectively)

(Dkt. Nos. 125, 126).

The Sixth Motion is rooted in the government's production to the defendant of

discoverable materials that were in the government's possession as a consequence of Mutual

Legal Assistance Treaty ("MLAT") requests that the government made to foreign countries. The

government has already provided discoverable material provided in *response* to MLAT requests,

but the defendant seeks to compel the production of the MLAT *requests* made by the

government. The Seventh Motion, noting that financial records appear to show that an employee

or group of employees from the U.S. Embassy in Mexico patronized one of the defendant's

restaurants prior to its designation by the Office of Foreign Assets Control ("OFAC"), seeks to

compel the government to produce records of "transactions or dealings" between the United

States government and the OFAC-designated entities underlying the Superseding Indictment.

As set forth in further detail herein, both motions should be denied.

## I. MLAT Requests Submitted by the United States Government Are Not Discoverable Under Rule 16

In connection with its long-running investigation into the defendant, her family members, and her criminal associates in the Cartel de Jalisco Nueva Generacion ("CJNG"), a major Mexican drug trafficking organization, the government has submitted MLAT requests to various foreign countries, including Mexico. Where those requests have yielded discoverable material, the government has provided it to the defendant. Of particular relevance here, for example, the government has provided the defendant with tens of thousands of pages of financial documents and over 100 recorded phone calls provided to the government by the Government of Mexico in response to MLAT requests. *See* Sixth Motion at 5-6.

What the government has not provided, however, are the MLAT requests themselves. Under the familiar Rule 16 categories, such requests are not statements of a defendant, nor does the government intend to use them in its case in chief. *See* Fed. R. Crim. P. 16(a)(1)(E)(ii) and (iii). It is also not apparent how the requests could be "material to preparing the defense." *See* Fed. R. Crim. P. 16(a)(1)(E)(i). The government's request to a foreign country made pursuant to a treaty is nothing more than a formal request for assistance. A request itself, by its nature, could not be inculpatory nor would it be admissible evidence as to a defendant's guilt or innocence.[1]

The defendant here appears to concede as much, not even arguing in the Sixth Motion that the MLAT requests made in this case are discoverable under Rule 16(a)(1). *See* Sixth Motion at 8.[2]

---

[1] In some instances, the fact that a request has been made is relevant to a statute of limitations analysis. *See* 18 U.S.C. § 3292 (permitting, in limited circumstances, a suspension of the statute of limitations to allow the government to obtain foreign evidence). No such issue applies here.

[2] The "Legal Standard" section of the Sixth Motion does quote Rule 16 in some detail, but that legal background is not tied to the request for MLAT documents in particular, and the entire section is identical to the legal standards set forth in every other motion to compel filed by the defendant. *See* Dkt. No. 102 at 4-8 (Second Motion to Compel); Dkt. No. 105 at 2-5 (Third

The only argument that the defendant advances is that MLAT requests submitted by the government could be exculpatory – and even then only "if" they showed that the "government []" received less than it expected" in response to the request. Sixth Motion at 8. The government does not concede this attenuated *Brady* theory. Among other things, the U.S.-Mexico Mutual Legal Assistance Treaty does not *require* the country receiving an MLAT request to provide a full response. As it pertains to documents, the language of the treaty is permissive, indicating only that the country receiving a request "may" provide records in the possession of a government office or agency, and that records are only to be provided if the country's "legal provisions do not prohibit it." *See* United States-Mexico Mutual Legal Assistance Treaty, Article 10, Paragraph 2, *available at*: https://www.state.gov/wp-content/uploads/2019/02/91-503-Mexico-Mutual-Legal-Assist-Treaty.pdf. Thus, even if the government "received less than it expected" in response to an MLAT request, that would not prove anything as to the existence or not of any record sought.[3] Additionally, the treaty imposes no firm time limits for a response, and responses provided are often partial and incomplete, so the fact that a response may not have included what the government "expected" in making its request would likewise not indicate that such evidence does not exist or will not be forthcoming.

