IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v.                                                    )<br>)<br>)<br>JESSICA JOHANNA OSEGUERA )<br>GONZALEZ,                                  )<br>)<br>Defendant.                                 )<br>_____)  | Criminal No. 20-cr-00040 (BAH) |

### DEFENDANT GONZALEZ'S OPPOSITION TO THE GOVERNMENT'S MOTION TO INTRODUCE OTHER CRIMES EVIDENCE AT TRIAL

Defendant Jessica Johanna Oseguera Gonzalez, by and through her undersigned counsel, respectfully submits the following in opposition to the Government's Motion to Introduce Other Crimes Evidence at Trial (ECF 139).[1]

## I. INTRODUCTION

At the outset, the government's motion should be denied as untimely. As early as February 2020, the government declared that the "[t]he Indictment in this case is the product of an extensive, long-term and ongoing investigation conducted by the Drug Enforcement Administration ('DEA') . . . ." *See* ECF 12, at 2. Over nine months after the original Indictment was returned against Ms. Gonzalez and after its "extensive, long-term" investigation, however, the government now asks

---

[1] On November 3, 2020, the government filed a redacted version of its Motion to Introduce Other Crimes Evidence at Trial as ECF 139. Ms. Gonzalez is unaware of a ruling by the Court requiring the government to file a fully unredacted version of ECF 139 on the public record. Therefore, any references to the information redacted in the government's filing at ECF 139 are also redacted in this filing. Ms. Gonzalez will submit an unredacted copy of this opposition under seal, and will provide an unredacted copy of this opposition to government counsel. Should the Court require Ms. Gonzalez to file an unredacted copy of this opposition on the public record, Ms. Gonzalez will do so. On November 12, 2020, Ms. Gonzalez sought the government's position on the redactions included in this filing. U.S. Department Justice Trial Attorney Brett Reynolds represented that the government does not oppose Ms. Gonzalez's redactions.

1

the Court to allow it to introduce so-called "other crimes evidence" at trial. There is no reason that the government should be permitted to introduce this evidence at this late stage. In accordance with the Court's then-existing Scheduling Order, on July 13, 2020 the government moved to introduce a separate category of "other crimes evidence." *See* ECF 63. The government has provided no basis for its nearly four month delay in seeking the admission of yet another category of "other crimes evidence" against Ms. Gonzalez. Unlike Ms. Gonzalez, who is working diligently to review and analyze the government's voluminous and ongoing discovery productions to determine whether those productions are deficient, the government has no excuse for belatedly attempting to introduce even more "other crimes evidence" against Ms. Gonzalez, which undoubtedly was uncovered during the course of its "extensive, long-term" investigation. Without even considering the merits of the government's motion, therefore, the motion should be denied as untimely.

Notwithstanding, an examination of the government's alleged "other crimes evidence" arrives at the same result. Absent any sort of detail that would make a meaningful investigation of the proffered evidence possible, the government seeks to admit the ███████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████. *See* ECF 139, at 1. This proffered evidence is not "intrinsic" to the charged offenses, is inadmissible under Fed. R. Evid. 404(b), and is unfairly prejudicial under Fed. R. Evid. 403. Simply put, the only purpose of this evidence is to support the government's persistent desire to somehow connect Ms. Gonzalez with narcotics trafficking – an offense with which she is <u>not</u> charged. As the Court has recognized, this is a very real danger that Ms. Gonzalez faces at trial. *See* ECF 130, at 15 n.7 ("To the extent defendant is concerned that the jury might misapprehend the language of the Superseding Indictment, she may request an instruction at trial to clarify that she is being charged

2

under the Kingpin Act with engaging in prohibited transactions *and not with a drug trafficking offense*.") (emphasis added). For the reasons set forth below, therefore, the government's motion should be denied.

## II.  ARGUMENT

### 1.  The "Other Crimes" Evidence Is Not Intrinsic To The Charged Offenses.

The government first argues that the evidence set forth above is intrinsic to the charged offenses and, therefore, not subject to analysis under Rule 404(b) of the Federal Rules of Evidence. *Id.* at 6-8. As is the case with the government's first motion to introduce "other crimes evidence" (*see* ECF 63, at 7-9) this argument is without merit and is unsupported by Circuit precedent.

