UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>    v. )<br>)<br>JESSICA JOHANNA OSEGUERA )<br>GONZALEZ, )<br>    also known as "Jessica Johanna )<br>    Castillo" and "La Negra," )<br>)<br>    Defendant. ) | CRIMINAL NO.: 1:20-CR-040 |

**GOVERNMENT'S REPLY IN SUPPORT OF ITS
MOTION TO INTRODUCE OTHER CRIMES EVIDENCE**

On October 29, 2020, the government filed a Motion to Introduce Other Crimes Evidence at Trial.  *See* Dkt. No. 131 ("Motion").  On November 12, 2020, the defendant filed an opposition to the Motion.  *See* Dkt. No. 150 ("Opposition" or "Opp.").  The government hereby submits this reply in further support of its Motion.

**ARGUMENT**

**I.    The Government's Motion is Timely**

The defendant opposes the government's Motion as untimely, pointing to the fact that the government has repeatedly said that this case is part of a "a long-term and ongoing investigation."  *See* Opp. at 1.  The fact that the government's investigation has been long-running and ongoing does not mean that evidence cannot continue to develop.  Indeed, the government continues to gather evidence and debrief potential witnesses as it prepares for trial.  In this instance, contrary to the defendant's insistence of a "delay," Opp. at 2, the government filed the Motion as soon as the evidence that it seeks to admit became available to the government.  If necessary, the government can provide the Court with additional details about the timeline of the development of the proposed evidence that will conclusively demonstrate that

it could not have made the Motion until just before it was filed; however, any such details will need to be provided under seal and *ex parte*. Therefore, the government's Motion should not be denied as untimely.

## II. The Government's Proposed "Other Crimes" Evidence is Admissible

The defendant opposes the government's Motion to admit "other crimes" evidence that she kept ledgers of the proceeds and expenses of narcotics trafficking activities for the Cartel de Jalisco Nueva Generacion ("CJNG"), a drug trafficking organization ("DTO") based in Jalisco, Mexico, of which the defendant's father, Nemesio Oseguera Cervantes ("Mencho") is the leader. *See* Opp. at 2-14. The authorities and argument in the defendant's opposition do not compel the exclusion of that evidence, and it should be admitted either as intrinsic evidence or pursuant to Rule 404(b), for both the reasons stated in the government's Motion and further detailed herein.

As the government explained in its Motion, the proposed evidence of the defendant's involvement in the financial operations of the CJNG, including and especially her management and use of Las Flores Cabanas as a location to host meetings about the DTO's business, does not require a Rule 404(b) analysis at all. Rule 404(b) is, fundamentally, a prohibition on "character" evidence used solely to show that on a particular occasion the defendant "acted in accordance with th[at] character." Fed. R. Evid. 404(b)(1). But here the government does not seek to introduce the proposed evidence to show that the defendant had a propensity for drug-trafficking. Rather, the government seeks to introduce the proposed evidence to show both that she was "an officer, director, and/or agent of Las Flores Cabanas," as charged in the Superseding Indictment, and that she acted "willfully," in that she knew that the designated businesses named in the Superseding Indictment were a part of the larger CJNG enterprise, that her continued and voluntary involvement with the CJNG demonstrates her willfulness in continuing to engage in

2

transactions or dealings with the businesses named in the Superseding indictment, and that her involvement with those businesses was therefore unlawful.

In opposing the government's argument that this evidence is intrinsic and not subject to the Rule 404(b) analysis, the defendant relies primarily on *United States v. Bowie*, 232 F.3d 923 (D.C. Cir. 2000). Although the *Bowie* court was critical of some other circuits' more expansive views of "intrinsic" evidence, *see id.* at 928-29, it did not wholly reject the distinction between intrinsic and extrinsic evidence. *See id.* at 929 ("We recognize that, at least in a narrow range of circumstances not implicated here, evidence can be 'intrinsic to' the charged crime."). As the court explained, "if the evidence is of an act that is part of the charged offense, it is properly considered intrinsic. In addition, some uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime." *Id.*

