IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 20-cr-00040 (BAH) |
| ) | |
| JESSICA JOHANNA OSEGUERA ) | |
| GONZALEZ, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT JESSICA JOHANNA OSEGUERA GONZALEZ'S REPLY
IN SUPPORT OF HER MOTION TO DISMISS FOR *BRADY* VIOLATIONS
OR, IN THE ALTERNATIVE, FOR SANCTIONS AND TO PRODUCE *BRADY*
INFORMATION, INCLUDING RESPONSES TO HER *TOUHY* REQUESTS
AND INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant Jessica Johanna Oseguera Gonzalez, by and through her undersigned counsel, respectfully submits the following reply in support of her Motion to Dismiss for *Brady* Violations or, in the Alternative, for Sanctions and to Produce *Brady* Information, Including Responses to Her *Touhy* Requests (ECF 190).[1]

The government's response to Ms. Gonzalez's motion to dismiss makes clear that the government's understanding of its discovery obligations under *Brady* and Fed. R. Crim. P. 16 is severely flawed. Ms. Gonzalez requested *Brady* evidence at the outset of this case. The government stood before this Court in March 2020 and represented that its evidence against Ms. Gonzalez was strong. The 7-page August 6, 2019 Report of Investigation ("ROI"), in which

---

[1] Ms. Gonzalez notes that the government has filed its response to her Motion to Dismiss on the public record. *See* ECF 204. The government's response provides an extensive summary of the February 1, 2018 U.S. Customs and Border Protection ("CBP") report, which includes details of the actions and techniques employed by CBP employees during their interview of Ms. Gonzalez. The summary provided by the government in its public filing includes much greater detail of "CBP's systems, investigative techniques, and law enforcement activities" (*see* ECF 191, at 2) than Ms. Gonzalez's Motion to Dismiss. Given this, it is now even clearer that the government moved to keep Ms. Gonzalez's Motion to Dismiss under seal to shield serious allegations of government misconduct from public view, while placing their defenses to those serious allegations on the public record. This does not serve the public's right of access to judicial proceedings, and, as such, Ms. Gonzalez respectfully requests that the Court reconsider its Order sealing the entirety of Ms. Gonzalez's Motion to Seal and accompanying Exhibits.

there is *no* mention of DEA agents handing Ms. Gonzalez an OFAC "blocking notice" as claimed by the government, was in the government's possession at the time the government made these representations.  This ROI clearly undercuts the strength of the government's evidence and its case against Ms. Gonzalez.  The government chose not to disclose this ROI to Ms. Gonzalez until *nine* months after the first hearings in this case.

The government has advanced and continues to advance the argument that it could not have possibly notified *every* person not to engage in transactions and dealings with designated entities.  While that may be true in a theoretical sense, it is not true in this case.  The government breached its obligation to the Court and counsel when it failed to disclose that the DEA had notice that Ms. Gonzalez had an ownership interest in the entities identified in the Superseding Indictment *before* the entities were designated.  Still, Ms. Gonzalez did not seek dismissal of the case, or for sanctions under *Brady* because the government produced plainly exculpatory evidence in November 2020, which was, again, *nine* months after the initial hearings in this case and approximately a month before her first trial date.

But in its failure to disclose the February 1, 2018 U.S. Customs and Border Protection ("CBP") reports until February 18, 2021, the government went too far.  In its response, the government first argues that the CBP is not a "member of the prosecution team."  *See* ECF 204, at 8-15.  The government's position, however, is undercut by the very representations it makes in its opposition.  It is now clear that CBP and OFAC were working hand-in-glove in the investigation of Ms. Gonzalez.  Indeed, the government confirms that "OFAC requested information about the defendant from CBP's National Targeting Center ('NTC')."  *Id.* at 13.  After OFAC made that request, CBP produced a contact list that purported to be taken from a phone belonging to Ms. Gonzalez.  *Id.*  Although the government now concedes that this

2

information was *not* taken from a phone belonging to Ms. Gonzalez, the fact remains that someone at OFAC or within CBP stated in this document that the source of the information was Ms. Gonzalez.