---

Motion to Compel); Dkt. No. 106 at 2-4 (Fourth Motion to Compel); Dkt. No. 110 at 5-8 (Fifth Motion to Compel); Dkt. No. 126 at 5-8 (Seventh Motion to Compel).

[3] As a matter of practice, the government can proffer to the Court that pursuant to the treaty's permissive language, Mexico routinely withholds information and documents related to ongoing investigations in that country, frequently without explanation. MLAT requests, moreover, are generally not drafted in a manner that would require the country receiving the request to make a determination of the inculpatory or exculpatory character of the evidence requested, so to compare the request to the form and scope of the response would not necessarily reveal anything exculpatory. Finally, the government routinely submits MLAT requests to foreign states using broad, inclusive language because the government does not necessarily know exactly what a foreign government possesses prior to submitting a request.

In any event, the government is aware of its obligations to produce exculpatory evidence, has complied with them, and will continue to comply with them in this case. The MLAT requests submitted in connection with this matter remain in the possession of the prosecution team, and the government can represent to the Court that it has reviewed them in connection with evaluating its discovery obligations in preparing this case for trial.

Finally, although the government has not located any binding precedent directly on point, the government is aware of decisions from courts in other districts denying motions to compel the production of MLAT requests made by the U.S. government. *See United States v. Bases*, No. 18-cr-48, 2020 WL 5909072, at *6-7 (N.D. Ill. Oct. 6, 2020); *United States v. Hutchins*, No. 17-cr-124, 2018 WL 1695499, at *2-3 (E.D. Wisc. Apr. 6, 2018). The MLAT requests would also appear to fall within the scope of Rule 16(a)(2), which exempts from discovery "internal government documents made by an attorney for the government."

## II. Documents Related to Other Persons' Transactions With the Defendant's Businesses Are Not Discoverable Under Rule 16

In the Seventh Motion, the defendant seeks to compel the government to provide "all information showing that the United States government has engaged in any transactions, dealings or any activity with a property or property interest allegedly associated" with the defendant. Seventh Motion at 8. This motion is rooted in a financial document from the defendant's accountant produced to the defendant in discovery – which itself was part of a set of materials provided to the government by Mexico in response to an MLAT request – that appears to show a small purchase by the "Embassy of the United States of North America"[4] from Operadora Los Famosos, the operating company for the defendant's Kenzo Sushi restaurant. *See* Dkt. No. 127-1 at 17 (Exhibit 3).

---

[4] In the original Spanish, *Embajada de los Estados Unidos de Norteamerica*.

The prosecution team here is not aware of what this purchase is, who made it, or the existence of any additional documents corroborating or further detailing the transaction in question. Nor is it aware of or in possession of any similar documents not yet produced to the defendant that show any transaction between the United States government and any of the defendant's OFAC-designated businesses.

Moreover, and critically, the evidence that the defendant seeks to compel has no plausible relevance to the issues in this case. The defendant suggests that the proffered transaction revealed in discovery shows that the United States government itself engaged in transactions or dealings with the defendant's businesses, and insists that any similar evidence "would cut directly against the government's argument that Ms. Gonzalez had any notice" that the entities underlying the Superseding Indictment were designated by OFAC.[5]  Seventh Motion at 9.  But the document does not show what the defendant thinks it does.  To take the proffered document on its face, all that it shows is that a person or persons purportedly affiliated with the U.S. Embassy, which could include non-U.S. persons employed by the United States in Mexico, made a purchase from Operadora Los Famosos in the amount of 1,390 Mexican pesos on or about November 7, 2016.  *See* Dkt. No. 127-1 at 17.  That amounts to approximately $74 USD under the exchange rate at the time.  Operadora Los Famosos, doing business as Kenzo Sushi, was not designated by OFAC until September 14, 2017, nearly a year later.  At the time of the purchase, then, there was no prohibition on U.S. persons engaging in transactions or dealings with Operadora Los Famosos or Kenzo Sushi.[6]  And even then, the criminal prohibition of the