In *United States v. Bowie*, the D.C. Circuit considered the district court's admission of prior bad acts evidence against the defendant, Bowie, in connection with a charge against him for possession of counterfeit money. 232 F.3d 923 (D.C. Cir. 2000). The prior acts proffered by the government concerned an arrest of Bowie made one month earlier that had resulted in the recovery of counterfeit bills with the same exact serial numbers as the counterfeit money that Bowie was charged with possessing, along with an eyewitness description of Bowie passing a counterfeit bill (again, bearing the same serial number) on the same day of the prior arrest. *Id.* at 926. The D.C. Circuit rejected the district court's ruling that the evidence was admissible as "intrinsic" evidence. *Id.* at 929.

In *Bowie*, the D.C. Circuit held that proffered evidence can properly be considered "intrinsic" only if it "is of an act that is part of the charged offense" and, therefore, immune to Rule 404(b)'s limitations on evidence of criminal propensity. *Id.* at 929. Additionally, the *Bowie* Court held that "some uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime." *Id.* at 929 (emphasis added). To paraphrase the Circuit's query in *Bowie*: is the alleged prior act evidence at issue here

3

"so indistinguishable from the charged crime that [the] item of evidence is entirely removed from Rule 404(b)?" *Id.* at 928. The answer in *Bowie*, as the answer must be here, is no.

The alleged evidence proffered by the government has nothing to do with the allegations that Ms. Gonzalez *willfully* engaged in transactions or dealings that Ms. Gonzalez with the entities named in the Superseding Indictment, in violation of the Kingpin Act. Instead, the government wants to introduce uncorroborated ▒▒▒▒▒▒ in an attempt to smear Ms. Gonzalez in the eyes of the jury by attempting to connect her to international narcotics trafficking. Indeed, the government's proffered evidence paints in broad strokes. The government's motion discusses ▒▒▒▒ that Ms. Gonzalez was "responsible for keeping ledgers . . . for her father," that Ms. Gonzalez attended a meeting at Las Flores Cabanas, ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒ *See* ECF 139, at 5. The government's motion goes on to proffer ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒ *Id.* at 6.

The only commonality between the government's proffered evidence and the Superseding Indictment's allegations is the mention of Las Flores Cabanas. Blatantly missing from the government's proffered evidence, however, is any indication that Ms. Gonzalez knew that Las Flores Cabanas had been designated by OFAC. Without that missing piece, the only purpose the government's proffered evidence serves is to inflame the jury against Ms. Gonzalez by claiming that she is somehow connected to international narcotics traffickers.

In this way, the government's proffered evidence does not even pass the threshold requirement set forth in Fed. R. Evid. 401. Whether prior acts are relevant depends on whether

4

the acts "tend to make the existence of any fact that is of consequence to the determination of the action more or less probable." *United States v. Hicks*, 635 F.3d 1063, 1069-70 (7th Cir. 2011) (quoting Fed. R. Evid. 401). Given that this evidence provided no notice that Cartel de Jalisco Nueva Generacion had been designated as a significant foreign narcotics trafficker, that it was illegal to engage in transactions or dealing with designated narcotics traffickers, or that it was illegal to engage in transactions for dealings with entities that may or may not have been designated at the time (the government's "evidence" is completely devoid of any dates and/or times), this evidence is irrelevant to the charged offenses. This lack of specificity negates any so-called evidence of this alleged evidence's ability to "make the existence of any fact that is of consequence to the determination of the action more or less probable." *Id.*

Additionally, the government's reliance on the cases cited for its proposition that its proffered evidence is intrinsic to the charged offenses is misplaced. The majority of the cases cited by the government involve circumstances in which evidence was admitted as "intrinsic" because it was deemed to be part of the charged offense. *See*, *e.g.*, *United States v. Allen*, 960 F.2d 1055, 1056-58 (D.C. Cir. 1992), *cert. denied*, 506 U.S. 881 (1992) (admitting testimony that the defendant watched his co-defendant sell crack to undercover officers just minutes before the police executed a search warrant for the house where the charged sale was made, as an "intrinsic part of the witness' account of the circumstances surrounding the offense" for which defendant was indicted); *United States v. Gartmon*, 146 F.3d 1015, 1020 (D.C. Cir. 1998) (admitting evidence that the defendant lured his co-defendant to his home under false pretenses and threatened her with a gun, after the co-defendant told the defendant she no longer wanted to participate in the charged scheme to defraud the George Washington University Health Plan, because the defendant's threat allowed the charged scheme to continue and, therefore, was part of the charged conduct); *United States v. Badru*, 97 F.3d 1471, 1474 (D.C. Cir. 1996), *cert. denied*, 520 U.S. 1150 (1997)