According to the proffered evidence, the defendant had a role in keeping the financial records of the CJNG's narcotics trafficking activities *at the same time* that she was running the six businesses named in the Superseding Indictment, which were themselves later designated by the Department of the Treasury for providing material support to the CJNG and for being controlled by the CJNG. Furthermore, the defendant used one of the designated businesses, Las Flores Cabanas, as a location for at least one meeting to receive drug ledgers and discuss their contents with other traffickers including her father and her brother. This evidence confirms that the defendant had an ownership or managerial interest in Las Flores Cabanas prior to their designation by OFAC. *See id*. The fact that the defendant was responsible for maintaining the ledgers of the proceeds of narcotics trafficking of the CJNG also makes it substantially more likely that the defendant knew that the six designated businesses were a part of the larger CJNG

drug trafficking enterprise, that she would have been aware of legal sanctions relating to drug trafficking including OFAC designations, and that her involvement with those businesses was therefore unlawful. "[I]t is [therefore] properly considered intrinsic." *Id.*[1]

Moreover, even the *Bowie* court explained that "evidence necessary to complete a story—for instance by furnishing a motive or establishing identity—typically has a non-propensity purpose and is admissible under Rule 404(b)." *Id.* And, as the government explained in its Motion, Rule 404(b) is permissive and broadly inclusionary. *See* Dkt. No. 131 at 9-13. Indeed, "under Rule 404[b], *any* purpose for which bad acts evidence is introduced is a proper purpose so long as the evidence is not offered *solely* to prove character." *United States v. Cassell*, 292 F.3d 788, 795 (D.C. Cir. 2002) (internal citations and quotation marks omitted) (emphasis added).

Here, the fact that the defendant was involved in the financial operations of the CJNG and used one of the designated businesses named in the indictment for meetings to discuss the DTO's business is highly relevant to both her continued transactions and dealings with the businesses post-designation and the willfulness inquiry. *See* Motion, Dkt. No. 131 at 10-13. The defendant tries to minimize the importance of this evidence by narrowly defining what constitutes evidence of willfulness and by focusing on the information allegedly contained in the

---

[1] In *Bowie*, the defendant was convicted of possession of counterfeit currency, and the government needed only to prove the defendant's possession at the moment of arrest. Any other instances of possession of counterfeit currency prior to that point, the D.C. Circuit reasoned, could not bear on the later crime. *See* 232 F.3d at 929 ("As to Bowie's case, we do not see how his acts on April 17 constituted the same crime as that charged in the indictment. The authorities seized the counterfeit bills he had in possession on April 17, so the bills he possessed on May 16 could not have been the same ones."). However, if the crime of possession of counterfeit currency had a *willfulness* requirement, it is hard to see how an earlier arrest—or any evidence that a defendant had some existing understanding of the prohibition on counterfeit currency—would not be probative of the later crime.

drug ledgers themselves, arguing that "the 'ledgers' are not said to contain any information regarding the entities in the Superseding Indictment, and the evidence does not provide any information that Ms. Gonzalez was aware that any of the entities had been designated by OFAC." Opp. at 11.[2]  The defendant's arguments miss two important points.  First, willfulness can be proven through circumstantial evidence, not just direct evidence of "notice" as the defendant argues.  *See* Government's Omnibus Pretrial Motion, Dkt. No. 63 at 21.  Second, willfulness is not the only element of the charged offense.  The government must also prove that the defendant engaged in transactions and dealings with the businesses named in the Superseding Indictment, including Las Flores Cabanas.  The evidence that the defendant had a role in maintaining the ledgers for the CJNG, and used Las Flores Cabanas as a location for meetings, is evidence that the defendant engaged in a pattern of assisting the CJNG with its financial operations and undermines any "innocent" explanation for why she continued to own and

---

[2] In other pleadings, the defendant has argued that the government is *required* to present exactly the evidence that the government seeks to admit through this Motion.  For example, the defendant has previously argued that the government could not demonstrate willfulness, because of purportedly missing evidence:

> [T]here is no evidence whatsoever, because no such evidence exists, that Ms. Gonzalez was involved in any sort of narcotics trafficking. The only alleged connection between Ms. Gonzalez and the Cartel de Jalisco Nueva Generacion ("CJNG") are the entities listed in the Superseding Indictment. And, as stated, above, the government has not provided any evidence that the charged entities were involved in any conduct that could [be] considered as providing assistance to the CJNG. As a result, the government has also not provided any evidence that Ms. Gonzalez knew or should have known that these entities were somehow linked to the CJNG.