Given this, the government's continued claim that CBP is not part of the prosecution team is nonsensical. The government cannot claim that CBP records were not in its possession because they were provided to the government through OFAC – an undeniable member of the prosecution team – and not directly from CBP. Allowing such a narrow reading of the "prosecution team" would permit the government to claim that documents are not in its possession, custody, or control when logic demands the opposite answer. A "prosecutor may not sandbag a defendant by 'the simple expedient of leaving relevant evidence to repose in the hands of another agency while utilizing his access to it in preparing his case for trial.'" *United States v. Marshall*, 132 F.3d 63, 69 (D.C. Cir. 1998) (quoting *United States v. Brazel*, 102 F.3d 1120, 1150 (11th Cir. 1997)). Under such circumstances, "that evidence is 'plainly within [the prosecutor's] Rule 16 control.'" *Id.*

The phone contact list provided to OFAC from CBP was originally produced to the defense on March 16, 2020. This means that as of March 16, 2020, the government should have known that CBP was in possession of documents relating to the allegations against Ms. Gonzalez. As of August 28, 2020, when Ms. Gonzalez submitted her first discovery request that specifically called for records relating to her travel into the United States, the government certainly knew that CBP was in possession of documents relating to the allegations against Ms. Gonzalez and material to the preparation of Ms. Gonzalez's defense. On September 16, 2020, Ms. Gonzalez submitted a second discovery request regarding her travels into and out of the United States. On November 10, 2020, Ms. Gonzalez submitted a *Touhy* request to CBP, and

provided a copy of that request to the government. Despite all of this, the government waited until January 2021 to investigate information in CBP's files. *See* ECF 204, at 4. This step should have been taken in March 2020, for the simple fact that CBP, working hand-in-hand with OFAC, was unquestionably part of the prosecution team. The government cannot now wash its hands of its late *Brady* disclosures based on a misguided interpretation of its Rule 16 obligations.

The government's argument that the February 1, 2018 CBP report is not *Brady* similarly fails. In its opposition, the government minimizes the importance of the CBP report by characterizing Ms. Gonzalez's position that "*any* evidence that does not establish with certainty that [she] *did* receive 'actual notice' of the OFAC designations is tantamount to exculpation" as outlandish. *Id.* at 15 (emphasis in original). The type of evidence described by the government certainly is exculpatory, as it would weigh against any possible finding that Ms. Gonzalez had the *mens rea* to commit the allegations in the Superseding Indictment. By making these broad, sweeping claims, however, the government attempts to divert attention away from the fact that the February 1, 2018 CBP report is, undeniably, *Brady*. This report shows that on February 1, 2018, while Ms. Gonzalez was in government custody, the government had direct evidence that Ms. Gonzalez was allegedly associated with an OFAC-designated entity. In the face of that evidence, the government had two choices: (1) to warn Ms. Gonzalez that if she continued to transact or deal with the designated entities, she could be arrested; or (2) choose not to arrest her, even though the government knew of her alleged association with designated entities. We know now that the government chose the latter path, choosing to engage in an unfair game of gotcha, instead of affirmatively notifying Ms. Gonzalez of the OFAC designations so that she would understand that any transactions or dealings with those entities would be illegal. The February 1, 2018 report is direct evidence of Ms. Gonzalez's lack of knowledge of the OFAC designations

that underlie the allegations against her. Given this, the February 1, 2018 report, which was in the possession, custody, and control of the government, is clearly *Brady* evidence and, as such, should have been disclosed to Ms. Gonzalez at the outset of this case, *not* almost an entire year later and one month before her trial date.

## CONCLUSION

Wherefore, for the foregoing reasons, and any reasons that appear to the Court, Ms. Gonzalez respectfully requests the Court dismiss the Superseding Indictment based on the government's *Brady* violations. In the alternative, Ms. Gonzalez respectfully requests the Court enter an Order imposing evidentiary sanctions and compelling the government to produce *all Brady* information in its possession, custody, or control, including responses to the DEA/DOJ and the United States Department of State to comply with Ms. Gonzalez's *Touhy* requests.

Respectfully submitted,

    /s/ Steven J. McCool
STEVEN J. McCOOL
D.C. Bar No. 429369
JULIA M. COLEMAN
D.C. Bar No. 1018085
McCOOL LAW PLLC
1776 K Street, N.W., Suite 200
Washington, D.C. 20006
Telephone: (202) 450-3370
Fax: (202) 450-33346
smccool@mccoollawpllc.com
jcoleman@mccoollawpllc.com

*Counsel for Jessica Johanna Oseguera Gonzalez*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of March 2021, the foregoing was served electronically on the counsel of record through the U.S. District Court for the District of Columbia Electronic Document Filing System (ECF) and the document is available on the ECF system.

        /s/ Steven J. McCool
   STEVEN J. McCOOL