---

[5] As the government has previously argued, "notice" is not an element of the statute charged in the Superseding Indictment. *See* Dkt. No. 63 at 18-21.
[6] This is not to say that the *defendant's* transactions or dealings with Operadora Los Famosos prior to its designation were not unlawful. The government has alleged that she changed the restaurant's identity in order to evade OFAC's sanctions, which itself would be unlawful. But

Foreign Narcotics Kingpin Designation Act only makes it a crime to "willfully" engage in

transactions or dealings with designated entities without a license or other permission from

OFAC. *See* 21 U.S.C. §§ 1906(a), 1904(c).[7]  And even assuming *arguendo* that persons

affiliated with the U.S. Embassy "willfully" engaged in transactions or dealings with Operadora

Los Famosos *after* its designation by OFAC, any other person's alleged violation of law has

nothing to do with, and does not bear on, the defendant's *own* violations of law.  Particularly as it

relates to the defendant's state of mind, an arms-length purchase by U.S. government personnel

from a sushi restaurant *prior* to the restaurant's OFAC designation does not have any plausible

relevance to the government's proof in this case or the defense thereto.

For these reasons, even if the government were aware of any evidence not already

produced that would be responsive to the defendant's request, such evidence would not be

discoverable pursuant to Rule 16(a)(1) or the government's obligations under *Brady v.*

*Maryland*, 373 U.S. 83 (1963).  And in any event, as set forth above, the prosecution team is not

aware of any such evidence not provided to the defendant in this case.

### III.     The Sixth and Seventh Motions Should Be Rejected as Untimely Filed

The government further submits that the Court should deny the Sixth and Seventh

Motions to Compel as untimely filed.  On October 21, 2020, the Court ordered the defendant to

show cause going forward as to "specifically" how any additional motions were delayed past the

pretrial motions deadline.  *See* Dkt. No. 117 at 15.  Neither the Sixth Motion nor the Seventh

---

that would put her in stark contrast to an arms-length restaurant patron who would generally
have no knowledge of the restaurant's corporate history.
[7] The government additionally notes that there are other exceptions in the Kingpin Act's
prohibitions, such as the inapplicability to law enforcement or intelligence activities. *See* 21
U.S.C. § 1904(d).

Motion, filed on October 29, 2020, did so, although the defendant filed a generalized response to the Court's Show Cause order on October 28, 2020.  *See* Dkt. No. 122.

In the case of the Sixth Motion, which seeks MLAT requests made to the Government of Mexico, the defense has been on notice at least since May 1, 2020, that the government would be producing a substantial volume of documents in response to MLAT requests.  *See* Dkt. No. 122 at 1-2.  Although the defendant did not ask the government for the MLAT requests themselves until October 16, 2020, *see* Sixth Motion at 6, she has offered no reason why the request and any necessary motions to compel could not have been made on a more timely basis.

As for the Seventh Motion, concerning the U.S. Embassy's purported transactions with Operadora Los Famosos, the relevant documents were produced to the defendant on June 25, 2020.  It was not until September 17, 2020 that the defendant wrote the government, citing one of those documents, to request the additional evidence that she now seeks to compel.  *See* Seventh Motion at 8.  The government responded on the same day declining to provide any additional documents, but the defendant nevertheless waited over five weeks to file the motion to compel.  *See id.*  The Seventh Motion, too, therefore, should be rejected as untimely.

**CONCLUSION**

For the foregoing reasons, the defendant's Sixth and Seventh Motions to Compel should

be denied.


Respectfully submitted this 6th day of November, 2020.


                                        Arthur Wyatt, Chief
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice


By:         /s/
Brett Reynolds, Trial Attorney
Kate Naseef, Trial Attorney
Kaitlin Sahni, Trial Attorney
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice
Washington, D.C. 20530
Telephone: (202) 514-0917

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was sent via the Electronic Case Filing

(ECF) system with the United States District Court for the District of Columbia to counsel of

record for the defendant, this 6th day of November, 2020.


By:      /s/
         Brett Reynolds
         Trial Attorney
         Narcotic and Dangerous Drug Section
         Criminal Division
         U.S. Department of Justice