5

(admitting, in a conspiracy to distribute heroin case, evidence of the defendants' overseas trips to Nigeria as "directly relevant" to the charged offenses because the defendants "had to obtain heroin from a source before they could distribute it."); *United States v. Lerma-Plata*, 919 F. Supp. 2d 152, 156 (D.D.C. 2013) (admitting evidence of conversations between the defendant and a co-conspirator about money laundering and firearms trafficking, because the money laundering and firearms trafficking constituted "uncharged acts *performed contemporaneously* with the charged crime" that "*facilitate[d] the commission of*" the charged drug trafficking conspiracy) (emphasis added).

The facts of these cases are easily distinguishable from the evidence the government proffers against Ms. Gonzalez. It bears repeating that Ms. Gonzalez was not indicted for narcotics trafficking. Unlike the defendant in *Allen*, therefore, the government's proffered evidence cannot be considered an "intrinsic" part of any account of the conduct charged in the Superseding Indictment. Indeed, even though the proffered evidence is in the form of ▇▇▇▇▇▇▇▇▇▇▇▇, the ▇▇▇▇▇▇▇ does not state that Ms. Gonzalez knew that Las Flores Cabanas or any other entity in the Superseding Indictment was designated by OFAC. In that way, there is no possible interpretation of the government's proffered evidence that could lead to the conclusion that the evidence is somehow "intrinsic" to the charged conduct.

Similarly, there is no evidence that the government's proffered evidence allowed Ms. Gonzalez to engage in any alleged future conduct involving separate entities, as was the case in *Gartmon* and *Badru*, where the defendants' prior acts allowed their charged schemes to continue. Nor can the proffered evidence be compared to the evidence admitted in *Lerma-Plata*, as the government's proffered evidence against Ms. Gonzalez has not been shown to have facilitated any future conduct charged in the Superseding Indictment.

The government also contends that its proffered evidence shows that Ms. Gonzalez "had a role in keeping the financial records of the CJNG's narcotics trafficking activities at the same time that she was running the six businesses named in the Superseding Indictment." *See* ECF 139, at 8. This statement ignores the complete lack of any timeframe included in the government's factual proffer. Given this, it is just as likely that the alleged meeting occurred prior to Las Flores Cabanas being designated by OFAC – a fact which would set the proffered evidence even farther apart from the allegations in the Superseding Indictment. It is also unclear how Mr. Gonzalez's alleged "involvement in the financial operations of the CJNG through maintaining the ledgers of drug proceeds bears directly on her willfulness in continuing to transact and deal with the designated entities." *Id.* Alleging that Ms. Gonzalez was involved in maintaining ledgers for the CJNG has absolutely no bearing on whether she was ever provided notice that the entities in the Superseding Indictment were designated by OFAC. Indeed, the government's proffer does not include any mention of the designated entities aside from Las Flores Cabanas, and, for Las Flores Cabanas, does not provide any evidence that Ms. Gonzalez was aware that the United States Treasury Department had designated the entity.

Simply put, the government fails to meet the burden set forth in *Bowie*: the proffered ████ is not part of the charged offenses, as the charged offenses concern Ms. Gonzalez *willfully* violating the Kingpin Act by *willfully* transacting with OFAC-designated entities, and the government's proffered evidence concerns only allegations regarding narcotics trafficking, not about Ms. Gonzalez's knowledge of whether any of the entities in the Superseding Indictment were designated by OFAC.

The government also cites to cases admitting "intrinsic" evidence, which use standards that have been viewed with disfavor by more recent Circuit decisions. In *United States v. Weeks*, the United States Court of Appeals for the Eleventh Circuit admitted evidence that an undercover