*See* Dkt. No. 96 at 17-18.  The government's proposed "other crimes" evidence here therefore provides exactly what the defendant had previously insisted was crucially *missing* from the government's case: "evidence…that Ms. Gonzalez was involved in any sort of narcotics trafficking," "evidence that the charged entities were involved in any conduct that could [be] considered as providing assistance to the CJNG," and "evidence that Ms. Gonzalez knew…that these entities were somehow linked to the CJNG."

operate the businesses named in the Superseding Indictment after they were designated for materially supporting the CJNG.  Therefore, it is relevant to "something other than the defendant's character or propensity."  *Bowie*, 232 F.3d at 930.

Finally, the defendant argues that the proposed evidence does not satisfy a Rule 403 balancing test, insisting that the evidence is unreliable, has no probative value, and is unfairly prejudicial.  *See* Opp. at 12-14.  The defendant points out that the government did not provide the dates of the meetings that were discussed in its Motion.  The first meeting at Las Flores Cabanas happened in approximately 2011, and the second meeting discussed in the Motion happened in approximately 2013 to 2014.  The defendant argues that the government's omission of these dates from the Motion renders the proffered evidence unreliable and suggests that if the meetings occurred prior to the OFAC designations (which they did), the probative value is slight.  *See* Opp. at 5.  However, the fact that these meetings occurred before the businesses were designated does not diminish the value of the evidence for the purposes for which the government seeks to admit it.  Evidence that the defendant owned Las Flores Cabanas prior to designation makes it substantially more likely that she continued to transact and deal with the business after designation—particularly since other evidence will show that the defendant never obtained a license from OFAC to "wind-down" her ownership interest in the business.  Furthermore, the defendant's involvement in the financial operations of CJNG in the years immediately leading up to the designations is probative of her knowledge that the businesses were tied to CJNG's drug trafficking activities, that the businesses were subject to legal sanctions, and that her involvement with the businesses was therefore unlawful.

The defendant also argues that "[t]he suggestion that Ms. Gonzalez, *who is not charged with narcotics trafficking* but with violating U.S. Department of Treasury regulations, was

6

somehow involved in the operations of a drug cartel will certainly be 'graphic and inflammatory' enough to prejudice the jury against Ms. Gonzalez." Opp. at 14.  While the defendant is not charged with narcotics trafficking, she is charged with transactions or dealings with businesses that were designated by OFAC for materially supporting CJNG, a significant foreign narcotics trafficker, a crime that inherently relates to the financial aspect of narcotics trafficking.  *See* 21 U.S.C. § 1901(b) ("It shall be the policy of the United States to apply economic and other financial sanctions to significant foreign narcotics traffickers and their organizations worldwide to protect the national security, foreign policy, and economy of the United States from the threat [of international narcotics traffickers and their organizations].")  Evidence of meetings about the drug ledgers is no more graphic or inflammatory than the basis of the charges themselves, which already relate to international drug trafficking on their face.

      For these reasons, and as explained at greater length in the government's Motion, the proposed evidence related to the defendant keeping ledgers of the proceeds and expenses of certain narcotics trafficking activities for CJNG and hosting meetings to discuss the DTO's business at Las Flores Cabanas should be admitted.

**III.     Conclusion**

For the foregoing reasons, the Court should grant the government's Motion to admit other crimes evidence.

Respectfully submitted this 17th day of November, 2020.

                                        Arthur Wyatt, Chief
                                      Narcotic and Dangerous Drug Section
                                      Criminal Division
                                      U.S. Department of Justice

By:       /s/
                                      Kate Naseef, Trial Attorney
                                      Kaitlin Sahni, Trial Attorney
                                      Brett Reynolds, Trial Attorney
                                      Narcotic and Dangerous Drug Section
                                      Criminal Division
                                      U.S. Department of Justice
                                      Washington, D.C. 20530
                                      Telephone: (202) 514-0917

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via the Electronic Case Filing (ECF) system with the United States District Court for the District of Columbia to counsel of record for the defendant, this 17th day of November, 2020.

By:    /s/
        Kate Naseef
        Trial Attorney
        Narcotic and Dangerous Drug Section
        Criminal Division
        U.S. Department of Justice