7

officer had been investigating stolen vehicles when he was assaulted by the defendant. 716 F.2d 830, 832 (11th Cir. 1983). In admitting this evidence, the Eleventh Circuit determined that the evidence about the ongoing investigation was "inextricably linked to the charged offense of assault [and] was reasonably necessary to complete the story of the crime." *Id.*; *see also United States v. Gray,* 292 F. Supp. 2d 71, 77-78 (D.D.C. 2003) (citing the "complete the story" standard in admitting evidence as intrinsic to the charged drug an RICO conspiracies). This "completing the story" standard has been explicitly dismissed by case law in this Circuit. *See*, *e.g.*, *Bowie*, 232 F.3d at 929 ("[W]e are confident that there is no general 'complete the story' or 'explain the circumstances' exception to Rule 404(b) in this Circuit. Such broad exclusions have no discernible grounding in the 'other crimes, wrongs, or acts' language of the rule. Rule 404(b), and particularly its notice requirement, should not be disregarded on such a flimsy basis."); *United States v. Khanu*, 664 F. Supp. 2d 80, 82, 84 (D.D.C. 2009) (noting that the "D.C. Circuit has rejected a broad construction of the 'inextricably intertwined' test, noting that evidence needed only to 'complete the story' or 'explain the circumstances' is not intrinsic to the charged crime" and explaining that "when evidence of prior acts related to actions substantially different from the goals of the conspiracy charged, and occurs prior to the commencement of the conspiracy period, that evidence is better analyzed as falling under the purview of Rule 404(b).") (emphasis added); *United States v. Sitzmann*, 856 F. Supp. 2d 55, 59 (D.D.C. 2012) (citing *Bowie*, 232 F.3d at 929) ("[U]nlike other circuits, the D.C. Circuit has said that "there is no general 'complete the story' or 'explain the circumstances' exception to Rule 404(b)."). For these reasons, the evidence proffered by the government cannot be considered "intrinsic" or "inextricably intertwined" with the charged crimes and, therefore, cannot be admitted under that standard. Even under the standard of Rule 404(b), however, the government's proffered evidence should be not admitted against Ms. Gonzalez.

8

## 2.      The "Other Crimes Evidence" Is Not Admissible Under Rule 404(b).

Generalized evidence of a defendant's "bad character" is forbidden under the Federal Rules of Evidence. Under Rule 404(a), "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion[.]" Fed. R. Evid. 404(a). Likewise, Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." *Id.*

Thus, if the government wishes to offer proof of other alleged wrongs or acts under Rule 404(b), it must first convince the Court that the evidence is probative of some material issue other than character. *United States v. Clarke*, 24 F.3d 257, 264 (D.C. Cir. 1994). Moreover, to be deemed admissible under Rule 404(b), evidence of prior bad acts must *also* be sufficiently similar to the crime charged. *See United States v. Foskey*, 636 F.2d 517, 524 (D.C. Cir. 1980); *United States v. Kasouris*, 474 F.2d 689, 692 (5th Cir. 1973) ("Similarity, being a matter of relevancy, is judged by the degree in which the prior act approaches near identity with the elements of the offense charge[d]…there must be *substantial* relevancy…"); *see also United States v. Nicely*, 922 F.2d 850, 856 (D.C. Cir. 1991) ("A fundamental tenet in our criminal jurisprudence is that a jury should not premise its verdict upon a general evaluation of the defendant's character but rather upon an assessment of the evidence relevant to the particular crime with which the defendant is presently charged.") (internal citation omitted). Finally, "because of the *enormous danger of prejudice* to the defendant that evidence of other crimes creates," the proffered evidence must also be "necessary" as well as "clear and convincing" to gain admission, lest the jury "draw illogical and incorrect inferences from such evidence." *United States v. Shelton*, 628 F.2d 54, 56 (D.C. Cir. 1980) (emphasis added) (internal citations omitted).

District Courts are the gatekeepers regarding 404(b) evidence and must exclude such evidence if its admission would result in an unfair trial for the defendant. Even if the Court determines that the other crimes evidence has a legitimate purpose under Rule 404(b), the Court must nevertheless exclude that evidence if it fails Rule 403's balancing test. *See Clarke*, 24 F.3d at 264. Indeed, the D.C. Circuit has "repeatedly emphasized the narrow scope of the 'bad acts' evidence exceptions under Rule 404(b) . . . and the continuing applicability of the Rule 403 limitation on unduly prejudicial evidence even if an exception is satisfied." *Nicely*, 922 F.2d at 856.

Here, the government argues that the proffered evidence regarding the CJNG's ledgers is evidence of a "common scheme or plan." *See* ECF 139, at 11. In making this argument, the government contends that "[e]vidence that [Ms. Gonzalez] was intimately involved in the financial side of the CJNG's operations, such that she was trusted by Mencho to maintain the ledgers, is powerful evidence of her intent, knowledge, common scheme, and lack of mistake in transacting *with the designated businesses*." *Id.* (emphasis added). The government's argument misses the mark. As stated above, the government's proffered evidence mentions only one of the entities in the Superseding Indictment and offers no insight as to whether Ms. Gonzalez knew that the entity was designated by OFAC. More importantly, the government has not indicated when the alleged meeting or ledger-keeping occurred, meaning that all of the "facts" included in the government's proffer could have occurred before any of the entities in the Superseding Indictment were designated. This proffered evidence therefore, cannot be reliably used to infer any intent, knowledge, or lack of mistake on Ms. Gonzalez's part regarding any alleged conduct with the entities listed in the Superseding Indictment.

The government next argues that its proffered evidence shows that Ms. Gonzalez "engaged in a pattern of assisting the CJNG with its financial operations," which "undermines any

"'innocent' explanation for why she continued to own and operate the businesses named in the Superseding Indictment after they were designated for materially supporting the CJNG . . . ." *Id.* at 11-12. This argument similarly fails. The government once again tries to tie Ms. Gonzalez's maintenance of CJNG ledgers with her knowledge that the entities in the Superseding Indictment had been designated by OFAC. The government's proffered evidence provides no basis to conclude that these alleged ledgers contain any information whatsoever about the charged entities. Lacking that, the government offers mere conjecture in an attempt to inflame the jury against Ms. Gonzalez, by suggesting that she is intimately involved in the operations of narcotics trafficking – the precise type of evidence that Rule 404(b) forbids.

The government's arguments that its proffered "other crimes" evidence shows Ms. Gonzalez's knowledge and absence of mistake also fail. *See* ECF 139, at 12-13. The government, once again, states that "the evidence that the defendant had a role in keeping the ledgers of drug transactions makes it substantially more probable that the defendant knew that the businesses were materially supporting the CJNG or were controlled by the CJNG, and that it was unlawful to transact or deal with the designated entities." *Id*. As before, the government glosses over the glaring omissions in its evidence that are needed to draw such a connection – the "ledgers" are not said to contain any information regarding the entities in the Superseding Indictment, and the evidence does not provide any information that Ms. Gonzalez was aware that any of the entities had been designated by OFAC. Indeed, the government directly connects "ledgers of drug transactions" and "transact[ions] or deal[ings] with the designated entities." *Id.* The government has not proffered any evidence that any of the entities in the Superseding Indictment were involved in narcotics trafficking and, again, Ms. Gonzalez has not been charged with narcotics trafficking. It is unclear, therefore, how records of narcotics transactions could, in any way, be relevant to whether Ms. Gonzalez *willfully* engaged in transactions in dealings with entities she knew were

11

designated by OFAC, in violation of the Kingpin Act. For these reasons, the government's proffered evidence does not satisfy any of the legitimate purposes contemplated by Rule 404(b) and should not be admitted by the Court.

### 3. The "Other Crimes Evidence" Should Be Excluded Because It Is Unfairly Prejudicial And Does Not Satisfy The Rule 403 Balancing Test.

Even if the Court finds that the government's proffered evidence is somehow admissible under Rule 404(b), the evidence should still be excluded under Rule 403, as it is unfairly prejudicial to Ms. Gonzalez. The Court must weigh the probative value of that evidence against the countervailing considerations enumerated in Rule 403 to gauge its admissibility. *See Foskey*, 636 F.2d at 525 ("Bad acts evidence must satisfy Federal Rule of Evidence 403"). In this case, where the probative value of the proffered evidence is at best limited (*see United States v. Loza*, Criminal No. 09–0226 (PLF), 2011 WL 553438, at *2-3 (D.D.C. Feb. 3, 2011)), admission of the evidence cannot be justified in light of the enormous risk of unfair prejudice to Ms. Gonzalez. First, the government provided no indication of when any of the events in its proffered evidence were alleged to have happened, and has provided no corroborative evidence, such as the ledgers themselves, or any other documents and/or information, corroborating its extremely broad and vague proffered ███████. *See Parle v. Runnels*, 505 F.3d 922 (9th Cir.2007) (granting habeas relief where the state court's admission of "egregiously unreliable" other-acts evidence "rendered [the petitioner's] defense 'far less persuasive than it might have been' "and thus "deprived Petitioner of a fair trial") (quoting *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973); *see also Valerio v. Crawford*, 306 F.3d 742, 775 (9th Cir.2002), *cert. denied*, 538 U.S. 994 (2003) (improper admission of evidence can amount to a due process violation if it "is clearly prejudicial and 'rendered the trial fundamentally unfair'"). This not only renders the proffered evidence unreliable, it also means that all of the events alleged by the government could

have occurred prior to any of the entities in the Superseding Indictment being designated by OFAC, destroying any potential probative value. Third, the proffered evidence does not include any indication whatsoever that Ms. Gonzalez was notified that the entities in the Superseding Indictment had been designated by OFAC. Given this, the introduction of this evidence would serve no purpose other than to inflame the jury against Ms. Gonzalez for allegedly being involved in narcotics trafficking, even though she is not charged with any narcotics trafficking offenses.

The government relies on case law standing for the proposition that contested evidence under Rule 404(b) and 403 should be admitted when the evidence "indicates a close relationship to the offense charged." *See* ECF 63, at 16 (citing *United States v. Harrison*, 679 F.2d 942, 948 (D.C. Cir. 1982)). In *Harrison*, the D.C. Circuit admitted evidence of an eyewitness account of the defendant engaging in drug dealing on prior occasions, when that defendant was charged with possession of a controlled substance with intent to distribute. *Harrison*, 679 F.2d at 944, 948. In affirming the district court's decision to admit this evidence, the D.C. Circuit emphasized that there was "nothing 'unfair' in admitting direct evidence of the defendant's past acts by an eyewitness thereto that constituted substantive proof of the relevant intent alleged in the indictment." *Id.* at 948.

The same circumstances are not present here. The government does not seek to admit an eyewitness account of Ms. Gonzalez committing the crimes alleged in the Superseding Indictment. Instead, it seeks to admit unreliable, uncorroborated evidence that attempts to connect Ms. Gonzalez to allegations of narcotics trafficking. This is a clear attempt to unfairly prejudice Ms. Gonzalez in the eyes of the jury for crimes with which she is not charged. There is no "limiting instruction[]" that could be given by the Court that could cure the unfair and substantial prejudicial Ms. Gonzalez would suffer if the government is permitted to tell the jury, in effect, that because Ms. Gonzalez was allegedly involved in keeping records for the CJNG, then clearly she would

have been aware that it was illegal to engage in any transactions or dealings with the entities in the Superseding Indictment (even though the government has provided no evidence that she ever became aware that those entities had been designated by OFAC). The government's reassurance that it does not seek to "introduce into evidence graphic or inflammatory details of CJNG's narcotic trafficking activities in Mexico, such as the extraordinary violence or rampant public corruption perpetrated by the [drug trafficking organization]" is inapposite. *See* ECF 139, at 15. The government will not need to go so far as to introduce any "graphic or inflammatory details" of narcotics trafficking activities to cause unfair and substantial prejudice to Ms. Gonzalez. The suggestion that Ms. Gonzalez, *who is not charged with narcotics trafficking* but with violating U.S. Department of Treasury regulations, was somehow involved in the operations of a drug cartel will certainly be "graphic and inflammatory" enough to prejudice the jury against Ms. Gonzalez.

      The government reaches too far, and, in doing so, violates the very protections that the Federal Rules of Evidence seek to provide. As the proffered evidence against Ms. Gonzalez is not admissible as "intrinsic" evidence under controlling D.C. Circuit authority, nor, as shown above, under Rules 401, 404(b) and 403, it must be excluded from the trial of this matter.

### III.  CONCLUSION

For the reasons set forth above, the government's motion should be denied.

                              Respectfully submitted,


                              /s/ Steven J. McCool
                              STEVEN J. McCOOL
                              D.C. Bar No. 429369
                              JULIA M. COLEMAN
                              D.C. Bar No. 1018085
                              McCOOL LAW PLLC
                              1776 K Street, N.W., Suite 200
                              Washington, D.C. 20006
                              Telephone: (202) 450-3370
                              Fax: (202) 450-3346
                              smccool@mccoollawpllc.com
                              jcoleman@mccoollawpllc.com

                              *Counsel for Jessica Johanna Oseguera Gonzalez*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of November 2020, the foregoing was served electronically on the counsel of record through the U.S. District Court for the District of Columbia Electronic Document Filing System (ECF) and the document is available on the ECF system.


/s/ Steven J. McCool
STEVEN J. McCOOL